IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* JANA GARZA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 1:22-CV-000467 JUDGE MICHAEL TRUNCALE |
| SOUTHWEST KEY PROGRAMS, INC., et al., | § | |
| Defendants. | § | |

**RELATOR'S RESPONSE TO DEFENDANT SWK'S MOTION TO DISMISS FOR IMPROPER VENUE AND MOTION TO TRANSER VENUE**

Relator Jana Garza files this Response in opposition to Defendant Southwest Key's Motion to Dismiss for Improper Venue, or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a) (hereinafter "SWK Motion") [Dkt. 49] and further moves the Court to transfer venue to the Western District of Texas, Austin Division pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). Relator also incorporates herein a motion to strike.

## I. Summary Statement

Setting aside SWK counsel's disingenuous meet and confer with Relator's counsel and distorted depiction of that conference in filings with this Court—the parties only dispute two issues: (1) whether to transfer venue to the Southern District Texas, Houston Division or to the Western District of Texas, Austin Division; and (2) the means of achieving that: via transfer or by dismissal and the refiling of the case.

As to the second issue, in a normal case Relator would have no issue dismissing and then refiling a case (which Defendants only belatedly proposed to Relator and agreed to waive

subsequent service to facilitate it), but *qui tam* actions are not amenable to that option, as dismissal requires consent by the Government and given that a subsequent refiling of a *qui tam* action would create FCA-unique issues—mainly a first to file issue. *See* 31 U.S.C. § 3730(c)(3). Therefore, the interests of justice favor transfer to the Austin Division of the Western Division as the appropriate option pursuant to 28 U.S.C. § 1406(a). In addition, Defendants' counsel offered to allow Relator to transfer the case to her choice of venue, but only if Relator dismissed and refiled the action (which as discussed in this Response is not a viable option). This same step can be accomplished via transfer.

Additionally, 28 U.S.C. § 1406(a) further strongly favors transfer to Western District rather than the Southern District as main defendant SWK resides there and the other relevant factors weigh in its favor.

Relator also moves to strike The Naranjo Defendants' and Hernandez Defendants' separate motion (Dkt. 50) to dismiss for the reasons set forth immediately below in Section II.

## II. Motion to Strike

Relator respectfully moves the Court to strike the separate motion to dismiss filed by the Naranjo Defendants and the Hernandez Defendants (Dkt. 50) pursuant to Fed. R. Civ. P. 12(g)(2). On March 18, 2024, SWK's lead counsel wrote to Relator's counsel as follows:

> We conferred today with counsel for Alyssa Hernandez, Eder Hernandez and associated companies, and Diego Naranjo and associated companies, and are authorized to represent the interests of all currently-served defendants in meeting and conferring with you on the items described above.

Ex. A at 9–10. Soon after, Defendants filed a "Joint Motion To Set Briefing Schedule Regarding Fed. R. Civ. P. 12(b)(3) Motions To Dismiss Or To Transfer Venue And To Set Deadlines For Subsequent Fed. R. Civ. P. 12(b)(6) Motions To Dismiss," which stated:

> Defendant Southwest Key Programs, Inc. ("SWK"), **together with all currently served Defendants** (collectively "Defendants"), respectfully move the Court to

> establish a briefing schedule related to their forthcoming motions to: (1) dismiss Relator's First Amended Complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative to transfer venue pursuant to 28 U.S.C. § 1406(a); and (2) dismiss Relator's complaint for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6) and (9)(b).

Dkt. #47 at 1. From that point forward, based upon Defendants' representations, Relator understood that "all defendants" would be speaking with a single voice when it came to any forthcoming motion to dismiss. But a week later, not only did the Naranjo Defendants and the Hernandez Defendants file a separate motion, but SWK sought to gain the benefit of this "double-dipping" as well, asserting that "[t]o the extent Co-Defendants file their own motions and evidence challenging Relator's choice of venue, SWK incorporates all such evidence and arguments herein." *Id.*

Relator respectfully submits that the Court should reject Defendants' attempt to submit an extra filing in support of their joint efforts to obtain dismissal or transfer, and strike Dkt. 50 and the associated exhibits. Defendants' double motions to dismiss under FED. R. CIV. P. 12(b)(3) violate the letter and spirit of Rule 12(g)(2), which provides:

> (2) Limitation on Further Motions. Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

In addition, Rule 12(f) authorizes the Court to strike any "redundant" matter, and Dkt. 50 is completely redundant to the arguments in SWK's brief, Dkt. 49. Inasmuch as Dkt. 49 was originally characterized as a joint undertaking, any arguments special to the Hernandez Defendants and/or the Naranjo Defendants could have been incorporated into Dkt. 49.

In the event the Court denies the motion to strike, this Response incorporates a response to the Motion (Dkt. 50).

## III. PROCEDURAL BACKGROUND

After filing her First Amended Complaint on February 8, 2024, Relator set out to serve all defendants. She served SWK on February 12, 2024, thereby setting for SWK a March 4, 2024 responsive deadline.[1]

On February 16, 2024, SWK counsel reached out to Relators' counsel to request a 90-day extension of the responsive pleading deadline, to May 13, 2024.[2] *See* Ex. B at 4. On February 21, 2024, the parties conferred by Zoom and Relators' counsel agreed to the request. The next day, SWK counsel sent a draft stipulation. *See id.* at 2. Noticing that it was deficient in many aspects, Relator's counsel attempted to alert SWK counsel to the Local Rules governing extension requests exceeding 45 days—but was rebuked. *See* Ex. B at 1–2. Consequently, the deficient request was filed with the Court. *See* Dkt. 35. On February 29, 2024, this Court issued an order extending the responsive deadline, but only to April 8, 2024—much less time than SWK sought. *See* Dkt. 43.

On March 18, 2024, SWK counsel reached out to Relator's counsel—with the representation that she represented **all defendants**—to meet and confer about setting a venue, answer, and motion to dismiss briefing schedule. *See* Ex. A at 10–11. Neither counsel for the Naranjo Defendants nor counsel for the Hernandez Defendants ever met and conferred separately with Relator's counsel regarding any motion to dismiss/transfer issues.

On March 20, 2024, the parties conferred via Zoom. Therein, SWK counsel made a request for a consent motion, which lacked definition and was confusing because counsel sought a briefing schedule for a 12(b)(6) motion to dismiss, but also sought a transfer of venue, which

[1] While nine of the eleven defendants have been served, service upon Geraldo Rivera and Fanny Figueroa remains outstanding despite repeated and still ongoing efforts to effectuate personal service at various locations, including out of state. *See* Ex. C.

[2] Relator's counsel did not challenge SWK's 90-day calculation.

would render it moot. *See* Ex. C. ¶ 3. Relator's counsel attempted to understand the nature of Defendants' request, and further discussion suggested to Relator's counsel that the true purpose for the motion was to buy more time and postpone the April 8 answer deadline. *Id.* No agreement was reached, given that neither the briefing subject matter nor dates had been exchanged at that point. *Id.*

On March 22, 2024, Defendants' counsel sought Plaintiff's position on the briefing schedule, which was impossible since Defendants had not provided one. *See* Ex. A at 9. On March 25, 2024, SWK counsel offered—in exchange for Relator's concession that venue was improper in the Eastern District of Texas—to agree to a dismissal without prejudice or a consent motion to transfer venue:

> Second, we assume that in noting that Relator will not oppose transfer, you are not conceding that venue in ED Tex. is improper. If that is indeed the case, we will still need to file and brief our Fed. R. Civ. P. 12(b)(3) dismissal motion, with transfer in the alternative under 28 U.S.C. § 1404(a) (noting Relator's non-opposition there). If, instead, Relator is willing to concede that venue is improper in ED Tex., we would be open to a stipulated
>
> Ex. A - Page 7
>
> Case 1:22-cv-00467-MJT Document 47-1 Filed 04/01/24 Page 9 of 12 PageID #: 368
>
> dismissal without prejudice or a consent motion to transfer under 28 U.S.C. § 1406(a).

Ex. A at 7–8. Based on this representation, Relator's counsel accepted that venue in the Eastern District was not proper.

On Friday, March 29, 2024, Defendants' counsel for the *first time* (1) requested that Relator voluntarily dismiss her case and re-file the action to avoid the motion practice and deadlines; (2) indicated that the Southern District was their preferred venue choice; and (3) sought the basis of Relator's opposition. *See* Ex. A at 3–4. Relator's counsel informed

Defendants' counsel that they would respond on Monday or Tuesday of the following week, immediately following the Easter holiday weekend. *See* Ex. A at 3.

Despite this, on Monday, April 1, 2024, Defendants filed a Joint Motion wherein they have disingenuously stated that Relator's counsel refused to provide a substantive response to their request to transfer to the Southern District of Houston. *See* Dkt. 47. Relator was never given sufficient opportunity to respond, and considers opposing counsel's actions an insincere effort to meet and confer. Further, Relator's counsel viewed Defendants' counsel's request to dismiss and refile the case as impossible under the circumstances. Defendants' counsel only provided Relator with half a day to respond—which was insufficient time to conduct the research necessary to evaluate the viability of the option; to confer with one another; and, assuming it was possible, to obtain the Government's consent to a voluntary dismissal.

Since the beginning, Defendants' counsel has been discontent with the Court's responsive pleading deadline and sought to alleviate it. Relator was sympathetic to their request. Defendants' attempt to depict Relator as unresponsive to this Court is without merit. Ultimately, Defendants were willing to permit Relator to choose her venue, but only if she dismissed and refiled the case; if she did not, then Defendants would seek transfer to the Southern District:

> Rather than go through the motions practice contemplated above, we believe it would save the parties and the court significant time and resources if Relator were to simply voluntarily dismiss and refile her action. We are happy to waive service of a newly filed action to save Relator that time and expense.

Ex. A - Page 3

---

Case 1:22-cv-00467-MJT Document 47-1 Filed 04/01/24 Page 5 of 12 PageID #: 364

> Finally, if you are not amendable to voluntary dismissal, we need to understand Relator's objection to venue in SD Tex., Houston, and the basis of her opposition to 12(b)(3) dismissal.
>
> Best,
> Rosie

Ex. A at 3. As discussed below, the interests of justice favor the transfer of the case to the Western District of Texas, Austin Division under § 1406(a).

## IV. LEGAL STANDARD

### 1. Cure or Waiver of Defects - 28 U.S.C. § 1406(a)

Under 28 U.S.C. § 1406(a), "[the] district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As the Supreme Court has pronounced, the purpose of the statute is to promote transfer over dismissal where "interest of justice" exists:

> If by reason of the uncertainties of proper venue a mistake is made, Congress, by the enactment of § 1406 (a), recognized that "the interest of justice" may require that the complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by what the late Judge Parker aptly characterized as "time-consuming and justice-defeating technicalities."

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S. Ct. 913, 916 (1962).

An example of when a justice-defeating dismissal exists is when a "new proceeding would be barred by the statute of limitations." *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.2d 514, 517 (4th Cir. 1955).

When reviewing venue challenges, a court must view all facts in the light most favorable to the plaintiff and is "permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018); *see also Ambraco Inc. v. Bossclip B V*, 570 F.3d 233, 237 (5th Cir. 2009).

### 2. Change of Venue - 28 U.S.C. § 1404

According to the Supreme Court, a motion to transfer venue under Section 1404(a) requires the court to weigh several factors:

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors.

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal citations omitted). A court can consider the following private interest factors:

> (1) the relative ease of access to sources of proof;
>
> (2) the availability of compulsory process to secure the attendance of witnesses;
>
> (3) the cost of attendance for willing witnesses; and
>
> (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). A court can consider the following public interest factors:

> (1) the administrative difficulties flowing from court congestion;
>
> (2) the local interest in having localized interests decided at home;
>
> (3) the familiarity of the forum with the law that will govern the case; and
>
> (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* "No factor is of dispositive weight." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023).

## V. ARGUMENT

### 1. Transfer to the Western District is appropriate under Section 1406(a)

#### A. The interest of justice favors transfer because dismissal of this *Qui Tam* action is justice-defeating

At first glance, dismissing this *qui tam* action without prejudice and then refiling it might appear to be the most convenient option. And if this option created no justice-defeating issues, then Relator would have no problem doing it and saving time and resources. However, taking this step can trigger the False Claims Act's "First-to-File" provision under 31 U.S.C. §

3730(b)(5), which could preclude Relator from proceeding with a re-filed action. This would create the type of justice-defeating dismissal that Congress sought to avoid under §1406.

Moreover, under well-established law, in bringing this action, Relator is not representing her own private interests only, but is also representing the interests of the United States, which is the real party in interest in every *qui tam* action. *See, e.g. United States ex rel. Eisenstein v. City of New York,* 556 U.S. 928, 930 (2009). Thus, dismissal of this action for improper venue would be justice-defeating, not only for Relator herself, but for the United States itself. Indeed, Congress expressly provided in the statute that a prerequisite for dismissal is obtaining the permission of the Attorney General, which has not been done here. *See, e.g.*, 31 U.S.C. § 3730(b)(1) ("The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."); *see also Ridenour v. Kaiser-Hill Co., Ltd. Liab. Co.,* 397 F.3d 925, 931 n.8 (10th Cir. 2005) ("Even where the Government has declined to intervene, relators are required to obtain government approval prior to entering a settlement or voluntarily dismissing the action.").

Neither the United States nor any Defendant has indicated that another *qui tam* suit was pending at the time Relator filed the present action. As far as Relator is concerned, she is the first person to file a *qui tam* action against Defendants for the fraud allegations contained in her Complaint. At this time, her pending action bars any later filed actions with similar allegations under the First-to-File bar.[3] If this action is dismissed, though, then it is possible that another relator – or even the Government itself – could step in and file an action with similar allegations before Relator has time to refile. If this occurs, then Relator's action would be barred under the

---

[3] *See United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376-77 (5th Cir. 2009) ("Congress has placed a number of jurisdictional limits on the FCA's qui tam provisions, including § 3730(b)(5)'s first-to-file bar. Under this provision, if [Relator's] claim had already been filed by another, the district court lacked subject matter jurisdiction and was required to dismiss the action.").

FCA's First to File rule or its "government action bar," 31 USC § 3730(e), which precludes whistleblower suits "based upon allegations or transactions which are the subject of . . . an administrative civil money proceeding in which the Government is already a party," and justice for Relator would be defeated.

The unique, FCA-specific problems that can occur are exemplified by *Kellog Brown & Root Servs. v. United States ex rel. Carter*, 575 U.S. 650 (2015). In that case, relator Carter attempted to file his FCA claims in four different *qui tam* actions. The first action, which was filed in February 2006, was dismissed because of an earlier-filed action, titled *Thorpe*. *See id*. After the *Thorpe* action was dismissed for failure to prosecute, Carter filed a second action, referred to as *Carter II*. *See id*. The second complaint was dismissed because Carter's first action was still navigating the appeals process (*i.e*. pending). *Id*. Carter then dropped the appeal from the first action, and filed a third action, *Carter III*. *See id*. However, by then, two other related *qui tam* actions – *Duprey* and *Texas* – had been filed and were pending, thereby barring *Carter III* under the First-to-File rule.[4] Eventually, both the *Duprey* and *Texas* cases were dismissed, and – with no other related cases pending, relator Carter was finally permitted to file a valid *qui tam* complaint, nearly ten years after his first attempt.

As the Supreme Court explained in a cautionary note in the case, "The FCA's *qui tam* provisions present many interpretive challenges, and it is beyond our ability in this case to make them operate together smoothly like a finely tuned machine." *Id.*, 575 U.S. at 664. In the face of a possible justice-defeating dismissal, transfer is appropriate under §1406.

[4] *See United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 183 (4th Cir. 2013) ("The Duprey action was filed in 2007, and voluntarily dismissed in October 2011, after the relator failed to serve the complaint on the defendants. The Texas action was filed in 2007 and voluntarily dismissed in March 2012, when the government declined to intervene. Therefore, both actions were pending when Carter filed his complaint on June 2, 2011. Because we look at the facts as they existed when the claim was brought to determine whether an action is barred by the first-to-file bar, we conclude that Carter's claims are barred by the Duprey and Texas actions.").

Because dismissing and attempting to re-file the case could result in a "justice-defeating" dismissal affecting not simply Relator's concerns, but also the sovereign rights of the United States, the interests of justice favor the transfer of this action.

### B. The relevant factors favor transfer to the Western District under Section 1404(a)

All of the Defendants who have been served seek either dismissal without prejudice or transfer of this case to the U.S. District Court for the Southern District of Texas, Houston Division. *See, generally*, Dkts. 49 and 50. Other than the Houston Division being their preferred venue, Defendants offer little factual or meritorious legal basis to transfer this case to that location. When one considers the locations of the Defendants and their proximity to both Houston and Austin, it is apparent that, although an argument can be made to transfer to Houston, there is a stronger case for transfer to Austin.

When considering a request to transfer, the threshold question courts address is whether the plaintiff's claim *could have been* filed in the judicial district where transfer is sought.

> A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). A business entity "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). General jurisdiction for an entity can be established where the corporation is "fairly regarded as at home." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). A corporation is considered "at home" in its place of incorporation and where it has its principal place of business. *Id.*

*Qualls v. Prewett Enterprises, Inc.*, 594 F. Supp. 3d 813, 822 (S.D. Tex. 2022). There is no dispute that SWK's headquarters is located in Austin. *See* Ex. D (see headings).[5] In its documentation, SWK states that its "National Headquarters" is located at 6002 Jain Lane, Austin, Texas. *Id.*

---

[5] Available at https://southwestkey.org/wp-content/uploads/2023/11/SWK-Southwest-Key-Programs-Supplier-Terms-and-Conditions.pdf (last reviewed April 21, 2024).

Moreover, SWK makes clear in its vendor documentation and agreements that it requires disputes to be resolved in courts of competent jurisdiction in Travis County, Texas. SWK's vendor Non-Disclosure Agreement (NDA) states, in part, that "the parties consent to the exclusive jurisdiction and venue of the state and federal courts located in Travis County, Texas and agree to waive all objections to personal jurisdiction, venue and forum non conveniens." Ex. E ¶ 16[6]; *see also* Ex. D §10.B.ii.

Considering that SWK prefers that disputes be adjudicated in Travis County, it is unclear why the Defendants are resisting a change of venue to the U.S. District Court for the Western District – which is located in Austin.

Defendants Diego Naranjo, Divine Family Care, PLLC, Trinity Health Services, PLLC, and Diego Naranjo d/b/a UC Health Consultants (collectively, "Naranjo Defendants"), and Defendants Eder Francisco Hernandez, Alyssa Hernandez, Migdal Eder, LLC, and Valley Med Urgent Care, PLLC (collectively, "Hernandez Defendants") acknowledge that they all reside in Cameron County. *See* Dkt. 49 at 4.

Divine Family Care and Trinity Health Services have offices in Brownsville, Texas, which is in Cameron County. *See* Ex. F and Ex. G. Valley Med Urgent Care, which appears to be owned by Eder Hernandez, has an office McAllen, Texas, which is in Hidalgo County, and offices in Brownville, Texas in Cameron County. *See* Ex. H. Migdal Eder is owned by Eder Hernandez, and has offices in Brownsville, Texas. *See* Ex. I.

While Divine, Trinity, Valley Med, and Migdal Eder appear to do business in Sugar Land, Texas, the Sugar Land address is actually their mailing address and the address of their

---

[6] Available at https://southwestkey.org/wp-content/uploads/2023/11/SWK-Vendor-NDA.pdf (last reviewed April 21, 2024).

registered agent, while their respective bases of operations appear to be in Cameron County. *See* Exs. F, G, H, I.

The Naranjo Defendants and Hernandez Defendants are centered around Cameron and Hildago Counties, in the Southcentral tip of Texas. Cameron County and Hidalgo County are adjacent to each other. Using Google Maps, the approximate driving time from Brownsville, Texas to Houston or Austin is a little over five hours. Ex. C ¶ 5. Using Google Maps, the approximate driving time from Mc Allen, Texas to Houston is over five hours and to Austin is a under five hours. Ex. C ¶ 4. And the Naranjo and Hernandez Defendants do not deny that they have conducted business with SWK, which is headquartered in Austin. Thus, Austin could have been an appropriate forum for this lawsuit.

Once the Court is satisfied that the case could have been filed in the U.S. District Court for the Western District – Austin Division, the Court then must turn to the evaluation of the established "private" and "public" convenience factors that are commonly used when applying 28 U.S.C. § 1404(a). *Qualls*, 594 F. Supp. at 823. We address each of these factors in turn.

**B. Private Factors**

There are four private factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of obtaining the attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See, e.g.*, *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). Each of the relevant private factors is either neutral or favors transfer to the Austin Division of the Western District of Texas over the Southern District of Texas.

**(1) the relative ease of access to sources of proof**

This factor favors transfer to the Western District. Significantly, ***all*** of the contract activity that forms the bases for Relator's kickback and self-dealing allegations originated with

SWK—regardless of where individual shelter facilities may have been located. Accordingly, many of the records associated with the claims raised in this case reside at SWK's headquarters in Austin. Similarly, most if not all of the witnesses at issue in the case were either employed by SWK or negotiated agreements with SWK through its National Headquarters in Austin, as discussed below.

For example, in mid-2018 Eder Hernandez sought a kickback from Relator for helping her obtain a medical provider contract with SWK. Ex. J ¶¶ 4, 7. In late 2018, Relator obtained verbal contracts from Fanny Figeroa, the Director of Medical Services, to provide medical services at two SWK shelters. Ex. J ¶ 6. In early 2019, Diego Naranjo, the Assistant Medical Director, made a plan to divide the Houston region, wherein he took away a shelter from Relator and awarded it to Dr. Rauf. Ex. J ¶ 8. Both had the authority to award medical provider contracts, did so without resorting to any procurement process, and were based out of SWK's headquarters in Austin, TX. Ex. J ¶ 5.

In April 2019, Figueroa awarded back to Relator the Sunzal shelter and subsequently awarded Relator the shelters in the Houston region. Ex. J ¶. In June 2019, July 2020, and May 2021, Relator signed medical provider contracts with SWK, all which were executed by SWK officials based in Austin, Texas including Geraldo Rivera. Ex. J ¶¶ 9–11; *see also* Exs. K, L, M.

In October 2022, SWK created a rigged procurement and bidding process—which was run out of its Procurement Department in Austin. SWK issued an RFP entitled "RFP – 112321 Primary Care Physician for Children", which required bids to be submitted to the Procurement Department in Austin, Texas. Ex. J ¶ 12, Ex. N. The RFP further required any bidder to report conflicts of interest to Efren Garcia, SWK's Chief Legal & Compliance Officer, who is based out of SWK's Austin office. Ex. J ¶ 12, Ex. N.

SWK, through Gary Wilder, its procurement specialist, terminated some of Relator's shelter contracts and asked for her assistance to transition those shelters to Trinity Health Services—a company owned by Diego Naranjo. Ex. J ¶ 13, Ex. O. Wilder further informed Relator that the person who made the procurement decision was Anselmo Villareal, SWK's CEO. Ex. J ¶ 13.

The Naranjo and Hernandez Defendants have a significant number of contracts and/or business with SWK. The Naranjo Defendants provide medical services at various SWK shelters under contracts executed with SWK, including at Casa Padre in Brownville, Casa Oasis in McAllen (Ex. P), Midland Influx Shelter in Midland, Texas (Ex. Q), and Casa Quetzal, Montezuma, and Sunzal in Houston. Ex. O. The Hernandez Defendants work for the Naranjo Defendants to provide these medical services. *See* Ex. P & Q. The Naranjo and Hernandez Defendants traveled to Midland, which is in the Western District, to provide medical services for SWK. Ex. Q. The Naranjo and Hernandez Defendants are based in South Texas, which is approximately the same distance from Austin and Houston.

**(2) the availability of compulsory process to secure the attendance of witnesses**

This factor is neutral. Witnesses in this case are scattered throughout Texas, and compulsory process is available for the vast majority of them. Moreover, most of the Defendants are readily mobile and frequently travel to both forums.

**(3) the cost of obtaining the attendance of willing witnesses**

This factor is also neutral. The cost of attendance for willing witnesses would be the same regardless of venue.

**(4) all other practical problems that make trial of a case easy, expeditious and inexpensive**

This factor favors transfer to the Western District. It is anticipated that most relevant records will be located in Austin. Similarly, most witnesses will either work or do business in Austin.

**C. Public factors**

There are also four public factors, which include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Id.* These factors also favor transfer to the Western District of Texas as opposed to the Southern District of Texas.

**(1) the administrative difficulties flowing from court congestion**

This factor slightly favors transfer. The Western District has a shorter median time from filing to disposition than the Southern District (7.3 months vs. 7.9 months).[7]

**(2) the local interest in having localized interests decided at home**

This factor favors transfer to the Western District. As noted, SWK's National Headquarters is located in Austin and all its vendor transactions and approvals flow through that office – including ***each of the contracts at issue in this case***.

**(3) the familiarity of the forum with the law that will govern the case**

This factor is neutral or not applicable.

**(4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law**

This factor is neutral or not applicable.

---

[7] *See* U.S. District Courts - Federal Court Management Statistics–Profiles, Reporting Period December 31, 2023, pp. 36–37, available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf (last accessed April 24, 2024).

## VI. Conclusion

For all these reasons, the Court should deny Defendant's motion to dismiss and, pursuant § 1406(a), transfer this case in the interest of justice to the Austin Division of the Western District of Texas where the center of gravity of this case lies.

Dated: April 24, 2024

Respectfully submitted,

/s/ Jack Kolar
John A. (Jack) Kolar
D.C. Bar No. 292953
*Appearing pro hac vice (Lead Counsel)*
**Government Accountability Project**
1612 K Street NW, Suite 1100
Washington, DC 20006
(p) 202-926-3311
(e) JackK@whistleblower.org

Richard Condit
D.C. Bar No. 417786
Cleveland Lawrence III
D.C. Bar No. 480462
*Appearing pro hac vice*
**Mehri & Skalet, PLLC**
2000 K Street NW, Suite 325
Washington, DC 20006
(p) 202-822-5100
(e) rcondit@findjustice.com
(e) clawrence@findjustice.com

Carlos Doroteo
TX Bar No. 24097616
**Milpa Law PLLC**
1415 N Loop W #618
Houston, TX 77008
(p) 832-298-0807
(e) carlos@milpalaw.com

**COUNSEL FOR PLAINTIFF-RELATOR JANA GARZA**

## CERTIFICATE OF SERVICE

I certify that on April 24, 2024, I caused a true and correct copy of this document to be served via ECF on all counsel of record.

/s/Carlos Doroteo
Carlos Doroteo

**COUNSEL FOR PLAINTIFF-RELATOR JANA GARZA**

**EXHIBIT LIST**

| Exhibit | Description |
|---|---|
| A | Meet and Confer Emails |
| B | Consent Motion Emails |
| C | Declaration of Carlos Doroteo |
| D | SWK Supplier Terms and Conditions |
| E | SWK Vendor Nondisclosure Agreement |
| F | Divine Family Care (Lexis Nexis report) |
| G | Trinity Health Services (Lexis Nexis report) |
| H | Valley Med Urgent Care (Lexis Nexis report) |
| I | Migdal Eder LLC (Lexis Nexis report) |
| J | Declaration of Jana Garza |
| K | 2019 Contracts |
| L | 2020 Contracts |
| M | 2021 Contracts |
| N | RFP |
| O | Termination Letter |
| P | Medical Record for Casa Oasis (Trinity Health Services) |
| Q | Medical Record for Midland Influx Shelter (Divine Family Care) |