# EXHIBIT

# L

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

| SOUTHWEST KEY USE ONLY |
|---|
| ☐ W-9 completed/forwarded to AP |
| Reviewed/approved by ☐ PD ☒ RED ☐ VP ☐ |
| Contract Monitor: Kimberlynn Luke |

southwest key programs

# CONTRACT FOR SERVICES AND DECLARATION OF INDEPENDENT BUSINESS STATUS

## Specific Terms and Conditions and Declaration

| | | | |
|---|---|---|---|
| Contractor's Full Name: | Jana Garza, FNP<br>Nutrix Medical Worx, PLLC | Mailing Address: | 7333 45 North Unit 450<br>Houston, TX 77076 |
| Home/Office Phone Number: | 1-956-640-6775 | Mobile Phone Number: | |
| Email address: | janagarza@nutrixmedicalworx.com | | |
| Rate of Pay: | ☐ total: ☐ /hour<br>☒ Other (specify): PCU-Claims submitted to Insurance for payment | | |
| Term of the Agreement (choose one): | ☐ One day/event; specify day or event:<br>☐ Through completion of the work or as specified in the attached proposal(s)/invoice(s).<br>☐ One year from the date of execution.<br>☒ From 6/6/2020 through 6/5/2021. | | |
| Description of Services to be Provided by Contractor: | Attach proposal and check this box ☒ or describe services: See attachments A and A1-A5 | | |
| Mailing Address for Billing: | 419 Emancipation Avenue, Houston, TX 77003 (P973) | | |

Contractor understands that as a contractor of Southwest Key Programs, Inc. ("Southwest Key"), Contractor is bound by the general terms and conditions available at https://southwestkey.org/general-terms-and-conditions/ , which Contractor confirms it has reviewed and a separate copy of which will be provided upon request. If Contractor has any questions about this document or needs to send Southwest Key correspondence concerning this agreement, notice/contact should be made to: General Counsel, Southwest Key, 6002 Jain Lane, Austin, Texas 78721 or to legal@swkey.org.

Contractor acknowledges that the following declaration of independent business status is made by Contractor in relation to services performed by Contractor for or in connection with Southwest Key. Contractor states and declares the following: (1) Contractor acknowledges that Contractor operates Contractor's own independent business and is providing services for or in connection with Southwest Key as an independent contractor; (2) Contractor acknowledges that Contractor is not an employee of Southwest Key and the services rendered for or in connection with Southwest Key do not establish any right to unemployment benefits or any other right arising from an employment relationship; (3) Contractor is responsible for all tax liability associated with payments received from or through Southwest Key and Southwest Key will not withhold any taxes from payments to Contractor; (4) Contractor is responsible for obtaining and maintaining any required registration, licenses, or other authorization necessary for the services rendered by Contractor;5) Contractor is not insured under Southwest Key's health insurance coverage or workers compensation insurance coverage; (6) Southwest Key does not restrict Contractor's ability to perform services for or through other parties and Contractor is authorized to accept work from and perform work for other businesses and individuals beside Southwest Key; (7) Contractor has the right to accept or decline requests for services by or through Southwest Key; (8) Southwest Key expects that Contractor provides services for other parties; (9) Contractor is not economically dependent on the services performed for or in connection with Southwest Key; (10) Southwest Key does not dictate the performance, methods, or process Contractor uses to perform the services performed for or in connection with Southwest Key; and (11) the terms set forth in this declaration apply to Contractor, Contractor's employees, and Contractor's independent contractors.

| [signature] | 7/12/20 | DocuSigned by: Iris Y. Gonzalez 1A3C8E4C7BF04E3... | 7/9/2020 |
|---|---|---|---|
| CONTRACTOR | DATE | SIGNATORY FOR SOUTHWEST KEY | DATE |

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

# BUSINESS ASSOCIATE AGREEMENT

I. Definitions. Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the Privacy Rule.

- a. Business Associate. "Business Associate" shall mean **Jana Garza, FNP. Nutrix Medical Worx, PLLC.** ("Business Associate").
- b. Contract. "Contract" shall mean the **Contract For Services** entered into between Business Associate and Southwest Key Programs, Inc.
- c. Covered Entity. "Covered Entity" shall mean Southwest Key Programs, Inc.
- d. Individual. "Individual" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).
- e. Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E.
- f. Protected Health Information. "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.
- g. Required By Law. "Required By Law" shall have the same meaning as the term "required by law" in 45 CFR § 164.103.
- h. Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

II. Obligations and Activities of Business Associate

- a. Business Associate agrees to not use or disclose PHI other than as permitted or required by this Agreement or as Required By Law.
- b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by this Agreement.
- c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Agreement.
- d. Business Associate agrees to report to Covered Entity any use or disclosure of PHI not provided for by this Agreement of which it becomes aware, including (but not limited to) any violation of HIPAA.
- e. Business Associate agrees to ensure that any agent, including a subcontractor, to whom it provides Protected Health Information received from, or created or received by Business Associate on behalf of Covered Entity agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.
- f. Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information received from, or created or received by Business Associate on behalf of, Covered Entity available to the Covered Entity, or to the Secretary, in a time and manner mutually agreeable or as designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.
- g. Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.
- h. Business Associate agrees to provide to Covered Entity or an Individual, in time and manner mutually agreeable, information collected in accordance with this Agreement and the Contract, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.
- i. Business Associate agrees to take reasonable steps to cure a breach of or to terminate this Agreement if it becomes aware of a pattern of activity or practice by Covered Entity that violates this Agreement.
- j. Business Associate agrees and understands that a violation of its obligations under this Agreement may subject Business Associate to civil and criminal penalties pursuant to Section 13404(c) of the HITCECH Act.

III. Permitted Uses and Disclosures by Business Associate

Except as otherwise limited in this Agreement, Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, Covered Entity as specified in the Contract, provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity or the minimum necessary policies and procedures of the Covered Entity.

IV. Permissible Requests by Covered Entity

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

VI. Term and Termination

- a. Term. The Term of this Agreement shall be effective as of the effective date of the Contract, and shall terminate when all of the Protected Health Information provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information in accordance with the termination provisions in this Section.
- b. Termination for Cause. Upon Covered Entity's knowledge of a material breach by Business Associate, Covered Entity shall either:
  1. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and the Contract if Business Associate does not cure the breach or end the violation within the time specified by Covered Entity;
  2. Immediately terminate this Agreement and the Contract if Business Associate has breached a material term of this Agreement and cure is not possible: or
  3. If neither termination nor cure is feasible, Covered Entity shall report the violation to the Secretary.
- c. Effect of Termination.
  1. Except as provided in paragraph (2) of this section, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all Protected Health Information received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the Protected Health Information.
  2. In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction infeasible. Upon determination by Business Associate that return or destruction of Protected Health Information is infeasible, Business Associate shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

VII. Miscellaneous

- a. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.
- b. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.
- c. Survival. The respective rights and obligations of Business Associate under Section 6 of this Agreement shall survive the termination of this Agreement.
- d. Interpretation. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule.

| | |
|---|---|
| **Southwest Key Programs, Inc.** (DocuSigned by:) | **Jana Garza, FNP. Nutrix Medical Worx, PLLC.** |
| By: Iris Y. Gonzalez | By: [signature] |
| Name: Iris Y. Gonzalez | Name: Dr. Jana Garza |
| Title: Senior Legal Counsel | Title: CEO |
| Date: 7/9/2020 | Date: 7/12/20 |

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

southwest key programs

| SOUTHWEST KEY USE ONLY |
|---|
| ☐ W-9 completed/forwarded to AP |
| Reviewed/approved by ☐ PD ☒ RED ☐ VP ☐ |
| Contract Monitor: Kimberlynn Luke |

## CONTRACT FOR SERVICES AND DECLARATION OF INDEPENDENT BUSINESS STATUS

### Specific Terms and Conditions and Declaration

| | | | |
|---|---|---|---|
| **Contractor's Full Name:** | Jana Garza, FNP<br>Nutrix Medical Worx, PLLC | **Mailing Address:** | 7333 45 North Unit 450<br>Houston, TX 77076 |
| **Home/Office Phone Number:** | 1-956-640-6775 | **Mobile Phone Number:** | |
| **Email address:** | janagarza@nutrixmedicalworx.com | | |
| **Rate of Pay:** | ☐ **total:** ☐ **/hour**<br>☒ **Other (specify): PCU-Claims submitted to Insurance for payment** | | |
| **Term of the Agreement (choose one):** | ☐ **One day/event; specify day or event:**<br>☐ **Through completion of the work or as specified in the attached proposal(s)/invoice(s).**<br>☐ **One year from the date of execution.**<br>☒ **From** 6/6/2020 **through** 6/5/2021. | | |
| **Description of Services to be Provided by Contractor:** | **Attach proposal and check this box** ☒ **or describe services:** See attachments A and A1-A5 | | |
| **Mailing Address for Billing:** | 15101 East Frwy, Channelview, TX 77530 (P962) | | |

Contractor understands that as a contractor of Southwest Key Programs, Inc. ("Southwest Key"), Contractor is bound by the general terms and conditions available at https://southwestkey.org/general-terms-and-conditions/ . which Contractor confirms it has reviewed and a separate copy of which will be provided upon request. If Contractor has any questions about this document or needs to send Southwest Key correspondence concerning this agreement, notice/contact should be made to: General Counsel, Southwest Key, 6002 Jain Lane, Austin, Texas 78721 or to legal@swkey.org.

Contractor acknowledges that the following declaration of independent business status is made by Contractor in relation to services performed by Contractor for or in connection with Southwest Key. Contractor states and declares the following: (1) Contractor acknowledges that Contractor operates Contractor's own independent business and is providing services for or in connection with Southwest Key as an independent contractor; (2) Contractor acknowledges that Contractor is not an employee of Southwest Key and the services rendered for or in connection with Southwest Key do not establish any right to unemployment benefits or any other right arising from an employment relationship; (3) Contractor is responsible for all tax liability associated with payments received from or through Southwest Key and Southwest Key will not withhold any taxes from payments to Contractor; (4) Contractor is responsible for obtaining and maintaining any required registration, licenses, or other authorization necessary for the services rendered by Contractor;5) Contractor is not insured under Southwest Key's health insurance coverage or workers compensation insurance coverage; (6) Southwest Key does not restrict Contractor's ability to perform services for or through other parties and Contractor is authorized to accept work from and perform work for other businesses and individuals beside Southwest Key; (7) Contractor has the right to accept or decline requests for services by or through Southwest Key; (8) Southwest Key expects that Contractor provides services for other parties; (9) Contractor is not economically dependent on the services performed for or in connection with Southwest Key; (10) Southwest Key does not dictate the performance, methods, or process Contractor uses to perform the services performed for or in connection with Southwest Key; and (11) the terms set forth in this declaration apply to Contractor, Contractor's employees, and Contractor's independent contractors.

| | | | |
|---|---|---|---|
| [signature] | 7/12/20 | DocuSigned by: Iris Y. Gonzalez | 7/9/2020 |
| CONTRACTOR | DATE | SIGNATORY FOR SOUTHWEST KEY | DATE |

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

# BUSINESS ASSOCIATE AGREEMENT

I. Definitions. Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the Privacy Rule.

a. Business Associate. "Business Associate" shall mean **Jana Garza, FNP. Nutrix Medical Worx, PLLC.** ("Business Associate").
b. Contract. "Contract" shall mean the **Contract For Services** entered into between Business Associate and Southwest Key Programs, Inc.
c. Covered Entity. "Covered Entity" shall mean Southwest Key Programs, Inc.
d. Individual. "Individual" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).
e. Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E.
f. Protected Health Information. "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.
g. Required By Law. "Required By Law" shall have the same meaning as the term "required by law" in 45 CFR § 164.103.
h. Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

II. Obligations and Activities of Business Associate

a. Business Associate agrees to not use or disclose PHI other than as permitted or required by this Agreement or as Required By Law.
b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by this Agreement.
c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Agreement.
d. Business Associate agrees to report to Covered Entity any use or disclosure of PHI not provided for by this Agreement of which it becomes aware including (but not limited to) any violation of HIPAA.
e. Business Associate agrees to ensure that any agent, including a subcontractor, to whom it provides Protected Health Information received from, or created or received by Business Associate on behalf of Covered Entity agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.
f. Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information received from, or created or received by Business Associate on behalf of, Covered Entity available to the Covered Entity, or to the Secretary, in a time and manner mutually agreeable or as designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.
g. Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.
h. Business Associate agrees to provide to Covered Entity or an Individual, in time and manner mutually agreeable, information collected in accordance with this Agreement and the Contract, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.
i. Business Associate agrees to take reasonable steps to cure a breach of or to terminate this Agreement if it becomes aware of a pattern of activity or practice by Covered Entity that violates this Agreement.
j. Business Associate agrees and understands that a violation of its obligations under this Agreement may subject Business Associate to civil and criminal penalties pursuant to Section 13404(c) of the HITCECH Act.

III. Permitted Uses and Disclosures by Business Associate

Except as otherwise limited in this Agreement, Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, Covered Entity as specified in the Contract, provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity or the minimum necessary policies and procedures of the Covered Entity.

IV. Permissible Requests by Covered Entity

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

VI. Term and Termination

a. Term. The Term of this Agreement shall be effective as of the effective date of the Contract, and shall terminate when all of the Protected Health Information provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information in accordance with the termination provisions in this Section.
b. Termination for Cause. Upon Covered Entity's knowledge of a material breach by Business Associate, Covered Entity shall either:
   1. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and the Contract if Business Associate does not cure the breach or end the violation within the time specified by Covered Entity;
   2. Immediately terminate this Agreement and the Contract if Business Associate has breached a material term of this Agreement and cure is not possible; or
   3. If neither termination nor cure is feasible, Covered Entity shall report the violation to the Secretary.
c. Effect of Termination.
   1. Except as provided in paragraph (2) of this section, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all Protected Health Information received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the Protected Health Information.
   2. In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction infeasible. Upon determination by Business Associate that return or destruction of Protected Health Information is infeasible, Business Associate shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

VII. Miscellaneous

a. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.
b. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.
c. Survival. The respective rights and obligations of Business Associate under Section 6 of this Agreement shall survive the termination of this Agreement.
d. Interpretation. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule.

| | |
|---|---|
| **Southwest Key Programs, Inc.** | **Jana Garza, FNP. Nutrix Medical Worx, PLLC.** |
| DocuSigned by: **By:** Iris Y. Gonzalez | **By:** [signature] |
| **Name:** Iris Y. Gonzalez (A5C8E4C7BF64E3...) | **Name:** Dr. Jana Garza |
| **Title:** Senior Legal Counsel | **Title:** CEO |
| **Date:** 7/9/2020 | **Date:** 7/12/20 |

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

southwest key programs

| SOUTHWEST KEY USE ONLY |
|---|
| ☐ W-9 completed/forwarded to AP |
| Reviewed/approved by ☐ PD ☒ RED ☐ VP ☐ |
| Contract Monitor: Kimberlynn Luke |

# CONTRACT FOR SERVICES AND DECLARATION OF INDEPENDENT BUSINESS STATUS

## Specific Terms and Conditions and Declaration

| | | | |
|---|---|---|---|
| Contractor's Full Name: | Jana Garza, FNP<br>Nutrix Medical Worx, PLLC | Mailing Address: | 7333 45 North Unit 450<br>Houston, TX 77076 |
| Home/Office Phone Number: | 1-956-640-6775 | Mobile Phone Number: | |
| Email address: | janagarza@nutrixmedicalworx.com | | |
| Rate of Pay: | ☐ total: ☐ /hour<br>☒ Other (specify): PCU-Claims submitted to Insurance for payment | | |
| Term of the Agreement (choose one): | ☐ One day/event; specify day or event:<br>☐ Through completion of the work or as specified in the attached proposal(s)/invoice(s).<br>☐ One year from the date of execution.<br>☒ From 6/6/2020 through 6/5/2021. | | |
| Description of Services to be Provided by Contractor: | Attach proposal and check this box ☒ or describe services: See attachments A and A1-A5 | | |
| Mailing Address for Billing: | 7900 Mesa Dr. Houston, TX 77028 (P950) | | |

Contractor understands that as a contractor of Southwest Key Programs, Inc. ("Southwest Key"), Contractor is bound by the general terms and conditions available at https://southwestkey.org/general-terms-and-conditions/ , which Contractor confirms it has reviewed and a separate copy of which will be provided upon request. If Contractor has any questions about this document or needs to send Southwest Key correspondence concerning this agreement, notice/contact should be made to: General Counsel, Southwest Key, 6002 Jain Lane, Austin, Texas 78721 or to legal@swkey.org.

Contractor acknowledges that the following declaration of independent business status is made by Contractor in relation to services performed by Contractor for or in connection with Southwest Key. Contractor states and declares the following: (1) Contractor acknowledges that Contractor operates Contractor's own independent business and is providing services for or in connection with Southwest Key as an independent contractor; (2) Contractor acknowledges that Contractor is not an employee of Southwest Key and the services rendered for or in connection with Southwest Key do not establish any right to unemployment benefits or any other right arising from an employment relationship; (3) Contractor is responsible for all tax liability associated with payments received from or through Southwest Key and Southwest Key will not withhold any taxes from payments to Contractor; (4) Contractor is responsible for obtaining and maintaining any required registration, licenses, or other authorization necessary for the services rendered by Contractor;5) Contractor is not insured under Southwest Key's health insurance coverage or workers compensation insurance coverage; (6) Southwest Key does not restrict Contractor's ability to perform services for or through other parties and Contractor is authorized to accept work from and perform work for other businesses and individuals beside Southwest Key; (7) Contractor has the right to accept or decline requests for services by or through Southwest Key; (8) Southwest Key expects that Contractor provides services for other parties; (9) Contractor is not economically dependent on the services performed for or in connection with Southwest Key; (10) Southwest Key does not dictate the performance, methods, or process Contractor uses to perform the services performed for or in connection with Southwest Key; and (11) the terms set forth in this declaration apply to Contractor, Contractor's employees, and Contractor's independent contractors.

| | | | |
|---|---|---|---|
| [signature] | 7/12/20 | DocuSigned by: Iris Y. Gonzalez | 7/9/2020 |
| CONTRACTOR | DATE | SIGNATORY FOR SOUTHWEST KEY | DATE |

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

# BUSINESS ASSOCIATE AGREEMENT

I. Definitions. Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the Privacy Rule.

a. Business Associate. "Business Associate" shall mean **Jana Garza, FNP. Nutrix Medical Worx, PLLC.** ("Business Associate").
b. Contract. "Contract" shall mean the **Contract For Services** entered into between Business Associate and Southwest Key Programs, Inc.
c. Covered Entity. "Covered Entity" shall mean Southwest Key Programs, Inc.
d. Individual. "Individual" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).
e. Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E.
f. Protected Health Information. "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.
g. Required By Law. "Required By Law" shall have the same meaning as the term "required by law" in 45 CFR § 164.103.
h. Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

II. Obligations and Activities of Business Associate

a. Business Associate agrees to not use or disclose PHI other than as permitted or required by this Agreement or as Required By Law.
b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by this Agreement.
c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Agreement.
d. Business Associate agrees to report to Covered Entity any use or disclosure of PHI not provided for by this Agreement of which it becomes aware, including (but not limited to) any violation of HIPAA.
e. Business Associate agrees to ensure that any agent, including a subcontractor, to whom it provides Protected Health Information received from, or created or received by Business Associate on behalf of Covered Entity agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.
f. Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information received from, or created or received by Business Associate on behalf of, Covered Entity available to the Covered Entity, or to the Secretary, in a time and manner mutually agreeable or as designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.
g. Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528
h. Business Associate agrees to provide to Covered Entity or an Individual, in time and manner mutually agreeable, information collected in accordance with this Agreement and the Contract, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.
i. Business Associate agrees to take reasonable steps to cure a breach of or to terminate this Agreement if it becomes aware of a pattern of activity or practice by Covered Entity that violates this Agreement.
j. Business Associate agrees and understands that a violation of its obligations under this Agreement may subject Business Associate to civil and criminal penalties pursuant to Section 13404(c) of the HITCECH Act.

III. Permitted Uses and Disclosures by Business Associate

Except as otherwise limited in this Agreement, Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, Covered Entity as specified in the Contract, provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity or the minimum necessary policies and procedures of the Covered Entity.

IV. Permissible Requests by Covered Entity

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

VI. Term and Termination

a. Term. The Term of this Agreement shall be effective as of the effective date of the Contract, and shall terminate when all of the Protected Health Information provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information in accordance with the termination provisions in this Section.
b. Termination for Cause. Upon Covered Entity's knowledge of a material breach by Business Associate, Covered Entity shall either:
   1. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and the Contract if Business Associate does not cure the breach or end the violation within the time specified by Covered Entity;
   2. Immediately terminate this Agreement and the Contract if Business Associate has breached a material term of this Agreement and cure is not possible; or
   3. If neither termination nor cure is feasible, Covered Entity shall report the violation to the Secretary.
c. Effect of Termination.
   1. Except as provided in paragraph (2) of this section, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all Protected Health Information received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the Protected Health Information.
   2. In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction infeasible. Upon determination by Business Associate that return or destruction of Protected Health Information is infeasible, Business Associate shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

VII. Miscellaneous

a. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.
b. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.
c. Survival. The respective rights and obligations of Business Associate under Section 6 of this Agreement shall survive the termination of this Agreement.
d. Interpretation. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule.

| | |
|---|---|
| Southwest Key Programs, Inc. (DocuSigned by:) | Jana Garza, FNP. Nutrix Medical Worx, PLLC. |
| By: *Iris Y. Gonzalez* | By: *[signature]* |
| Name: Iris Y. Gonzalez | Name: Dr. Jana Garza |
| Title: Senior Legal Counsel | Title: CEO |
| Date: 7/9/2020 | Date: 7/12/20 |

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

| SOUTHWEST KEY USE ONLY |
|---|
| ☐ W-9 completed/forwarded to AP |
| Reviewed/approved by ☐ PD ☒ RED ☐ VP ☐ |
| Contract Monitor: Kimberlynn Luke |

southwest key programs

## CONTRACT FOR SERVICES AND DECLARATION OF INDEPENDENT BUSINESS STATUS

### Specific Terms and Conditions and Declaration

| | | | |
|---|---|---|---|
| **Contractor's Full Name:** | Jana Garza, FNP<br>Nutrix Medical Worx, PLLC | **Mailing Address:** | 7333 45 North Unit 450<br>Houston, TX 77076 |
| **Home/Office Phone Number:** | 1-956-640-6775 | **Mobile Phone Number:** | |
| **Email address:** | janagarza@nutrixmedicalworx.com | | |
| **Rate of Pay:** | ☐ total: ☐ /hour<br>☒ Other (specify): PCU-Claims submitted to Insurance for payment | | |
| **Term of the Agreement (choose one):** | ☐ One day/event; specify day or event:<br>☐ Through completion of the work or as specified in the attached proposal(s)/invoice(s).<br>☐ One year from the date of execution.<br>☒ From 6/6/2020 through 6/5/2021. | | |
| **Description of Services to be Provided by Contractor:** | Attach proposal and check this box ☒ or describe services: See attachments A and A1-A5 | | |
| **Mailing Address for Billing:** | 7407 North Fwy Houston, TX 77076 (P961) | | |

Contractor understands that as a contractor of Southwest Key Programs, Inc. ("Southwest Key"), Contractor is bound by the general terms and conditions available at https://southwestkey.org/general-terms-and-conditions/ , which Contractor confirms it has reviewed and a separate copy of which will be provided upon request. If Contractor has any questions about this document or needs to send Southwest Key correspondence concerning this agreement, notice/contact should be made to: General Counsel, Southwest Key, 6002 Jain Lane, Austin, Texas 78721 or to legal@swkey.org.

Contractor acknowledges that the following declaration of independent business status is made by Contractor in relation to services performed by Contractor for or in connection with Southwest Key. Contractor states and declares the following: (1) Contractor acknowledges that Contractor operates Contractor's own independent business and is providing services for or in connection with Southwest Key as an independent contractor; (2) Contractor acknowledges that Contractor is not an employee of Southwest Key and the services rendered for or in connection with Southwest Key do not establish any right to unemployment benefits or any other right arising from an employment relationship; (3) Contractor is responsible for all tax liability associated with payments received from or through Southwest Key and Southwest Key will not withhold any taxes from payments to Contractor; (4) Contractor is responsible for obtaining and maintaining any required registration, licenses, or other authorization necessary for the services rendered by Contractor;5) Contractor is not insured under Southwest Key's health insurance coverage or workers compensation insurance coverage; (6) Southwest Key does not restrict Contractor's ability to perform services for or through other parties and Contractor is authorized to accept work from and perform work for other businesses and individuals beside Southwest Key; (7) Contractor has the right to accept or decline requests for services by or through Southwest Key; (8) Southwest Key expects that Contractor provides services for other parties; (9) Contractor is not economically dependent on the services performed for or in connection with Southwest Key; (10) Southwest Key does not dictate the performance, methods, or process Contractor uses to perform the services performed for or in connection with Southwest Key; and (11) the terms set forth in this declaration apply to Contractor, Contractor's employees, and Contractor's independent contractors.

[signature] 7-12-20 DocuSigned by: Iris Y. Gonzalez 7/9/2020

CONTRACTOR DATE SIGNATORY FOR SOUTHWEST KEY DATE

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

# BUSINESS ASSOCIATE AGREEMENT

I. Definitions. Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the Privacy Rule.

a. Business Associate. "Business Associate" shall mean **Jana Garza, FNP. Nutrix Medical Worx, PLLC.** ("Business Associate").
b. Contract. "Contract" shall mean the **Contract For Services** entered into between Business Associate and Southwest Key Programs, Inc.
c. Covered Entity. "Covered Entity" shall mean Southwest Key Programs, Inc.
d. Individual. "Individual" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).
e. Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E.
f. Protected Health Information. "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.
g. Required By Law. "Required By Law" shall have the same meaning as the term "required by law" in 45 CFR § 164.103.
h. Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

II. Obligations and Activities of Business Associate

a. Business Associate agrees to not use or disclose PHI other than as permitted or required by this Agreement or as Required By Law.
b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by this Agreement.
c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Agreement.
d. Business Associate agrees to report to Covered Entity any use or disclosure of PHI not provided for by this Agreement of which it becomes aware, including (but not limited to) any violation of HIPAA.
e. Business Associate agrees to ensure that any agent, including a subcontractor, to whom it provides Protected Health Information received from, or created or received by Business Associate on behalf of Covered Entity agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.
f. Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information received from, or created or received by Business Associate on behalf of, Covered Entity available to the Covered Entity, or to the Secretary, in a time and manner mutually agreeable or as designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.
g. Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.
h. Business Associate agrees to provide to Covered Entity or an Individual, in time and manner mutually agreeable, information collected in accordance with this Agreement and the Contract, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.
i. Business Associate agrees to take reasonable steps to cure a breach of or to terminate this Agreement if it becomes aware of a pattern of activity or practice by Covered Entity that violates this Agreement.
j. Business Associate agrees and understands that a violation of its obligations under this Agreement may subject Business Associate to civil and criminal penalties pursuant to Section 13404(c) of the HITCECH Act.

III. Permitted Uses and Disclosures by Business Associate

Except as otherwise limited in this Agreement, Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, Covered Entity as specified in the Contract, provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity or the minimum necessary policies and procedures of the Covered Entity.

IV. Permissible Requests by Covered Entity

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

VI. Term and Termination

a. Term. The Term of this Agreement shall be effective as of the effective date of the Contract, and shall terminate when all of the Protected Health Information provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information, in accordance with the termination provisions in this Section.
b. Termination for Cause. Upon Covered Entity's knowledge of a material breach by Business Associate, Covered Entity shall either:
   1. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and the Contract if Business Associate does not cure the breach or end the violation within the time specified by Covered Entity;
   2. Immediately terminate this Agreement and the Contract if Business Associate has breached a material term of this Agreement and cure is not possible; or
   3. If neither termination nor cure is feasible, Covered Entity shall report the violation to the Secretary.
c. Effect of Termination.
   1. Except as provided in paragraph (2) of this section, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all Protected Health Information received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the Protected Health Information.
   2. In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction infeasible. Upon determination by Business Associate that return or destruction of Protected Health Information is infeasible, Business Associate shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

VII. Miscellaneous

a. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.
b. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.
c. Survival. The respective rights and obligations of Business Associate under Section 6 of this Agreement shall survive the termination of this Agreement.
d. Interpretation. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule.

| Southwest Key Programs, Inc. | Jana Garza, FNP. Nutrix Medical Worx, PLLC. |
|---|---|
| DocuSigned by: By: Iris Y. Gonzalez | By: [signature] |
| Name: Iris Y. Gonzalez | Name: Dr. Jana Garza |
| Title: Senior Legal Counsel | Title: CEO |
| Date: 7/9/2020 | Date: 7/12/20 |

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

| SOUTHWEST KEY USE ONLY |
|---|
| ☐ W-9 completed/forwarded to AP |
| Reviewed/approved by ☐ PD ☒ RED ☐ VP ☐ |
| Contract Monitor: Kimberlynn Luke |

southwest key programs

# CONTRACT FOR SERVICES AND DECLARATION OF INDEPENDENT BUSINESS STATUS

## Specific Terms and Conditions and Declaration

| | | | |
|---|---|---|---|
| Contractor's Full Name: | Jana Garza, FNP<br>Nutrix Medical Worx, PLLC | Mailing Address: | 7333 45 North Unit 450<br>Houston, TX 77076 |
| Home/Office Phone Number: | 1-956-640-6775 | Mobile Phone Number: | |
| Email address: | janagarza@nutrixmedicalworx.com | | |
| Rate of Pay: | ☐ total: ☐ /hour<br>☒ Other (specify): PCU-Claims submitted to Insurance for payment | | |
| Term of the Agreement (choose one): | ☐ One day/event; specify day or event:<br>☐ Through completion of the work or as specified in the attached proposal(s)/invoice(s).<br>☐ One year from the date of execution.<br>☒ From 6/6/2020 through 6/5/2021. | | |
| Description of Services to be Provided by Contractor: | Attach proposal and check this box ☒ or describe services: See attachments A and A1-A5 | | |
| Mailing Address for Billing: | 1550 La Concha Lane, Houston, TX 77054 (P955) | | |

Contractor understands that as a contractor of Southwest Key Programs, Inc. ("Southwest Key"), Contractor is bound by the general terms and conditions available at https://southwestkey.org/general-terms-and-conditions/ , which Contractor confirms it has reviewed and a separate copy of which will be provided upon request. If Contractor has any questions about this document or needs to send Southwest Key correspondence concerning this agreement, notice/contact should be made to: General Counsel, Southwest Key, 6002 Jain Lane, Austin, Texas 78721 or to legal@swkey.org.

Contractor acknowledges that the following declaration of independent business status is made by Contractor in relation to services performed by Contractor for or in connection with Southwest Key. Contractor states and declares the following: (1) Contractor acknowledges that Contractor operates Contractor's own independent business and is providing services for or in connection with Southwest Key as an independent contractor; (2) Contractor acknowledges that Contractor is not an employee of Southwest Key and the services rendered for or in connection with Southwest Key do not establish any right to unemployment benefits or any other right arising from an employment relationship; (3) Contractor is responsible for all tax liability associated with payments received from or through Southwest Key and Southwest Key will not withhold any taxes from payments to Contractor; (4) Contractor is responsible for obtaining and maintaining any required registration, licenses, or other authorization necessary for the services rendered by Contractor;5) Contractor is not insured under Southwest Key's health insurance coverage or workers compensation insurance coverage; (6) Southwest Key does not restrict Contractor's ability to perform services for or through other parties and Contractor is authorized to accept work from and perform work for other businesses and individuals beside Southwest Key; (7) Contractor has the right to accept or decline requests for services by or through Southwest Key; (8) Southwest Key expects that Contractor provides services for other parties; (9) Contractor is not economically dependent on the services performed for or in connection with Southwest Key; (10) Southwest Key does not dictate the performance, methods, or process Contractor uses to perform the services performed for or in connection with Southwest Key; and (11) the terms set forth in this declaration apply to Contractor, Contractor's employees, and Contractor's independent contractors.

[signature] 7/12/20 DocuSigned by: Iris Y. Gonzalez 7/9/2020

CONTRACTOR DATE SIGNATURE FOR SOUTHWEST KEY DATE

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

# BUSINESS ASSOCIATE AGREEMENT

I. Definitions. Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the Privacy Rule.

a. Business Associate. "Business Associate" shall mean **Jana Garza, FNP. Nutrix Medical Worx, PLLC.** ("Business Associate").
b. Contract. "Contract" shall mean the **Contract For Services** entered into between Business Associate and Southwest Key Programs, Inc.
c. Covered Entity. "Covered Entity" shall mean Southwest Key Programs, Inc.
d. Individual. "Individual" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).
e. Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E.
f. Protected Health Information. "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.
g. Required By Law. "Required By Law" shall have the same meaning as the term "required by law" in 45 CFR § 164.103.
h. Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

II. Obligations and Activities of Business Associate

a. Business Associate agrees to not use or disclose PHI other than as permitted or required by this Agreement or as Required By Law.
b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by this Agreement.
c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Agreement.
d. Business Associate agrees to report to Covered Entity any use or disclosure of PHI not provided for by this Agreement of which it becomes aware, including (but not limited to) any violation of HIPAA.
e. Business Associate agrees to ensure that any agent, including a subcontractor, to whom it provides Protected Health Information received from, or created or received by Business Associate on behalf of Covered Entity agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.
f. Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information received from, or created or received by Business Associate on behalf of, Covered Entity available to the Covered Entity, or to the Secretary, in a time and manner mutually agreeable or as designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.
g. Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.
h. Business Associate agrees to provide to Covered Entity or an Individual, in time and manner mutually agreeable, information collected in accordance with this Agreement and the Contract, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.
i. Business Associate agrees to take reasonable steps to cure a breach of or to terminate this Agreement if it becomes aware of a pattern of activity or practice by Covered Entity that violates this Agreement.
j. Business Associate agrees and understands that a violation of its obligations under this Agreement may subject Business Associate to civil and criminal penalties pursuant to Section 13404(c) of the HITCECH Act.

III. Permitted Uses and Disclosures by Business Associate

Except as otherwise limited in this Agreement, Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, Covered Entity as specified in the Contract, provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity or the minimum necessary policies and procedures of the Covered Entity.

IV. Permissible Requests by Covered Entity

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

VI. Term and Termination

a. Term. The Term of this Agreement shall be effective as of the effective date of the Contract, and shall terminate when all of the Protected Health Information provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information, in accordance with the termination provisions in this Section.
b. Termination for Cause. Upon Covered Entity's knowledge of a material breach by Business Associate, Covered Entity shall either:
   1. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and the Contract if Business Associate does not cure the breach or end the violation within the time specified by Covered Entity;
   2. Immediately terminate this Agreement and the Contract if Business Associate has breached a material term of this Agreement and cure is not possible; or
   3. If neither termination nor cure is feasible, Covered Entity shall report the violation to the Secretary.
c. Effect of Termination:
   1. Except as provided in paragraph (2) of this section, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all Protected Health Information received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the Protected Health Information.
   2. In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction infeasible. Upon determination by Business Associate that return or destruction of Protected Health Information is infeasible, Business Associate shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

VII. Miscellaneous

a. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.
b. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.
c. Survival. The respective rights and obligations of Business Associate under Section 6 of this Agreement shall survive the termination of this Agreement.
d. Interpretation. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule.

| | |
|---|---|
| Southwest Key Programs, Inc. | Jana Garza, FNP. Nutrix Medical Worx, PLLC. |
| DocuSigned by: By: Iris Y. Gonzalez | By: [signature] |
| Name: Iris Y. Gonzalez | Name: Dr. Jana Garza |
| Title: Senior Legal Counsel | Title: CEO |
| Date: 7/9/2020 | Date: 7-12-20 |

DocuSign Envelope ID: CF3F19D3-991B-40AB-97B4-3E51D5C246E7

# BUSINESS ASSOCIATE AGREEMENT

I. Definitions. Terms used, but not otherwise defined, in this Agreement shall have the same meaning as those terms in the Privacy Rule.

a. Business Associate. "Business Associate" shall mean **Jana Garza, FNP, Nutrix Medical Worx, PLLC.** ("Business Associate").
b. Contract. "Contract" shall mean the **Contract For Services** entered into between Business Associate and Southwest Key Programs, Inc.
c. Covered Entity. "Covered Entity" shall mean Southwest Key Programs, Inc.
d. Individual. "Individual" shall have the same meaning as the term "individual" in 45 CFR § 160.103 and shall include a person who qualifies as a personal representative in accordance with 45 CFR § 164.502(g).
e. Privacy Rule. "Privacy Rule" shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR Part 160 and Part 164, Subparts A and E.
f. Protected Health Information. "Protected Health Information" or "PHI" shall have the same meaning as the term "protected health information" in 45 CFR § 160.103, limited to the information created or received by Business Associate from or on behalf of Covered Entity.
g. Required By Law. "Required By Law" shall have the same meaning as the term "required by law" in 45 CFR § 164.103.
h. Secretary. "Secretary" shall mean the Secretary of the Department of Health and Human Services or his designee.

II. Obligations and Activities of Business Associate

a. Business Associate agrees to not use or disclose PHI other than as permitted or required by this Agreement or as Required By Law.
b. Business Associate agrees to use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by this Agreement.
c. Business Associate agrees to mitigate, to the extent practicable, any harmful effect that is known to Business Associate of a use or disclosure of Protected Health Information by Business Associate in violation of the requirements of this Agreement.
d. Business Associate agrees to report to Covered Entity any use or disclosure of PHI not provided for by this Agreement of which it becomes aware, including (but not limited to) any violation of HIPAA.
e. Business Associate agrees to ensure that any agent, including a subcontractor, to whom it provides Protected Health Information received from, or created or received by Business Associate on behalf of Covered Entity agrees to the same restrictions and conditions that apply through this Agreement to Business Associate with respect to such information.
f. Business Associate agrees to make internal practices, books, and records, including policies and procedures and Protected Health Information, relating to the use and disclosure of Protected Health Information received from, or created or received by Business Associate on behalf of, Covered Entity available to the Covered Entity, or to the Secretary, in a time and manner mutually agreeable or as designated by the Secretary, for purposes of the Secretary determining Covered Entity's compliance with the Privacy Rule.
g. Business Associate agrees to document such disclosures of PHI and information related to such disclosures as would be required for Covered Entity to respond to a request by an Individual for an accounting of disclosures of PHI in accordance with 45 CFR § 164.528.
h. Business Associate agrees to provide to Covered Entity or an Individual, in time and manner mutually agreeable, information collected in accordance with this Agreement and the Contract, to permit Covered Entity to respond to a request by an Individual for an accounting of disclosures of Protected Health Information in accordance with 45 CFR § 164.528.
i. Business Associate agrees to take reasonable steps to cure a breach of or to terminate this Agreement if it becomes aware of a pattern of activity or practice by Covered Entity that violates this Agreement.
j. Business Associate agrees and understands that a violation of its obligations under this Agreement may subject Business Associate to civil and criminal penalties pursuant to Section 13404(c) of the HITCECH Act.

III. Permitted Uses and Disclosures by Business Associate

Except as otherwise limited in this Agreement, Business Associate may use or disclose Protected Health Information to perform functions, activities, or services for, or on behalf of, Covered Entity as specified in the Contract, provided that such use or disclosure would not violate the Privacy Rule if done by Covered Entity or the minimum necessary policies and procedures of the Covered Entity.

IV. Permissible Requests by Covered Entity

Covered Entity shall not request Business Associate to use or disclose Protected Health Information in any manner that would not be permissible under the Privacy Rule if done by Covered Entity.

VI. Term and Termination

a. Term. The Term of this Agreement shall be effective as of the effective date of the Contract, and shall terminate when all of the Protected Health Information provided by Covered Entity to Business Associate, or created or received by Business Associate on behalf of Covered Entity, is destroyed or returned to Covered Entity, or, if it is infeasible to return or destroy Protected Health Information, protections are extended to such information, in accordance with the termination provisions in this Section.
b. Termination for Cause. Upon Covered Entity's knowledge of a material breach by Business Associate, Covered Entity shall either:
   1. Provide an opportunity for Business Associate to cure the breach or end the violation and terminate this Agreement and the Contract if Business Associate does not cure the breach or end the violation within the time specified by Covered Entity;
   2. Immediately terminate this Agreement and the Contract if Business Associate has breached a material term of this Agreement and cure is not possible; or
   3. If neither termination nor cure is feasible, Covered Entity shall report the violation to the Secretary.
c. Effect of Termination.
   1. Except as provided in paragraph (2) of this section, upon termination of this Agreement, for any reason, Business Associate shall return or destroy all Protected Health Information received from Covered Entity, or created or received by Business Associate on behalf of Covered Entity. This provision shall apply to Protected Health Information that is in the possession of subcontractors or agents of Business Associate. Business Associate shall retain no copies of the Protected Health Information.
   2. In the event that Business Associate determines that returning or destroying the Protected Health Information is infeasible, Business Associate shall provide to Covered Entity notification of the conditions that make return or destruction infeasible. Upon determination by Business Associate that return or destruction of Protected Health Information is infeasible, Business Associate shall extend the protections of this Agreement to such Protected Health Information and limit further uses and disclosures of such Protected Health Information to those purposes that make the return or destruction infeasible, for so long as Business Associate maintains such Protected Health Information.

VII. Miscellaneous

a. Regulatory References. A reference in this Agreement to a section in the Privacy Rule means the section as in effect or as amended.
b. Amendment. The Parties agree to take such action as is necessary to amend this Agreement from time to time as is necessary for Covered Entity to comply with the requirements of the Privacy Rule and the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191.
c. Survival. The respective rights and obligations of Business Associate under Section 6 of this Agreement shall survive the termination of this Agreement.
d. Interpretation. Any ambiguity in this Agreement shall be resolved to permit Covered Entity to comply with the Privacy Rule.

| | |
|---|---|
| DocuSigned by: Southwest Key Programs, Inc. | Jana Garza FNP, Nutrix Medical Worx, PLLC |
| By: Iris Y. Gonzalez | By: [signature] |
| Name: Iris Y. Gonzalez (43C5E4C7BF6423...) | Name: Dr. Jana Garza |
| Title: Senior Legal Counsel | Title: CEO |
| Date: 7/9/2020 | Date: 7/12/20 |

| SOUTHWEST KEY USE ONLY |
|---|
| ☐ W-9 completed/forwarded to AP |
| Reviewed/approved by ☐ PD ☒ RED ☐ VP ☐ |
| Contract Monitor: Kimberlynn Luke |

southwest key programs

# CONTRACT FOR SERVICES AND DECLARATION OF INDEPENDENT BUSINESS STATUS

## Specific Terms and Conditions and Declaration

| | | | |
|---|---|---|---|
| **Contractor's Full Name:** | Jana Garza, FNP<br>Nutrix Medical Worx, PLLC | **Mailing Address:** | 7333 45 North Unit 450<br>Houston, TX 77076 |
| **Home/Office Phone Number:** | 1-956-640-6775 | **Mobile Phone Number:** | |
| **Email address:** | janagarza@nutrixmedicalworx.com | | |
| **Rate of Pay:** | ☐ total: ☐ /hour<br>☒ Other (specify): PCU-Claims submitted to Insurance for payment | | |
| **Term of the Agreement (choose one):** | ☐ One day/event; specify day or event:<br>☐ Through completion of the work or as specified in the attached proposal(s)/invoice(s).<br>☐ One year from the date of execution.<br>☒ From 6/6/2020 through 6/5/2021. | | |
| **Description of Services to be Provided by Contractor:** | Attach proposal and check this box ☒ or describe services: See attachments A and A1-A5 | | |
| **Mailing Address for Billing:** | 6160 South Loop E Fwy Svc Rd, Houston, TX 77087 (P974) | | |

Contractor understands that as a contractor of Southwest Key Programs, Inc. ("Southwest Key"), Contractor is bound by the general terms and conditions available at https://southwestkey.org/general-terms-and-conditions/ , which Contractor confirms it has reviewed and a separate copy of which will be provided upon request. If Contractor has any questions about this document or needs to send Southwest Key correspondence concerning this agreement, notice/contact should be made to: General Counsel, Southwest Key, 6002 Jain Lane, Austin, Texas 78721 or to legal@swkey.org.

Contractor acknowledges that the following declaration of independent business status is made by Contractor in relation to services performed by Contractor for or in connection with Southwest Key. Contractor states and declares the following: (1) Contractor acknowledges that Contractor operates Contractor's own independent business and is providing services for or in connection with Southwest Key as an independent contractor; (2) Contractor acknowledges that Contractor is not an employee of Southwest Key and the services rendered for or in connection with Southwest Key do not establish any right to unemployment benefits or any other right arising from an employment relationship; (3) Contractor is responsible for all tax liability associated with payments received from or through Southwest Key and Southwest Key will not withhold any taxes from payments to Contractor; (4) Contractor is responsible for obtaining and maintaining any required registration, licenses, or other authorization necessary for the services rendered by Contractor;5) Contractor is not insured under Southwest Key's health insurance coverage or workers compensation insurance coverage; (6) Southwest Key does not restrict Contractor's ability to perform services for or through other parties and Contractor is authorized to accept work from and perform work for other businesses and individuals beside Southwest Key; (7) Contractor has the right to accept or decline requests for services by or through Southwest Key; (8) Southwest Key expects that Contractor provides services for other parties; (9) Contractor is not economically dependent on the services performed for or in connection with Southwest Key; (10) Southwest Key does not dictate the performance, methods, or process Contractor uses to perform the services performed for or in connection with Southwest Key; and (11) the terms set forth in this declaration apply to Contractor, Contractor's employees, and Contractor's independent contractors.

| | | | |
|---|---|---|---|
| [signature] | 7/12/20 | DocuSigned by: Iris Y. Gonzalez | 7/9/2020 |
| CONTRACTOR | DATE | SIGNATORY FOR SOUTHWEST KEY | DATE |