IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* JANA GARZA,<br><br>*Plaintiff*,<br><br>V.<br><br>SOUTHWEST KEY PROGRAMS, INC., ALYSSA HERNANDEZ, DIEGO NARANJO, DIVINE FAMILY CARE, PLLC, EDER FRANCISCO HERNANDEZ, FANNY RIOSA FIGUEROA, GERALDO RIVERA, MIGDAL EDER, LLC, TRINITY HEALTH SERVICES, PLLC, DIEGO NARANJO D/B/A UC HEALTH CONSULTANTS, AND VALLEY MED URGENT CARE, PLLC,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:22-CV-00467<br>JUDGE MICHAEL J. TRUNCALE |

**ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS OR TRANSFER VENUE**

Before the Court is Defendant Southwest Key Programs Inc. ("Southwest Key")'s Motion to Dismiss for Improper Venue, or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). [Dkt. 49]. Also before the Court is the Naranjo & Hernandez Defendants' Motion to Dismiss for Improper Venue Pursuant to Federal Rule of Civil Procedure 12(b)(3). [Dkt. 50]. For the following reasons, the Court **GRANTS IN PART** the motions and **TRANSFERS** the case to the Austin Division of the Western District of Texas.

## I. BACKGROUND

This is a *qui tam* action filed by Relator Jana Garza seeking to recover under the False Claims Act on behalf of herself and the United States.[1] [Dkt. 24 at ¶ 2]. Although initially filed in

[1] The United States declined intervention. [Dkt. 7].

this Court, all Parties agree that the Eastern District of Texas is an improper venue. [Dkts. 49, 50, 51]. The essential disputes for purposes of this Order are (1) whether to dismiss or transfer the case, and (2) if transfer is warranted, whether to transfer the case to the Houston Division of the Southern District of Texas or the Austin Division of the Western District of Texas.

Defendant Southwest Key is "the largest migrant shelter provider in the United States" that claims its mission is "opening doors to opportunity so individuals can achieve their dreams." [Dkt. 24 at ¶ 1]. Southwest Key has contracted with the federal government to provide shelter services to unaccompanied children in Texas, Arizona, and California. *Id.* at ¶ 47. Within Texas, Southwest Key had twenty shelters during the relevant time period. *Id.* at ¶¶ 48–50. Six shelters were in Houston, nine shelters were in south Texas, and the remaining five were in central Texas. *Id.* Since 2014, Southwest Key has operated under several cooperative agreements that it had or has with the Office of Refugee Resettlement ("ORR"), which is a part of the Department of Health and Human Services. *Id.* at ¶¶ 34, 53. Under these agreements, the ORR "provides residential care and services through contracts or through the . . . grant process to organizations . . . that have demonstrated child welfare, social service, or related experience and are appropriately licensed to provide care and related services to dependent children." *Id.* at ¶ 46. Shelters like those operated by Southwest Key operate under these agreements and must meet ORR requirements. *Id.* at ¶ 43.

When a migrant child arrives at one of Southwest Key's shelters, "a shelter provider—through a medical provider—is required to perform an initial medical exam (IME) within 48 hours." *Id.* at ¶ 64. To bill for an IME, the medical provider will use an ID assigned to the child, along with other relevant information, to create a claim to a third party that the federal government uses to process claims. *Id.* at ¶¶ 68–69. Garza has first-hand knowledge of this system because she was a medical provider for Southwest Key. *Id.* at ¶¶ 63, 70.

Garza alleges that the fraudulent schemes involved Defendant Diego Naranjo and Eder Hernandez, who were used to recruit medical providers. *Id.* at ¶ 2. The gravamen of her complaint is that Defendants "steer[ed] Southwest Key's lucrative medical provider contracts for its largest shelters to friends, family, and personal associates in clear violation of conflict of interest, self-dealing, and antikickback prohibitions." *Id.* She alleges that federal money from the ORR was used to pay kickbacks. *Id.*

Based on these allegations, Garza filed this action on October 26, 2022. [Dkt. 1]. She filed her live First Amended Complaint on February 8, 2024, asserting allegations against eleven[2] defendants. [Dkt. 24]. She alleges violations of the Fair Claims Act ("FCA"), claiming specifically that Defendants (1) knowingly presented or caused to be presented, false or fraudulent claims for payment, in violation of 31 U.S.C. § 3729(a)(1)(A); (2) engaged in a conspiracy to violate the FCA, in violation of 31 U.S.C. § 3729(a)(1)(C); and (3) retaliated against Relator, in violation of 31 U.S.C. § 3730(h). *Id.* at ¶¶ 204–29. Defendants filed their motions to dismiss. [Dkts. 49, 50]. Plaintiff filed her response. [Dkt. 51]. The motions are ripe for review.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." Fed. R. Civ. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, No. 1:07-CV-699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff[s] may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). In considering a Rule 12(b)(3) motion, "the court is permitted to look at evidence in the

[2] Two Defendants, Fanny Rosa Figueroa and Geraldo Rivera, have not yet been served, and Garza states she has made repeated efforts to serve them. [Dkt. 51 at 4 n.1].

record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009) (quoting *Ginter ex rel. Ballard v. Belcher, Prendergrast & Laporte*, 536 F.3d 439, 449 (5th Cir. 2008) (Dennis J., dissenting)).

**B. 28 U.S.C. § 1406(a)**

When a case is filed in an improper venue, 28 U.S.C. § 1406(a) permits the district court to dismiss the case or in the interest of justice "transfer such case to any district or division in which it could have been brought." *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 55 (2013) (quoting 28 U.S.C. § 1406(a)). "[A] district is 'wrong' within the meaning of § 1406 whenever there exists an 'obstacle [to] an expeditious and orderly adjudication' on the merits." *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 897 (S.D. Tex. 2013) (alterations in the original) (quoting *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1105 (5th Cir. 1981)).

**C. 28 U.S.C. § 1404(a)**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court thus "should prevent plaintiffs from abusing their privilege [of forum selection] by subjecting defendants to venues that are inconvenient . . . ." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008) (citations omitted). At the same time, "the plaintiff's choice of forum should rarely be disturbed." *Sierra Frac Sand, L.L.C. v. CDE Glob. Ltd.*, 960 F.3d 200, 203 (5th Cir. 2020) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). This is so because, anytime "a defendant is haled into court, some inconvenience is expected and [even] acceptable." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022) (citing *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)). Ultimately, "whether to transfer a case is committed to the [Court's] discretion." *Id.* (first quoting *In re*

*Volkswagen*, 545 F.3d at 311, and then citing *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

## III. DISCUSSION

Southwest Key and the Naranjo and Hernandez Defendants filed their motions to dismiss, claiming that venue is improper in the Eastern District of Texas, and requesting that the case be transferred to the Houston Division of the Southern District of Texas. [Dkts. 49, 50]. In response, Garza concedes that venue is improper in this Court, but requests transfer to the Austin Division of the Western District of Texas. [Dkt. 51]. She also requests that the Court strike the Naranjo and Hernandez Defendants' motion [Dkt. 50]. The Court first addresses Garza's motion to strike, and then proceeds with the venue analysis.

### A. Garza's Motion to Strike

Garza moves to strike the Naranjo and Hernandez Defendants' motion to dismiss for improper venue. [Dkt. 51 at 2–3]. Her reason for so moving is because of her understanding that "'all defendants' would be speaking with a single voice when it came to any forthcoming motion to dismiss" based on Southwest Key's representation to her that its counsel was "authorized to represent the interests of all currently-served defendants in meeting and conferring with [Garza's counsel]" on the venue issue and that Southwest Key jointly moved with the other defendants to establish a briefing schedule on the pending motions. *Id.* In support of her motion to strike, Garza cites Federal Rule of Civil Procedure 12(g)(2) and argues that the Naranjo and Hernandez Defendants' motion is "redundant." *Id.* at 3.

Upon a filing on a motion, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike, however, "should be granted only when the pleading to be stricken has no possible

relation to the controversy." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty.*, 306 F.2d 862, 868 (5th Cir. 1962) (citation omitted). This is so because the act of striking a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice." *Id.* Furthermore, Rule 12(g)(2) states: "Except as provided in Rule 12(h)(2) or (3),[3] a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).

Based on the Court's statutory interpretation of Rule 12(g)(2), the rule is inapplicable here. First, the clause, "a *party* that makes a motion under this rule must not make *another motion* under this rule," indicates that the subsection applies only when the *same party* that makes one motion files a subsequent motion under Rule 12. Here, the Naranjo and Hernandez Defendants did not file both motions to dismiss; two separate parties filed two separate motions that happen to raise similar arguments. *Compare* [Dkt. 49], *with* [Dkt. 50]. The second half of the rule prohibits the party from filing a subsequent motion that raises a *new* defense that that party failed to raise in its first bite at the apple. *See* Fed. R. Civ. P. 12(g)(2). Essentially, Rule 12(g)(2)'s purpose is to prevent "piecemeal consideration of a case" when the same party files subsequent motions after realizing it should have raised a certain defense from the beginning. *See* Advisory Committee's Notes for Fed. R. Civ. P. 12, subdivision (g). This interpretation is supported by the fact that the subsection excludes Rule 12(h)(2) and (3) which provide for certain defenses that are not waived when the defendant files its first responsive pleading. *See* Fed. R. Civ. P. 12(g)(2), (h).

---

[3] Rule 12(h)(2) and (3) provide that a party does not waive certain defenses upon filing an initial pleading and may raise those defenses past the pleadings stage. *See* Fed. R. Civ. P. 12(h)(2), (3). For example, under Rule 12(h)(2), a party may join a person under Rule 19(b), raise the defenses of failure to state a claim upon which relief can be granted, and state a legal defense any time before the close of trial. *Id.* 12(h)(2). Additionally, Rule 12(h)(3) states that the court must dismiss an action whenever it determines that it lacks subject matter jurisdiction. *Id.* 12(h)(3). None of these situations are before the Court.

Moreover, the Court does not find the Naranjo and Hernandez Defendants' motion to be "redundant" under Rule 12(f). These Defendants raise separate facts and present separate supporting evidence relevant to the allegations against them—not as against Southwest Key—in support of their motion to dismiss. *See generally* [Dkt. 50]. Finally, in considering a motion to strike, "courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike" when the movant fails to demonstrate prejudicial harm. *Augustus*, 306 F.2d at 868. Garza has failed to allege any facts that demonstrate that the Court's consideration of the Naranjo and Hernandez Defendants' motion to dismiss causes her any prejudice.[4]

For these reasons, the Court **DENIES** Garza's motion to strike.

### B. Defendants' Motions to Dismiss, or in the Alternative, to Transfer Venue

Although 28 U.S.C. § 1391 covers "venue generally," it does not cover cases where a more specific venue provision applies. *Atlantic Marine*, 571 U.S. at 55 n.2 (citing 28 U.S.C. § 1391). The FCA has its own venue provision: "Any action under [§] 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by [§] 3729 occurred." 31 U.S.C. § 3732(a). All Parties agree that venue in the Eastern District of Texas is improper, as there are no defendants who reside or transact business in the District, and none of the underlying alleged violations occurred here. *See* [Dkts. 49, 50, 51]. Therefore, the Court declines to analyze whether venue may be proper in this Court and instead will determine whether this case should be dismissed or transferred.

[4] In addition to being substantively deficient, Garza's motion is procedurally deficient in violation of the Local Rules. Local Rule 7(a) states: "Each pleading, motion, or response to a motion must be filed as a separate document, except for motions for alternative relief (e.g., a motion to dismiss or, alternatively, to transfer)." E.D. Tex. Civ. R. 7(a). Here, Garza filed her motion to strike within her response to Defendants' motions to dismiss. Furthermore, Garza did not meet and confer with the Naranjo and Hernandez Defendants or submit a certificate of conference as required by Local Rule 7(h) and (i). *See* E.D. Tex. Civ. R. 7(h) (discussing the meet and confer requirement); *id.* 7(i) (discussing the requirement of a certificate of conference and to which motions the meet and confer requirement does not apply).

When a case is filed in an *improper venue*, 28 U.S.C. § 1406(a) permits the district court to dismiss the case or in the interest of justice "transfer such case to any district or division in which it could have been brought." *Atlantic Marine*, 571 U.S. at 55 (quoting 28 U.S.C. § 1406(a)). When a case is filed in a *proper venue*, however, transfer is governed by 28 U.S.C. § 1404(a). *See Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964) ("Although [§§ 1404(a) and 1406(a)] were broadly designed to allow transfer instead of dismissal, [§] 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, § 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege."); *Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 471 n.9, 472 (E.D. Tex. 2020) (Truncale, J.) (applying the § 1406(a) analysis when the parties agreed that venue was improper and construing the defendant's request for transfer under § 1404(a) as a request under § 1406(a) because the statutes share the same statutory context and similar phrasing); *see also* 15 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 3827 (4th ed. 2024) [hereinafter WRIGHT & MILLER § 3827] (stating that a "prerequisite to invoking [§] 1406(a) is that the venue chosen by the plaintiff is improper," whereas transfer may be ordered under § 1404(a) "[i]f the original federal forum is a proper venue"). Because the Parties agree that venue in the Eastern District is improper, the proper venue transfer analysis is conducted under § 1406(a).

**i. The More Appropriate Remedy is Transfer over Dismissal**

The decision whether to transfer or dismiss under § 1406(a) is within the sound discretion of the Court, and courts will generally prefer transfer over dismissal. WRIGHT & MILLER § 3827; *see also Springboards to Educ., Inc. v. Hamilton Cnty. Read 20*, No. 3:16-CV-2509-B, 2017 WL 3023489, at *5–6 (N.D. Tex. Jul. 14, 2017). In determining whether to dismiss or transfer the case under § 1406(a), courts examine several relevant considerations. One such consideration is

analyzing "the plaintiff's reasons for filing suit in the improper district in the first place and ask[ing] whether the 'plaintiff's belief that venue was proper was in good faith and reasonable.'" *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022) (quoting WRIGHT & MILLER § 3827). Another consideration is whether transfer "would avoid unnecessary inconvenience to the parties, as well as the waste of time, energy, and money that would accompany starting this case anew. *Springboards*, 2017 WL 3023489, at *6; *see also* WRIGHT & MILLER § 3827 (stating that "[d]istrict courts also are likely to order transfer rather than dismissal if it would be more efficient or economical to do so . . . ."). In contrast, courts have dismissed cases pursuant to § 1406(a) after concluding that transfer was not in the interest of justice. "In many of these cases, no apparent prejudice to the plaintiff had been demonstrated and the reasons stated for dismissal are persuasive." WRIGHT & MILLER § 3827. For example, courts will dismiss a case when "the plaintiff's attorney reasonably could have foreseen that the forum in which the suit was filed was improper and that similar conduct should be discouraged." *Id.* In essence, "the interest of justice" may require that a plaintiff's "complaint not be dismissed but rather that it be transferred in order that the plaintiff not be penalized by . . . time-consuming and justice-defeating technicalities." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (quotation and citation omitted).

Here, the Court finds that transfer is the more appropriate course of action over dismissal, particularly due to the unique circumstances surrounding *qui tam* actions. As noted by Garza, the FCA contains a "first-to-file" provision, which states, "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5); *see Kellogg Brown & Root Servs., Inc. v. United States ex rel. Carter*, 575 U.S. 650, 664 (2015) (concluding that "a *qui tam* suit under the FCA ceases to be 'pending' once it is dismissed," and affirming the circuit

court's conclusion that dismissing a live pending claim with prejudice was erroneous). Here, while there has been no indication that another related *qui tam* action has been filed, Garza argues that dismissal of the case could present a situation where another relator or the Government files an action based on similar allegations, thereby precluding her from refiling this action in a proper venue. *See* [Dkt. 51 at 9]. Furthermore, an FCA action brought by a private individual on behalf of herself and the Government "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). Here, Garza notes that the Attorney General has not given consent to dismiss the case. [Dkt. 51 at 9].

In reply, Southwest Key argues that Garza's concerns over the first-to-file issue is vague because it does not implicate the interests of justice and demonstrates her lack of diligence. [Dkt. 52 at 3]. It further argues that she failed to demonstrate why she could not foresee that her filing in the Eastern District was improper. *Id.* The Court rejects these arguments. First, Southwest Key does not point to any evidence of bad faith in Garza's decision to originally file in this Court. *See Seville*, 53 F.4th at 894; WRIGHT & MILLER § 3827. Additionally, the Court believes that Garza's first-to-file arguments demonstrate that dismissal would cause prejudice, as she may be foreclosed from refiling the suit if another party files their own case before she has the opportunity to refile. Although this argument is speculative, it is not unfounded as this Court believes that Congress's intentional decision to include the first-to-file provision in the statute evidences its concern that such a situation realistically might arise. Finally, the Court believes transfer is warranted because it would avoid inconvenience and further waste of time, energy, and resources. *See Springboards*, 2017 WL 3023489, at *6; WRIGHT & MILLER § 3827. This case is already over two years old, and dismissal would further delay adjudication as Garza would need to pay new filing fees and the

Government would again have to decide whether to intervene. For these reasons, the Court exercises its discretion to transfer the case under § 1406(a).

**ii. Transfer to the Western District**

Under § 1406, the transferor court may transfer the case "to any district or division in which it *could have been brought*." 28 U.S.C. § 1406(a) (emphasis added). To reiterate, venue for FCA claims is proper "in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by [§] 3729 occurred." 31 U.S.C. § 3732(a). Defendants advocate for transfer to the Houston Division of the Southern District of Texas because a significant portion of the alleged events giving rise to the claims in this case occurred in and around Houston, many Defendants transact business in and around Houston, and several Defendants reside in the Southern District. [Dkt. 49 at 10; Dkt. 50 at 4–5]. Defendants further argue that the Southern District is most appropriate because Southwest Key has regional headquarters in Houston and most of the shelters operate in either Houston or elsewhere in the Southern District. [Dkt. 52 at 5–6]. Garza, on the other hand, advocates for transfer to the Austin Division of the Western District of Texas because Southwest Key's principal place of business is in Austin, its vendor documentation and agreements require disputes to be resolved in federal court in Travis County (which is in the Austin Division), and the Defendants transacted business with Southwest Key. [Dkt. 51 at 11–12]. Therefore, the Court finds that venue is proper in either the Southern District or the Western District because at least one defendant resides and/or transacts business in each District. *See* 31 U.S.C. § 3732(a).[5]

The Court finds that the interest of justice makes transfer to the Western District most appropriate. First, each party has contact with the Western District through their agreements and

[5] None of the Parties appear to dispute this conclusion. Their primary dispute arises when determining which venue is more convenient, the analysis of which is not applicable to § 1406(a).

business transactions with Southwest Key, whose primary place of business is located in Austin. *See* [Dkt. 24 at ¶ 9 (listing an address in Austin as Southwest Key's principal office)]. Second, vendor documentations and agreements contain forum-selection clauses that state that any disputes are to be resolved in courts located in Travis County. *See* [Dkts. 51-5, 51-6]. In general, plaintiffs are permitted to select whatever forum they find most advantageous. *See, e.g.*, *Atlantic Marine*, 571 U.S. at 63; *Sierra*, 960 F.3d at 203; *In re Volkswagen*, 545 F.3d at 308 n.2 ("[I]n venue transfer cases, deference given to a plaintiff's initial choice is deference given to a plaintiff's choice of venue."). However, when a plaintiff decides to "defy" a forum-selection clause, she "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine*, 571 U.S. at 63. Although the Court is uncertain why Garza did not originally file her suit in the Western District pursuant to the forum-selection clause, Supreme Court precedent has made clear that "when a plaintiff agrees by contract to bring suit only in a specified forum[,] . . . the plaintiff has effectively exercised its 'venue privilege' before a dispute arises." *Id.* [6] In making its decision to transfer to the Western District, the Court does not engage in the § 1404(a) balancing test to determine the most convenient venue as venue in either the Southern or Western District is proper under the FCA venue provision. All that § 1406(a) requires of the transferor court is to transfer the case to any district or division in which the case *could have been brought*.

Thus, the Court transfers the case to the Austin Division of the Western District of Texas.

[6] The Supreme Court has stated that § 1404(a)—not § 1406(a)—is "the appropriate provision to enforce [a] forum-selection clause." *Id.* at 62. Therefore, the Court does not enforce the forum-selection clauses here, but it finds the Supreme Court's opinion persuasive in its determination to transfer the case to the Western District. As already stated, venue is appropriate in both the Southern and Western Districts. Assuming the Parties signed valid forum-selection clauses, however, the Court worries that its decision to transfer the case to the Western District may prompt Defendants to file a motion for discretionary transfer of venue to the Southern District under § 1404(a). There, the Western District will have to confront the issue of the forum-selection clauses under § 1404(a). It is clear that "a district court should ordinarily transfer the case to the forum specified in" the forum-selection clause unless extraordinary circumstances unrelated to the convenience of the parties exist. *Id.* The Court hopes that its transfer to the Western District prevents further forum-hopping so that the merits of the case may begin to be adjudicated.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant Southwest Key's Motion to Dismiss [Dkt. 49] and the Naranjo & Hernandez Defendants' Motion to Dismiss [Dkt. 50] are hereby **GRANTED IN PART**.

The Clerk is **INSTRUCTED** to transfer the case to the Western District of Texas, Austin Division in its entirety.

**SIGNED this 7th day of February, 2025.**

Michael J. Truncale
United States District Judge