**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* JANA GARZA<br>*Plaintiff,*<br><br>v.<br><br>SOUTHWEST KEY PROGRAMS, INC.,<br>*et. al.,*<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-00305-ADA-SH |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT SOUTHWEST KEY PROGRAMS, INC.'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page(s)**


BACKGROUND ....1

LEGAL STANDARDS ....3

A. Rule 12(b)(6) and Rule 9(b) Pleading Standards ....3

B. False Claims Act Elements ....7

C. Anti-Kickback Statute Elements ....8

D. False Claims Act Conspiracy Elements ....9

E. False Claims Act Retaliation Elements ....9

ARGUMENT ....9

I. Relator Fails to State an FCA Claim Against SWK Under 12(b)(6) or Rule 9(b) Regarding Anti-Kickback, Conspiracy, or SWK's Conflict of Interest Policy ....10

A. Relator Cannot Identify a False or Fraudulent Statement by SWK ....10

1. Relator Fails to Allege a Kickback Scheme or Conspiracy, or Related False Statement Involving SWK ....11

a. Relator's Anti-Kickback Allegations Fail ....11

b. Relator's Conspiracy Allegations Fail ....12

2. Relator Fails to Allege or Identify any False Statement or Fraudulent Scheme by SWK Regarding Conflicts of Interest ....13

B. Relator Fails to Meet the FCA's Materiality Requirements ....15

C. Relator Fails to Meet the FCA's Requirements for Corporate Scienter ....17

D. Relator Fails to Meet the FCA's Payment Requirement ....18

II. Relator Fails to Establish That SWK Retaliated Against Her Under the FCA ....18

CONCLUSION ....20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Adams v. Dell Comput. Corp.*,
496 F. Supp. 3d 91 (D.D.C. 2020) ....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................6

*United States ex rel. Bennett v. Bos. Sci. Corp.*,
No. H-07-2467, 2011 WL 1231577 (S.D. Tex. Mar. 31, 2011) ....................14, 18

*United States ex rel. Bennett v. Medtronic, Inc.*,
747 F. Supp. 2d 745 (S.D. Tex. 2010) ....................14

*United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*,
816 F.3d 315 (5th Cir. 2016) ....................9

*United States ex rel. Clausen v. Lab Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002) ....................7

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ....................6

*Garcia v. Pro. Cont. Servs., Inc.*,
938 F.3d 236 (5th Cir. 2019) ....................20

*Gonzalez v. Kay*,
577 F.3d 600 (5th Cir. 2009) ....................5

*United States ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ....................6, 8, 9

*United States ex rel. Harman v. Trinity Indus. Inc.*,
872 F.3d 645 (5th Cir. 2017) ....................16

*United States ex rel. Health Choice All., LLC v. Eli Lilly & Co., Inc.*,
No. 5:17-cv-123, 2018 WL 4026986 (E.D. Tex. July 25, 2018) ....................9

*United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*,
No. SA-17-CV-1249-XR, 2019 WL 5970283 (W.D. Tex. Nov. 13, 2019) ....................12

*United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*,
667 F. Supp. 3d 332 (E.D. Tex. 2023) ....................16

*Jacquez v. GEO Int'l Mgmt., LLC*,
No. EP-20-CV-00183-KC, 2021 WL 2908880 (W.D. Tex. June 2, 2021) ............................20

*United States ex rel. King v. Solvay S.A.*,
823 F. Supp. 2d 472 (S.D. Tex. 2011), *vacated in part on different grounds*,
No. H-06-2662, 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012) ......................................10, 12

*United States. ex rel. Longhi v. United States*,
575 F.3d 458 (5th Cir. 2009) ..........................................................................10, 17, 18

*Lovelace v. Software Spectrum, Inc.*,
78 F.3d 1015 (5th Cir. 1996) ..........................................................................................7

*United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*,
649 F. Supp. 3d 404 (W.D. Tex. 2023), *aff'd in part, vacated in part*, 133
F.4th 395 (5th Cir. 2025) ..............................................................................................16

*United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*,
519 Fed. Appx. 890 (5th Cir. 2013)...................................................................................8

*United States ex rel. Parikh v. Citizens Med. Ctr.*,
977 F. Supp. 2d 654 (S.D. Tex. 2013) ..............................................................................8

*United States ex rel. Patton v. Shaw Servs., LLC*,
418 F. App'x 366 (5th Cir. 2011) ....................................................................................19

*United States ex rel. Porter v. Magnolia Health Plan, Inc.*,
810 F. App'x 237 (5th Cir. 2020) ....................................................................................15

*United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*,
274 F. Supp. 2d 824 (S.D. Tex. 2003) ............................................................................12

*Robertson v. Bell Helicopter Textron, Inc.*,
32 F.3d 948 (5th Cir. 1994) ...........................................................................................19

*United States ex rel. Ruscher v. Omnicare, Inc.*,
No. 4:08-CV-3396, 2014 WL 2618158 (S.D. Tex. June 12, 2014).......................................11

*United States ex. rel. Spicer v. Westbrook*,
751 F.3d 354 (5th Cir. 2014) ...................................................................6, 7, 10, 14

*Thomas v. ITT Educ. Servs., Inc.*,
517 F. App'x 259 (5th Cir. 2013) ....................................................................................18

*Turner v. DynMcDermott Petroleum Operations Co.*,
No. 06-1455, 2010 WL 4363403 (E.D. La. Oct. 21, 2010) ...................................................20

*United States v. Marlin Med. Sols. LLC*,
579 F. Supp. 3d 876 (W.D. Tex. 2022)....................................................................11

*United States. v. Sci. Applications Int'l Corp.*,
626 F.3d 1257 (4th Cir. 2010) ..............................................................................7

*United States. v. Vista Hospice Care*,
No. 3:07-cv-00604-M, 2016 WL 3449833 (N.D. Tex. June 20, 2016) .....................8

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
579 U.S. 176 (2016)...............................................................................15, 16

*Washington v. Patterson-UTI Energy, Inc.*,
No. 5:16-cv-130-RP, 2016 WL 3081060 (W.D. Tex. May 31, 2016).......................6

**Statutes**

6 U.S.C. § 279(b) ..............................................................................2

31 U.S.C. § 3729(a)(1)(A), (C)..............................................................7

42 U.S.C. § 1320a-7b(b)(1)-(2) ..............................................................8

False Claims Act ..................................................................... *passim*

**Other Authorities**

45 C.F.R. Part 75..............................................................................2

45 C.F.R. Part 410, Subpart B ..............................................................2

45 C.F.R. § 75.207 ..............................................................................4

45 C.F.R. § 75.371 ..............................................................................4

45 C.F.R. § 410.1307 ........................................................................2, 3

89 Fed. Reg. 34,384 (Apr. 30, 2024) ......................................................2

Fed. R. Civ. P. 9(b) ............................................................... *passim*

Fed. R. Civ. P. 12(b)(6)........................................................... *passim*

Defendant Southwest Key Programs, Inc. (SWK) hereby moves pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) to dismiss Plaintiff-Relator Jana Garza's First Amended Complaint ("Compl."), ECF No. 24.

Despite 229 paragraphs spanning over fifty pages, Relator's First Amended Complaint alleges scattershot, entirely unspecific claims concerning a dozen different defendants, including SWK, to elevate generalized aspersions into a federal False Claims Act case. However, when evaluated as to each defendant individually and SWK particularly, the Complaint ignores binding Fifth Circuit precedent requiring a relator to plead FCA claims with particularity. Notably, here, Relator's Amended Complaint fails to provide any connection between any request for payment to the government—the "*sine qua non*" of an FCA claim—and any materially false statement or fraudulent conduct by SWK. Relator fails to identify any request for payment that SWK made (or caused to be made) through which SWK received any federal government compensation that connects to any of Relator's allegations relating to the Anti-Kickback Statute, SWK's conflicts of interest policy, or conspiracy—because none exists.

An FCA violation can only exist when a false claim is presented for payment and the alleged falsity is material to payment. Not only does Relator fail to plead facts adequate to establish falsity or materiality, Relator fails to plead any specific claim presented by SWK at all.

As the following discussion makes clear, this Court should dismiss each of Relator's claims against SWK.

## BACKGROUND

SWK is a nonprofit, 501(c)(3) tax exempt corporation headquartered in Austin, Texas. *See* Compl. ¶ 9. Among other activities, when Relator filed this case, SWK received federal funding to operate shelter facilities for foreign national children in the federal government's

Unaccompanied Children (UC) Program, administered by the Office of Refugee Resettlement (ORR) within the U.S. Department of Health and Human Services' (HHS). *See* Compl. ¶¶ 47-54.

ORR is charged with responsibility for the care of UC who come into the custody of any federal agency. Compl. ¶¶ 33-34.[1] ORR funds care providers to furnish residential services to UC and places UC on a case-by-case basis with them (termed as "Shelter Programs"). Compl. ¶¶ 38-43.[2] ORR dictates Shelter Program provider requirements through regulations, sub-regulatory guidance, and cooperative agreement terms, including requirements by reference to HHS's Grants Policy Statement (GPS). Compl. ¶¶ 55-57.[3] The GPS includes government-wide policies such as civil rights protections, environmental law procedures, and no-smoking environments, as well as HHS-specific requirements. HHS also subjects grantees, including Shelter Program providers, to grant management requirements set forth in 45 C.F.R. Part 75.

ORR further asserts UC Program-specific requirements. Compl. ¶¶ 58-61.[4] Relevant to this case, ORR directs Shelter Program care providers to arrange for the provision of certain

---

[1] *See also* 6 U.S.C. § 279(b); 89 Fed. Reg. 34,384 at 34,385 (Apr. 30, 2024).

[2] *See also* 45 C.F.R. Part 410, Subpart B; 89 Fed. Reg. at 34,385.

[3] *See also* HHS, Office of the Assistant Secretary for Resources and Technology, Office of Grants, *Grants Policy Statement 2007* at II-2 thru II-23, https://www.hrsa.gov/sites/default/files/hrsa/grants/policies-regulations/hhs-gps-107.pdf; *see also* Standard Form 424B "Assurances," https://www.grants.gov/forms/forms-repository/sf-424-individual-family.

[4] *See also* ORR UC Bureau Policy Guide (Apr. 24, 2025) ("ORR Policy Guide"), https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide. The ORR Policy Guide available on ORR's website, dated April 24, 2025 with a Section 3 dated May 19, 2025, is consistent with historical practice applicable to the period at issue in this case. *See, e.g.,* http://web.archive.org/web/20220428142547/https://www.acf.hhs.gov/orr/policy-guidance/children-entering-united-states-unaccompanied-introduction.

healthcare services to unaccompanied children in their care. *Id.*[5] To provide access to such services, "[e]ach ORR-funded care provider program must have an established network of healthcare providers, including specialists, emergency care services, mental health practitioners, and dental providers that will accept ORR's fee-for-service billing system."[6] ORR's Policy Guide Section 3.4.9 describes provider payment procedures in relevant part as follows:

> Payment for health services for unaccompanied alien children in ORR care is managed by a third-party entity. Healthcare providers are encouraged to enter into an agreement with the third-party entity before providing care for children. Contracting with the third-party entity in advance will facilitate the appointment scheduling and billing process. *Programs should submit the names of selected healthcare providers directly to the third-party entity who will then contact the healthcare providers and work out an agreement*.

*Id.* (emphasis added). In other words, ORR instructs the Shelter Program provider to "establish[ a] network" of outside healthcare providers who agree to provide such services; but the outside providers contract directly with ORR's designated payment vendor; and while the Shelter Provider enters "zero-dollar" contracts with the outside providers governing those providers' activity and conduct on the Shelter Provider's premises, *see* Compl. ¶¶ 63-69, the Shelter Provider receives no financial benefit, directly or indirectly, from the provision of those services. *Id.* ORR also incorporates in its cooperative grant agreements a requirement for the Shelter Program provider to establish and maintain a conflict of interest policy. Compl. ¶ 61.

Point Comfort United (PCU, previously known as "Point Comfort Underwriters") serves as ORR's designated "third party entity" for contracting with and managing payments to outside healthcare providers. *See generally* PCU webpage, https://pointcomfort.com/point-comfort-united/. PCU contracts with and pays the outside healthcare providers directly for medical

---

[5] *See also* 45 C.F.R. § 410.1307; ORR Policy Guide, Sec. 3.4.

[6] ORR Policy Guide, Sec. 3.4.9; 45 C.F.R. § 410.1307.

services those providers furnish to UC. PCU pays medical providers for services at the same fee-for-service rates as Medicare.[7] Significantly, PCU advises Shelter Program providers on recruitment to fulfill ORR healthcare provider network-building requirements. *See id.* at 1. PCU instructs Shelter Program providers to identify healthcare providers through "[r]ecommendation/ referral from providers already working with you." *Id.*

If a Shelter Program provider fails to comply with any requirements set forth in the statute, regulations, sub-regulatory guidance, policy guides, or grant agreements, the funding agency has considerable flexibility in how it responds, from requiring updates to policies and procedures, to applying additional prior approvals, to reclaiming funds or terminating agreements. *See* 45 C.F.R. § 75.371. Before taking drastic measures (such as withholding funds), HHS's regulations mandate that HHS and ORR consider whether specific award conditions under 45 C.F.R. § 75.207 (such as requiring additional project monitoring and prior approval requirements) would suffice. *Id.*; *see also* Compl. ¶¶ 63-69 (detailing that outside medical providers seek approvals for treatment and payment independent of the Shelter Provider).

For many years, SWK has served as an ORR-funded Shelter Program care provider with shelters in Texas, Arizona, and California. *See* Compl. ¶¶ 48-53.[8] Relative to SWK as a corporate entity, Relator alleges one episode of central significance: namely, that in September

---

[7] *See* PCU "How to Recruit New Providers" at 1-3, https://maps.pointcomfort.com/pdfs/How_to_Recruit_New_Providers.pdf.

[8] *See generally* HHS Tracking Accountability in Government Grants System (TAGGS), Southwest Key Programs, Inc., https://taggs.hhs.gov/Detail/RecipDetail?arg_EntityId=ONDO4rfWl3jIBteg1aK%2FOg%3D%3D. In March 2025, for reasons unrelated to this case and with which SWK does not concur, ORR ceased placing children with SWK. *See* DOJ Press Release (Mar. 12, 2025), https://www.justice.gov/opa/pr/hhs-doj-move-end-sexual-abuse-and-harassment-unaccompanied-alien-children-shelters-operated.

2018, four years before filing this matter, Relator informed SWK's personnel about an alleged solicitation by an SWK employee to engage in a contract Relator felt raised kickback and conflict of interest concerns. Compl. ¶¶ 117–123. In response, SWK personnel directed Relator *not to engage in the proposed contract*. *Id.* After that, Relator kept providing services for unaccompanied children in SWK's Shelter Program for four more years, before filing this action after losing three of five competitive bids for zero-dollar contracts with SWK. *See generally* Compl. ¶¶ 117–123, 178 *et seq*.

As to Relator's allegations about a series of zero-dollar contracts with other outside medical provider services, *see generally* Compl. ¶¶ 145-192, the Complaint includes no specific allegations regarding claims presented to the government or SWK's decision making process for those zero-dollar contracts, including: when and how such decision making occurred; which SWK personnel engaged in the decision making; whether and how any SWK personnel with any potential conflict of interest disclosed such interest; the nature of any such potential conflict of interest; whether such personnel played any role in the decision making regarding the zero-dollar contracts in which that individual had a potential interest; or whether, had any failure to disclose been brought to the attention of SWK management, SWK failed to take disciplinary or other action. *Id.*[9]

[9] Additionally, regarding the Midland influx contract Relator includes in the Complaint, that contract was not carried out under the cooperative agreements upon which Relator relies as her ostensible source of requirements, but rather under a completely separate fixed price contract for wrap-around services to UC. Compl. ¶ 176; *see* GovTribe *Definitive Contract 75ACF121C00027*, https://govtribe.com/award/federal-contract-award/definitive-contract-75acf121c00027.

## LEGAL STANDARDS

### A. Rule 12(b)(6) and Rule 9(b) Pleading Standards

When reviewing a motion to dismiss under Rule 12(b)(6), a court must weigh whether "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, in instances where the allegations "do not permit the court to infer more than the *mere possibility* of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (emphasis added). Under Rule 12(b)(6), a court must cast aside conclusory allegations, as they are "not entitled to the assumption of truth." *Id.*; *see also United States ex. rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not establish facial plausibility.") (internal quotation marks and alterations omitted).

Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), to "set forth the who, what, when, where, and how of the alleged fraud." *Spicer*, 751 F.3d at 365. The Fifth Circuit expressly requires that a plaintiff "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (internal quotation omitted). "In cases of fraud, Rule 9(b) has long played that screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later. We apply Rule 9(b) to fraud complaints with 'bite' and 'without apology. . .'" *United States ex*

*rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (citing *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir.1997)).

Significantly for this case with its dozen defendants, Rule 9(b) does not permit collective pleading or grouping defendants into one cohesive whole. *See Washington v. Patterson-UTI Energy, Inc.*, No. 5:16-cv-130-RP, 2016 WL 3081060, at *2-3 (W.D. Tex. May 31, 2016) (dismissing complaint on ground that "collective pleading" leads to difficulties in assessing which actions are attributable to particular defendants). False Claims Act precedent and Rule 9(b) pleading requirements do not permit such collective knowledge allegations, and this Court must evaluate the allegations regarding each defendant separately. *See*, *e.g.*, *United States. v. Sci. Applications Int'l Corp*., 626 F.3d 1257, 1275 (4th Cir. 2010) (vacating judgment due to district court's "collective knowledge" instruction) ("We know of no circuit that has applied the 'collective knowledge' theory to the FCA."); *United States ex rel. Adams v. Dell Comput. Corp.*, 496 F. Supp. 3d 91, 101 (D.D.C. 2020) ("[A] relator may not use 'collective knowledge' of multiple individuals within a company to impute knowledge on the company as a whole.").

Accordingly, a relator must plead fraud with particularity regarding each FCA element—and each separate defendant—to satisfy Rule 9(b); and failure to satisfy Rule (9)(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996) (internal citations omitted).

**B. False Claims Act Elements**

Under the federal False Claims Act, in relevant part, liability attaches if a person or entity "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or conspires to do the same. 31 U.S.C. § 3729(a)(1)(A), (C). Fifth Circuit precedent establishes that a relator must satisfy four elements under the FCA: "(1) a false statement or

fraudulent course of conduct, (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money." *Spicer,* 751 F.3d at 365 (citing *United States. ex rel. Longhi v. United States,* 575 F.3d 458, 467 (5th Cir. 2009)). The FCA imposes liability "not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *Spicer*, 751 F.3d at 364-65; *see also United States ex rel. Clausen v. Lab Corp. of Am*., 290 F.3d 1301, 1311 (11th Cir. 2002) ("The submission of a claim is … the *sine qua non* of a False Claims Act violation."). As reflected above, Fifth Circuit precedent demands exacting pleading requirements, "without apology," for False Claims Act allegations under Rule 9(b). *See Grubbs*, 565 F.3d at 185.

**C. Anti-Kickback Statute Elements**

The federal Anti-Kickback Statute (AKS) prohibits in pertinent part the knowing and willful offer, solicitation, or receipt of remuneration to induce a person to recommend, order, or purchase any good or service for which payment may be made in whole or in part under a federal health program. See 42 U.S.C. § 1320a-7b(b)(1)-(2). A relator must sufficiently plead that a defendant: (1) knowingly and willfully (2) solicited or received, or offered or paid remuneration (3) in return for or to induce referrals or program-related business. *United States. v. Vista Hospice Care*, No. 3:07-cv-00604-M, 2016 WL 3449833, at *21 (N.D. Tex. June 20, 2016).

In the Fifth Circuit, courts have consistently held that an AKS violation does not amount to a FCA violation unless (1) the submitted claims were conditioned on a certification (expressed or implied) of compliance with the AKS by the party requesting payment, and that party falsely certifies such compliance, and (2) the relator sufficiently alleges that the defendant received kickbacks made "with the intent of inducing referrals, and they plead 'particular details of a scheme ... paired with reliable indicia that lead to a strong inference that claims were actually

submitted.'" *United States ex rel. Parikh v. Citizens Med. Ctr.*, 977 F. Supp. 2d 654, 664-65 (S.D. Tex. 2013) (quoting *Grubbs*, 565 F.3d at 190); *see also United States ex rel. Nunnally v. W. Calcasieu Cameron Hosp*., 519 Fed. Appx. 890, 894 (5th Cir. 2013) (per curiam) (*citing United States ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 902 (5th Cir. 1997)). Relator bears the burden of pleading all elements for both AKS and FCA with particularly under Rule 9(b). *See Nunnally*, 519 F. App'x at 894.

**D. False Claims Act Conspiracy Elements**

In the Fifth Circuit, "to prove a False Claims Act conspiracy [under Section 3729(a)(1)(C)], a relator must show '(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement.'" *Grubbs*, 565 F.3d at 193 (quoting *United States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)). "As part of that showing, the plaintiff must demonstrate that the defendants shared a specific intent to defraud the government." *United States ex rel. Health Choice All., LLC v. Eli Lilly & Co., Inc.*, No. 5:17-cv-123, 2018 WL 4026986, at *56 (E.D. Tex. July 25, 2018) (quoting *United States ex rel. Ramsey-Ledesma v. Censeo Health, LLC*, No. 3:14-cv-00118-M, 2016 WL 5661644, at *11 (N.D. Tex. Sept. 30, 2016) ("The particularity requirements of Rule 9(b) apply to the [FCA's] conspiracy provision with equal force as to its 'presentment' and 'record' provisions.")), *adopted*, No. 5:17-cv-123, 2018 WL 3802072 (Aug. 10, 2018). Each element of a claimed FCA conspiracy must also satisfy Rule 9(b) particularity requirements. *Id.*

**E. False Claims Act Retaliation Elements**

Finally, regarding elements to establish a claim for retaliation under the FCA, a relator must sufficiently plead: (1) the employee "engaged in protected activity," (2) the "employer, or

the entity with which he has contracted or serves as an agent, knew about the protected activity," and (3) "retaliat[ion] . . . because of his protected activity." *United States ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 323 (5th Cir. 2016).

## ARGUMENT

The following sections discuss the sufficiency of the first three of Relator's four Counts regarding SWK by evaluating the four elements that the Fifth Circuit requires of FCA claims: (1) false or fraudulent statement; (2) materiality; (3) scienter; and (4) payment of money by the government. *Spicer*, 751 F.3d at 365. This Memorandum will then briefly address Relator's retaliation Count. In sum, none of Relator's allegations satisfy either Rule 12(b)(6)'s requirements to state a claim or Rule 9(b)'s heightened pleading requirements regarding SWK.

### I. Relator Fails to State an FCA Claim Against SWK Under 12(b)(6) or Rule 9(b) Regarding Anti-Kickback, Conspiracy, or SWK's Conflict of Interest Policy

Relator's allegations against SWK premised on (1) violating the Anti-Kickback Statute, (2) conspiring to violate the FCA, or (3) violating SWK's internal conflicts of interest policy all share the flawed, unsubstantiated, and unsustainable premises that SWK (a) knowingly submitted a materially false or fraudulent statement to government, or (b) financially benefited from outside medical providers providing services to unaccompanied children in SWK's Shelter Program facilities. Accordingly, none of those Counts satisfy Rule 12(b)(6) or the heightened pleading standard of Rule 9(b).

#### A. Relator Cannot Identify a False or Fraudulent Statement by SWK

First, Relator does not and cannot identify any false or fraudulent statement SWK made to the government in connection with a payment by the government to SWK. *See Longhi*, 575 F.3d at 466-67; *United States ex rel. King v. Solvay S.A.*, 823 F. Supp. 2d 472, 502 (S.D. Tex. 2011) ("The first factor the court must consider for any FCA claim is whether a false statement

or fraudulent course of conduct has been alleged."), *vacated in part on different grounds*, No. H-06-2662, 2012 WL 1067228 (S.D. Tex. Mar. 28, 2012). The following discussion addresses that flaw in Relator's allegations, and also offers analysis regarding the additional elements of the federal AKS and FCA conspiracy that form the basis of two of Relator's four Counts.

### 1. Relator Fails to Allege a Kickback Scheme or Conspiracy, or Related False Statement Involving SWK

#### a. Relator's Anti-Kickback Allegations Fail

First, Relator fails either to sufficiently plead a violative AKS scheme or the necessary connection between any AKS violation and the knowledge and falsity required to sustain an FCA claim. While courts interpret the prohibited "remuneration" under the AKS broadly to mean anything of value, *United States v. Marlin Med. Sols. LLC*, 579 F. Supp. 3d 876, 887 (W.D. Tex. 2022), a relator must still connect "how it was that [d]efendant provided remuneration to its clients, the form of that remuneration, how and why [d]efendant believed that remuneration would induce new business, and how [d]efendant benefited from the remuneration." *United States ex rel. Ruscher v. Omnicare, Inc.*, No. 4:08-CV-3396, 2014 WL 2618158, at *10 (S.D. Tex. June 12, 2014).

Here, Relator fails to meet any of the AKS elements regarding SWK, particularly that SWK sought or received any remuneration from any individual; nor has Relator identified any payment requests to the government that resulted from SWK violating the AKS. Rather, Relator's AKS allegations focus on an alleged solicitation by an individual defendant, not SWK. *See* Compl. ¶¶ 110, 206–07. Not only does Relator fail to allege that SWK knowingly and willfully solicited or received any prohibited remuneration; Relator makes clear that SWK personnel directed that Relator "did not need to sign the agreement or work with" that individual;

that the individual "had only provided her name as a potential provider in Houston"; and that Relator need not contract with that individual. Compl. ¶¶ 117–123.

None of Relator's allegations reflect any endorsement of or participation in any purported kickback scheme by anyone at SWK, much less corporate management or officers. *Id*. Even taken in the light most favorable to Relator, SWK personnel had expressly disclaimed any such scheme and directed Relator not to participate—the opposite of AKS liability under general 12(b)(6) pleading requirements, let alone under Rule 9(b)'s more stringent requirements.

Building upon those same facts: Relator not only fails to establish any false or fraudulent scheme in which SWK participated predicated on an AKS violation but additionally fails to connect such allegations with any statement or certification, implied or express, by SWK to the government. Notably, and as described in the Background section above, while SWK entered zero-dollar contracts with outside medical providers to permit those providers access to the unaccompanied children in SWK's Shelter Program, (1) it did not submit requests for payment to the government for outside medical providers; and (2) SWK received no compensation, directly or indirectly, from the government for those outside medical providers' services. As a result, Relator does not and cannot allege that SWK submitted false or fraudulent statements to the government in connection with a request for payment on this basis. As such, Relator has failed to satisfy the element of a false or fraudulent statement by SWK premised on a violation of the AKS. *See King*, 823 F. Supp. 2d at 506 (collecting Fifth Circuit cases).

**b. Relator's Conspiracy Allegations Fail**

Relator's conspiracy Count fails for the reasons just stated, and, Relator additionally does not and cannot allege the existence of an agreement in which SWK participated to defraud the government, nor offers any facts from which an unlawful agreement involving SWK to get the

federal government to pay or allow a false or fraudulent claim can be naturally inferred. *See United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 857 (S.D. Tex. 2003) (noting Relator must adequately plead co-conspirators' "meeting of the minds" to submit false claims to establish liability); *see also United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc*., No. SA-17-CV-1249-XR, 2019 WL 5970283, at *12 (W.D. Tex. Nov. 13, 2019) (to establish the "meeting of the minds," it is insufficient to show that alleged conspirators "intended to engage in the conduct that resulted in the injury"; instead, the plaintiff must plead with particularity the conspiracy as well as the "overt acts" taken in furtherance of the conspiracy"). Relator's burden to allege an FCA conspiracy is greater, not less, than the underlying Count; and Relator fails to meet that additional burden.

**2. Relator Fails to Allege or Identify any False Statement or Fraudulent Scheme by SWK Regarding Conflicts of Interest**

Similarly, although Relator identifies a cooperative agreement provision for SWK to establish and maintain a conflicts of interest policy, Compl. ¶ 61, Relator does not and cannot allege either how SWK failed to abide by that cooperative agreement provision, or when or how SWK as a corporate entity submitted a false or fraudulent statement to the government in connection with SWK's conflict of interest policy or any claim for payment. Indeed, the cooperative grant agreement provision regarding conflicts of interest indicates that the Shelter Program provider must:

1. Identify and define conduct that creates a potential conflict of interest;
2. Prohibit employees from financial interests in the services of the Shelter Program;
3. Require staff to recuse themselves from decision-making if there is a potential or actual conflict of interest;

4. Require staff to disclose conflicts of interest; and
5. Provide that failure to disclose potential or actual conflicts may lead to discipline.

*Id.* Not only does Relator fail to produce SWK's conflict of interest policy (or fail to allege that SWK lacked such a policy), in the many paragraphs in which Relator details zero-dollar contract awards awarded near the departure of an SWK employee, *see generally* Compl. ¶¶ 145-192, Relator does not and cannot allege that SWK failed to abide by the requirements of its conflict of interest policy as outlined in the cooperative grant agreement, *see id.* Among the allegations Relator fails utterly to provide, Relator fails to specify:

1. Who at SWK evaluated the zero-dollar contract award with a potential conflict;
2. When and how such review and decision making occurred;
3. Whether and how any SWK personnel with any potential conflict of interest failed to disclose such interest;
4. Whether such potentially interested personnel played any role in the review or decision making regarding the zero-dollar contract; or
5. Whether, had any failure to disclose been brought to the attention of SWK management, SWK failed to take disciplinary or other action.

*Id. See Spicer*, 751 F.3d at 365 (observing that the FCA and Rule 9(b) require relators to "set forth the who, what, when, where, and how of the alleged fraud"). Moreover, Relator does not and cannot identify a false statement SWK submitted to the government regarding that policy.

Instead, Relator hopes that by alleging *the mere possibility* of potential conflicts of interest through allegations of close-in-time contract awards to entities with financial interests of individuals formerly associated with SWK, Relator can bypass the Fifth Circuit's exacting standards under Rules 12(b)(6) and 9(b). Relator's pleading defects regarding SWK and its

conflicts of interest policy are not curable under Rule 9(b) standards; they are fatal. *See, e.g., United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 779-80, 785 (S.D. Tex. 2010) (granting motion to dismiss; relators failed to allege specific false statements by defendant and failed to plead false claims with particularity); *United States ex rel. Bennett v. Bos. Sci. Corp.,* No. H-07-2467, 2011 WL 1231577, at *17 (S.D. Tex. Mar. 31, 2011) (collecting cases).

**B. Relator Fails to Meet the FCA's Materiality Requirements**

Relator's allegations additionally fail to meet the requirements of Supreme Court and Fifth Circuit precedent for the materiality of any alleged false statement or fraudulent scheme. As described in the Background section above, cooperative agreements with the federal government inherently involve a myriad of potential requirements. As the Supreme Court has emphasized, "not every undisclosed violation of an express condition of payment automatically triggers liability" under the FCA, and "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 190, 191 (2016). Indeed, the Supreme Court held such liability counterproductive since, as here, "billing parties are often subject to thousands of complex statutory and regulatory provisions. Facing False Claims Act liability for violating any of them would hardly help would-be defendants anticipate and prioritize compliance obligations." *Universal Health Servs.*, 579 U.S. at 192. FCA materiality is "demanding" because the FCA:

> is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id*. at 194 (citation omitted); *see also United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 241-42 (5th Cir. 2020) (rejecting allegations that "broad boilerplate language" to "strictly adhere to all applicable federal and state law, . . . regulations and standards [and] policies, rules, and regulations" was sufficient to satisfy FCA materiality requirements).

Moreover, the Supreme Court emphasized that a reviewing court can and must dismiss an FCA complaint for failure to allege sufficient facts under Rule 9(b) to satisfy the materiality standard, by rejecting the assertion

> that materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss…. The standard for materiality that we have outlined is a familiar and rigorous one. And False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality.

*Universal Health Servs.*, 579 U.S. at 195 n.6.

In this case, Relator does not and cannot satisfy materiality regarding Relator's AKS, conspiracy, or conflicts of interest allegations in connection with SWK. To the contrary: to the extent that Relator cites to a 2020 published government report on oversight of Shelter Program providers, ORR's continued payments to SWK over the years following that report *weakens*, rather than bolsters, Relator's allegations of materially false or fraudulent conduct rising to an FCA violation. Compl. ¶ 217 & n.21; *see also* Government Accountability Office, "Unaccompanied Children: Actions Needed to Improve Grant Application Reviews and Oversight of Care Facilities," Sept. 2020, https://www.gao.gov/assets/gao-20-609.pdf; *United States ex rel. Harman v. Trinity Indus. Inc.*, 872 F.3d 645, 663 (5th Cir. 2017) ("[C]ontinued payment by the federal government after it learns of the alleged fraud substantially increases the burden on the relator in establishing materiality."); *United States ex rel. Jackson v. Ventavia Rsch. Grp., LLC*, 667 F. Supp. 3d 332, 361 (E.D. Tex. 2023) (finding that an "unbroken chain of

authorization and payments in the face of" evidence of the alleged noncompliance "does not support an inference that the alleged misrepresentations were material").[10] And as noted above, SWK played no role in, and received no financial benefit from, requests for payment by outside medical providers. In short, Relator's allegations regarding SWK fail the materiality standards that the FCA and 9(b) require; if anything, Relator's allegations undermine such claims.

### C. Relator Fails to Meet the FCA's Requirements for Corporate Scienter

Relator also fails to allege sufficiently, and with specificity, that SWK as a corporate entity had the requisite scienter for FCA liability to attach regarding Relator's AKS, conspiracy, and conflicts of interest allegations. As discussed above, Rule 9(b) does not authorize collective pleading or grouping defendants into one purportedly cohesive whole. Moreover, the FCA's scienter standard requires proof that each defendant knowingly or recklessly submitted, or caused the submission of, a false claim for payment. *Longhi*, 575 F.3d at 466-67 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)).

In this case, Relator does not allege that SWK as a corporate entity knew of a claim for payment supported by a false or fraudulent statement. The publicly available guidance from ORR and the government's payment vendor PCU described above encourage and endorse the network of providers Relator disparages. *See supra*. Crucially, Relator's allegations concerning the central episode regarding her interactions with SWK personnel reflect that SWK personnel directed Relator *not* to engage in suspect activity. *See* Compl. ¶¶ 117-23. As to the outside medical provider requests for payment—not only does Relator fail to allege any fraudulent

---

[10] *Cf. United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.,* 649 F. Supp. 3d 404, 418 (W.D. Tex. 2023) ("The government-action factor turns on whether the government paid a specific claim notwithstanding its contemporaneous and actual knowledge that the claim was false."), *aff'd in part, vacated in part*, 133 F.4th 395 (5th Cir. 2025).

knowledge or intent on the part of SWK as a corporate entity, but Relator fails to allege any factual basis from which to infer that SWK would have *any* knowledge of the requests for payment by those providers. Evaluating Relator's allegations regarding SWK separately, the allegations tend to negate, not support, the scienter that Relator cannot allege regarding SWK.

### D. Relator Fails to Meet the FCA's Payment Requirement

On the fourth required FCA element, Relator also fails to allege any payment to SWK upon which the remainder of Relator's allegations regarding SWK rest. *Longhi*, 575 F.3d at 467. To establish an FCA claim, one nexus remains paramount: "Evidence of an actual false claim is the *'sine qua non* of a False Claims Act violation.'" *Bennett v. Bos. Sci. Corp.*, 2011 WL 1231577, at *2 (quoting *Clausen,* 290 F.3d at 1311).

Relator cannot identify any request for payment that SWK made or caused to be made and through which SWK received any federal government compensation that relates to *any* of Relator's allegations regarding AKS, conspiracy, or SWK's conflicts of interest policy—*because none exists*. SWK received no compensation from the federal government or anyone else because of services rendered to unaccompanied children in SWK's Shelter Program by the outside medical providers Relator identified; nor does or can Relator allege that SWK's grant payments bore any relation to the wholly independent requests for payment by outside medical providers in which SWK had no involvement or financial benefit. Without a financial interest, there is not only no kickback or conflict of interest, there is no viable FCA claim. In short, Relator's allegations lack the "*sine qua non*." *Bennett,* 2011 WL 1231577, at *2.

## II. Relator Fails to Establish That SWK Retaliated Against Her Under the FCA

Finally, Relator's retaliation claim regarding SWK also must fail. First, Relator does not

and cannot adequately plead that she engaged in protected activity—that is, activity "motivated by a concern regarding fraud against the government." *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (citing *Riddle v. Dyncorp Int'l, Inc.*, 666 F.3d 940, 941 (5th Cir. 2012)). Relator's Complaint alleges, at most, that in September 2018, Relator raised with SWK personnel via text message whether she must engage with an individual whom she believed to be soliciting a contract—to which SWK directed Relator not to engage. *See* Compl. ¶ 117. Relator does not and cannot allege that she made SWK aware of a protected activity using the specific terms that the Fifth Circuit requires. *See United States ex rel. Patton v. Shaw Servs., LLC*, 418 Fed. App'x 366 (5th Cir. 2011) (reasoning that "mere criticism" of defendant's construction methods, without any suggestion that the relator was attempting to expose fraud, "does not rise to the level of protected activity"); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) (employer could not know of protected activity where employee "admitted he never used the terms 'illegal,' 'unlawful,' or '*qui tam* action' in characterizing his concerns.").

More crucially, Relator cannot plead that SWK retaliated against her in any way, much less that she was retaliated against *because* she engaged in protected activity. Quite the opposite: after being reassured by SWK that she need not engage with the individual in question, SWK (1) used Garza as a medical provider at Casa Quetzal in November 2018, despite Garza's inability to secure necessary licensing on time; (2) utilized Garza as a medical provider at Casa Sunzal beginning in March 2019; (3) transitioned Casa Reliant to Garza in April 2019; (4) awarded Garza one-year zero-dollar medical provider contracts for *all* SWK Houston shelters in June 2019; (5) renewed zero-dollar contracts with Garza for Casas Quetzal, Sunzal, Montezuma, Mesa, and Reliant for additional one-year periods beginning in July 2020; (6) again renewed Garza's zero-dollar contracts in 2021 for the five Houston shelters, for one-year terms through

June 2022; and (7) awarded Garza zero-dollar contracts to continue serving at Casas Mesa and Reliant beginning in July 2022. Compl. ¶¶ 117–121, 125, 139, 143, 171, 177, 182, & 186.

"Behavior does not constitute retaliation under the False Claims Act . . . unless it would be sufficient to constitute an adverse employment action under Title VII." *Turner v. DynMcDermott Petroleum Operations Co.*, No. 06-1455, 2010 WL 4363403, at *2 (E.D. La. Oct. 21, 2010) (citing *Moore v. Calif. Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 848–49 (9th Cir. 2002)). Relator does not, and cannot, tie her purported protected activity in September 2018 to her alleged "retaliation" for not winning competitive bids she submitted to SWK on three of five contracts four years later. "For FCA retaliation purposes, "the prima facie case's causation requirement [can] be satisfied by showing 'close timing between an employee's protected activity and an adverse action against him.'" *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 241 (5th Cir. 2019) (internal citations omitted); *see also Jacquez v. GEO Int'l Mgmt., LLC*, No. EP-20-CV-00183-KC, 2021 WL 2908880, at *9 (W.D. Tex. June 2, 2021) (noting "the Supreme Court has . . . approvingly cited a case that held three months was insufficient to show causation") (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

**CONCLUSION**

For the foregoing reasons, Defendant Southwest Key Programs, Inc. respectfully requests that the Court dismiss the claims against it in Relator's First Amended Complaint with prejudice.

Dated: June 25, 2025

Respectfully submitted,

*/s/ Mindy B. Pava*

**FELDESMAN LEIFER LLP**
Scott S. Sheffler (*pro hac vice*)
Mindy B. Pava (*pro hac vice*)
Stephen M. Kuperberg (*pro hac vice*)
1129 20th Street NW, Suite 400
Washington, DC 20036
Telephone: (202) 466-8960
Fax: (202) 293-8103
Email: ssheffler@feldesman.com
mpava@feldesman.com
skuperberg@feldesman.com

*/s/ Michael E. Clark*

**WOMBLE BOND DICKINSON LLP**
Michael E. Clark (Texas Bar No. 04293200)
717 Texas Avenue, Suite 2100
Houston, TX 77002
Telephone: (346) 998-7807
Email: Michael.clark@wbd-us.com

*Counsel for Defendant Southwest Key Programs, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 25, 2025, I electronically filed the foregoing document with the Clerk of the District Court using its CM/ECF system, which would then electronically notify all parties of record who are CM/ECF participants on this case.

_*/s/ Mindy B. Pava*_______________
Mindy B. Pava