**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **Ex rel. JANA GARZA** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **No. 1:25-CV-00305-ADA-SH** |
| | § | |
| **SOUTHWEST KEY PROGRAMS, INC.,** | § | |
| **et. al.,** | § | |
| **Defendants.** | § | |

# DEFENDANTS EDER FRANCISCO HERNANDEZ, ALYSSA HERNANDEZ, MIGDAL EDER, LLC, AND VALLEY MED URGENT CARE, PLLC'S MOTION TO DISMISS

**MARTINEZ & TIJERINA, PLLC**

TOMAS F. TIJERINA
State Bar No. 24070746
Federal ID No. 1062166
E-mail: ttijerina@mbmtlawfirm.com
BENIGNO (TREY) MARTINEZ
State Bar No. 00797011
Federal ID No. 23945
E-mail: trey@mbmtlawfirm.com
1201 East Van Buren
Brownsville, Texas 78520
Tel: 956-550-4868
Fax: 956-621-0135

***Counsel for Defendants Eder Francisco Hernandez, Alyssa Hernandez, Migdal Eder, LLC, and Valley Med Urgent Care, PLLC***

# Table of Contents

I. INTRODUCTION AND SUMMARY ..... 5
A. Failure to plead with particularity ..... 5
B. No AKS Violation ..... 6
C. No Quid Pro Quo ..... 6
D. Lack of Direct and Independent Knowledge – No Original Source ..... 6
II. BACKGROUND ..... 7
III. ADOPTION BY REFERENCE ..... 10
IV. STATEMENT OF THE ISSUE ..... 10
V. LEGAL STANDARDS ..... 10
A. 12(b)(6) ..... 10
B. Rule 9(b) ..... 11
VI. ARGUMENTS AND AUTHORITIES ..... 11
A. The False Claims Act, 31 USC §§3729 et seq. and the Anti-Kickback Statute (AKS) 42 USC § 1320A-7B(B) ..... 11
B. Relator Fails to Allege any Facts to Support Count 1 – FCA 3729(a)(1)(A) ..... 13
i. ORR is NOT a Federal Health Care Program ..... 15
ii. No AKS Violation ..... 16
iii. No Causal Link or Presentment ..... 18
iv. Lack of Direct and Independent Knowledge – No Original Source ..... 20
C. Relator Fails to Allege any Facts to Support Count 2 – FCA 3729(a)(1)(A) ..... 22
D. Relator Fails to Allege any Facts to Support Count 3 – Conspiracy Under FCA 3729(a)(1)(A) ..... 24
E. Relator Fails to Allege any Facts to Support Count 4 – Retaliation Under 31 U.S.C. 3730(h) ..... 24
VII. CONCLUSION AND PRAYER ..... 24

## TABLE OF AUTHORITIES

### CASES

Ashcroft v. Iqbal, 556 U.S. 662 (2009)............ 9, 11, 15
Baker v. Putnal, 75 F.3d 190 (5th Cir. 1996)............ 10
Exodus Refugee Immigration v. Pence, 165 F.Supp.3d 718, 729 (S.D. Ind. 2016)............ 16
Gonzalez v. Kay, 577 F.3d 600 (5th Cir. 2009)............ 11
Rockwell Int'l Corp. v. United States, 549 U.S. 457, 470 (2007)............ 6, 20
Tennessee v. U.S. Dep't of State, 329 F.Supp.3d 597, 604–605 (W.D. Tenn. 2018)............ 16
U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., 782 F. Supp. 2d 248, 263 (E.D. La. 2011)............ 21
U.S. ex rel. Colquitt v. Abbott Labs., 864 F. Supp. 2d 499, 531 (N.D. Tex. 2012)............ 21
U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180 (5th Cir. 2009)............ 11
U.S. ex rel. Jamison v. McKesson Corp., 649 F.3d 322, 330 (5th Cir. 2011)............ 21
U.S. ex rel. Jamison v. McKesson Corp., 900 F.Supp.2d 683 (N.D. Miss. 2012)............ 6
U.S. ex rel. Koerner v. Crescent City E.M.S., Inc., 946 F. Supp. 447, 451 (E.D. La. 1996)............ 21
U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co., 336 F.3d 346, 355 (5th Cir. 2003)............ 21
U.S. ex rel. Parikh v. Citizens Medical Center, 977 F.Supp.2d 654 (S.D. Tex. – Victoria, 2013)............ 12, 18
U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys., 274 F. Supp. 2d 824, 851 (S.D. Tex. 2003)............ 21,22
U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys., 384 F.3d 168, 177–78 (5th Cir. 2004)............ 21
United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 185 (5th Cir. 2009)............ 5
United States ex rel. Kester v. Novartis Pharm. Corp., 43 F.Supp.3d 332, 353 (S.D.N.Y, 2014)............ 15
United States ex rel. King v. Solvay Pharm., Inc., 871 F.3d 318, 330 (5th Cir. 2017)............ 22
United States ex rel. Nunnally v. West Calcasieu Cameron Hosp., 519 F. App'x 890, 894 (5th Cir. 2013)............ 15
United States ex rel. Ruscher v. Omnicare, Incorporated, 663 Fed.Appx. 368 (5th Cir. 2016)…............ 17, 19
United States ex rel. Shupe v. Cisco Sys., Inc., 759 F.3d 379, 382 (5th Cir. 2014)............ 11
United States v. Medoc Health Services LLC, 470 F. Supp. 3d 638, 647 (N.D. Tex. 2020)............ 17
United States v. Organon USA, Inc., 2013 WL 12142351 (S.D. Tex, - Houston Div. 2013)............ 16
Universal Health Services, Inc. v. U.S., 579 U.S. 176 (2016)............ 23
Universal Health Servs., Inc. v. United States ex rel. Escobar, 579 U.S. 176 (2016)............ 19

### STATUTES

31 U.S.C. § 3729............ 11, 12, 13, 18, 19, 22, 24
31 U.S.C. § 3730............ 11, 20, 24
42 U.S.C. § 1320a-7b............ 11 - 15

### RULES

Federal Rule of Civil Procedure 12(b)(6)............ 7, 9, 10, 19, 25

Federal Rule of Civil Procedure 5(b)(2) .......................................................................................... 25
Federal Rule of Civil Procedure Rule 9(b) ............................................... 5, 7, 9, 10, 11, 14, 15, 19

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COME, Defendants, Eder Francisco Hernandez ("Eder"), Alyssa Hernandez, Migdal Eder, LLC, and Valley Med Urgent Care, PLLC (collectively "Hernandez Defendants"), in the above-numbered cause and file this Motion to Dismiss and show the Court as follows:

## I. INTRODUCTION AND SUMMARY

Relator Jana Garza ("Relator" or "Garza") alleges that Defendants, along with unnamed collaborators, engaged in a scheme to steer Southwest Key Programs' medical provider contracts to friends, family members, and personal associates, allegedly in violation of conflict-of-interest provisions and federal anti-kickback laws. Doc. 24 ¶ 2. However, despite the sweeping nature of these claims, the Complaint is devoid of particularized facts sufficient to support any actionable violation of the False Claims Act ("FCA") or the Anti-Kickback Statute ("AKS").

Garza seeks to recover FCA damages based on claims that *she herself submitted*, for services *she herself rendered*, pursuant to contracts *she herself was awarded*, despite having rejected any illegal inducement and continuing under terms independent of any alleged kickback scheme.

### *A. Failure to plead with particularity*

Relator fails to meet the pleading standards under Federal Rule of Civil Procedure 9(b). Her allegations are speculative, conclusory, and lack factual support. The Complaint does not differentiate among the individual defendants or describe with specificity the who, what, when, where, and how of any alleged fraud. Such deficiencies are fatal under Rule 9(b) and warrant dismissal. See *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

***B. No AKS Violation***

The alleged conduct does not constitute an AKS violation. First, the ORR is not a federal health care program. Because the FCA liability is premised on an AKS violation, Relator cannot use an alleged kickback involving ORR funds as the basis for FCA liability. Second, the Complaint acknowledges that Garza rejected any "alleged" kickback arrangement, and no payment was made. Doc. *24 at* ¶115 and ¶117. Without the exchange of remuneration, there can be no AKS violation as a matter of law. *U.S. ex rel. Jamison v. McKesson Corp*., 900 F.Supp.2d 683 (N.D. Miss. 2012). The AKS specifically criminalizes the acceptance of remuneration in return for referrals, so the absence of any payment or remuneration would mean that the statute has not been violated. *Id*.

***C. No Quid Pro Quo***

The AKS requires a quid pro quo arrangement, where remuneration is provided in exchange for referrals of federally reimbursable services. The Complaint does not provide evidence of an agreement to exchange payment for such referrals. Instead, it alleges a unilateral request for payment for services to be rendered ***after*** the job recommendation had already been completed. Courts have consistently held that a mere expectation or hope of payment does not meet the threshold of a quid pro quo under the AKS. *Id.*

***D. Lack of Direct and Independent Knowledge – No Original Source***

Plaintiff's knowledge is not direct because it is based solely on statements made by Eder Hernandez regarding an alleged, or perceived, kickback arrangement with another individual Dr. A. The FCA requires first-hand, unmediated knowledge of the alleged fraudulent conduct. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 470 (2007). The Plaintiff's reliance on secondhand information fails to meet this standard.

The Hernandez Defendants therefore respectfully request that this Honorable Court dismiss all claims against them for failure to state a claim under which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. BACKGROUND

In her fifty-eight-page First Amended Complaint, Relator Jana Garza weaves a broad and speculative narrative alleging violations of the False Claims Act ("FCA") and the Anti-Kickback Statute ("AKS"). However, the operative facts specific to Defendants Eder Francisco Hernandez, Alyssa Hernandez, Migdal Eder, LLC, and Valley Med Urgent Care, PLLC ("the Hernandez Defendants") amount to little more than an unexecuted business proposal and unsubstantiated rumors. At its core, Relator claims she was approached for a potential position at shelters operated by Southwest Key Programs, Inc. ("SWK") and supposedly was offered an arrangement she ultimately rejected. Beyond that, she offers vague hearsay, opinions, and sweeping conclusions that do not rise to the level of plausibly pleaded claims under Rule 12(b)(6), let alone satisfy the heightened pleading standards of Rule 9(b).

Relator alleges that around 2015, Eder Hernandez contacted her about providing medical services to unaccompanied minors housed in SWK shelters. She claims he later met with her and discussed the possibility of employment or a contractual role—conversations which never culminated in any formal agreement. Doc. 24 ¶¶ 76–78. In 2017, Eder Hernandez again allegedly offered Garza a job through Dr. Abdur Rauf, which she declined. Doc. 24 ¶ 80.

In mid-2018, Garza met with Eder Hernandez and others, including Alyssa Hernandez, to discuss medical provider opportunities at new SWK shelters. Doc. 24 ¶¶ 84–85. Eder Hernandez allegedly informed Garza that she would be selected as a provider at the upcoming Casa Sunzal shelter in Houston. Doc. 24 ¶ 91. Relator was subsequently told by SWK officials that she had

been awarded, by verbal agreement, to serve as a provider at both the Casa Sunzal and Casa Quetzal shelters. Doc. 24 ¶ 104.

According to Garza, on August 21, 2018, Eder proposed a business arrangement under which his management company and his sister would receive a percentage of collections in exchange for assisting with administration and billing. Doc. 24 ¶ 110. Garza rejected this proposal and, crucially, admits that no agreement was ever signed. Doc. 24 ¶ 115. She also states that when she raised concerns with SWK officials Fanny Figueroa and Diego Naranjo, both denied knowledge of Eder's proposal, and Naranjo told her that she had no obligation to work with Eder. Doc. 24 ¶ 119. There are no further factual allegations of communication or involvement between Garza and the Hernandez Defendants.

Notably, Relator concedes she was awarded multiple provider contracts from SWK, was never required to work with the Hernandez Defendants, and continued working for SWK through the time of filing suit. Doc. 24 ¶¶ 115, 119, 124, 143–144, 171–177. She does not identify a single payment made to any Defendant, nor does she allege that any Defendant submitted or caused the submission of a false claim to the federal government. She does not identify a single false claim or billing entry that resulted from the alleged conduct. These omissions are fatal.

To compensate for this evidentiary void, Relator inserts a host of conclusory assertions and speculative accusations, none of which are grounded in firsthand knowledge or specific facts. For example, she claims that Eder Hernandez formed Migdal Eder, LLC "for the purpose of obtaining kickbacks" (Doc. 24 ¶ 15), that Alyssa Hernandez was "involved in" a proposed kickback scheme (Doc. 24 ¶ 18), and that Eder had a "kickback arrangement" with an unnamed "Dr. A" (Doc. 24 ¶ 78). These allegations are based solely on what Eder allegedly told her, without corroboration or context. Garza further alleges there was a "master plan" involving Eder and others at SWK to

manipulate federal contracts for personal gain (Doc. 24 ¶¶ 93–96), but again offers no specifics, no documents, no emails, and no identifiable false claims.

Even more attenuated are her allegations involving third parties, such as an alleged 2014 or 2015 solicitation of "Dr. B" in South Texas—an entirely unrelated event that predates any conduct involving the Hernandez Defendants. Doc. 24 ¶¶ 98–101. Relator also contends that various contract awards violated SWK's internal conflict-of-interest policy yet fails to allege that any such policy was material to any government payment, or that any Defendant certified compliance with such provisions in connection with a federal claim. Doc. 24 ¶¶ 61–62, 194, 216.

At best, the Relator alleges only that Eder Hernandez proposed, but never executed, a business arrangement with Garza, which she declined. She reported this to SWK, was told by SWK officials that no such agreement was required, and she ultimately continued working under separate contracts. The remainder of her allegations are unverified suppositions about a wider fraudulent scheme, built on alleged conversations and beliefs rather than concrete events or documents. As the Supreme Court has made clear, courts must disregard "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Because the Complaint fails to allege with specificity any act by the Hernandez Defendants that constitutes an FCA or AKS violation—and instead relies on vague references, indirect associations, and speculative motives—it must be dismissed under Rule 12(b)(6) and Rule 9(b). The factual narrative does not plausibly or particularly support the existence of a kickback scheme, the submission of a false claim, or any causal link between Defendants and federal funds.

## III. Adoption by Reference

To avoid unnecessary repetition and in the interest of judicial efficiency, Defendants adopt and incorporate by reference the arguments, authorities, and factual background presented in the Motions to Dismiss filed by co-defendants Southwest Key Programs, Inc. and the Naranjo Defendants (Diego Naranjo, Trinity Health Services, PLLC, and Divine Family Care, PLLC), to the extent such arguments are applicable and consistent with the positions herein. Doc. 89, 89-1, and 90.

## IV. Statement of the Issue

1. Whether Relator has sufficiently pled facts to support a claim under the False Claims Act (FCA) and the Anti-Kickback Statute (AKS).
2. Whether Relator's claims meet the specificity requirement of Rule 9(b) for fraud allegations.
3. Whether Relator qualifies as an "original source" under the FCA, possessing direct and independent knowledge of the alleged fraudulent conduct.

## V. Legal Standards

### *A. 12(b)(6)*

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted).

The Supreme Court in *Iqbal* explained that *Twombly* illustrates the applicable "two-pronged approach" for determining whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 679. A court must identify those pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Legal conclusions "must be supported by factual allegations." *Id.* Upon identifying the well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### *B. Rule 9(b)*

Federal Rule of Civil Procedure Rule 9(b) is a gatekeeper – a tool to weed out meritless fraud claims at an early stage. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009). An FCA complaint must also meet the heightened pleading standard of Rule 9(b). *Id*. Rule 9(b) states that "a party must state with particularity the circumstances constituting fraud" and "requires, at a minimum, that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Shupe v. Cisco Sys., Inc*., 759 F.3d 379, 382 (5th Cir. 2014). The Complaint falls short of this standard regarding the Hernandez Defendants.

## VI. ARGUMENTS AND AUTHORITIES

### *A. The False Claims Act, 31 USC §§3729 et seq. and the Anti-Kickback Statute (AKS) 42 USC § 1320A-7B(B)*

The FCA authorizes actions by the United States or by a relator in a qui tam capacity on behalf of the Government. 31 U.S.C. § 3730 et seq (2012). As relevant here, the FCA imposes

civil penalties and damages on any person who (i) "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the Government; (ii) "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"; (iii) "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay . . . or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government; and (iv) "conspires to commit a violation of [the FCA]." 31 U.S.C. § 3729(a)(1)(A)–(C), (G).

The Fifth Circuit has summarized the FCA inquiry as follows: (1) whether there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim). *United States ex rel. Harman v. Trinity Industries, Inc*., 872 F.3d 645, 653–54 (5th Cir. 2017).

In this context, Relator asserts as her FCA predicate the AKS, which provides criminal penalties for:

> [K]nowingly and willfully offer[ing] or pay[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person ... to refer an individual to a person for the furnishing ... of any item or service for which payment may be made in whole or in part under a federal health care program.
> 42 U.S.C. § 1320a–7b (b)(2) (2012).

However, notwithstanding any alleged AKS violation, Relator must establish that the claims rendered fraudulent by any underlying AKS violation were presented to the Government. *U.S. ex rel. Parikh v. Citizens Medical Center*, 977 F.Supp.2d 654 (S.D. Tex. – Victoria, 2013). This is not a stand-alone AKS violation case but a claim by Relator under the False Claims Act.

Here, the Complaint fails to tie any specific claim or invoice to the government to the alleged scheme.

### *B. Relator Fails to Allege any Facts to Support Count 1 – FCA 3729(a)(1)(A)*

Relator has asserted claims against the Hernandez Defendants based upon an alleged violation of federal statute 31 U.S.C. §3729(a)(1)(A). The claims are frivolous as there is no plausible legal or factual basis for these claims as alleged.

Relator alleges that Eder Hernandez orchestrated and participated in a kickback scheme involving multiple physicians and individuals affiliated with Southwest Key Programs. Specifically, at an unspecified time, Hernandez allegedly entered into an agreement with a physician identified as "Dr. A" in Brownsville, Texas, whereby Dr. A would pay Hernandez kickbacks derived from federal funds received for providing medical services to unaccompanied children (UCs) housed at Casa Padre. Doc. 24 at ¶ 206. Relator further asserts that Hernandez sought similar illicit payments from Garza. *Id*. According to the complaint, these arrangements violated the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b(b)(1)(A), because Hernandez accepted payments in exchange for referrals of UCs whose medical care was funded by the federal Office of Refugee Resettlement (ORR). Relator also contends that this scheme was not isolated, but rather likely employed with additional providers beyond Dr. A and Dr. Garza. *Id*. at ¶ 207. Additional violations are alleged to have occurred when Eder Hernandez, along with his sister Alyssa Hernandez, solicited payments from Dr. Garza, and when two representatives of Southwest Key solicited payments from another physician referred to as "Dr. B". *Id*. at ¶ 202.

The Complaint fails to allege any facts establishing a definite agreement or quid pro quo exchange. It does not specify any amount of remuneration promised or paid to Eder Hernandez, nor does it identify any particular referral, patient, or contract that resulted from such a payment.

The allegations are vague and devoid of concrete facts demonstrating that any Defendant knowingly offered or received remuneration in return for referrals of federally funded health care services. Without factual allegations showing a knowing and willful payment intended to induce referrals or the awarding of contracts—an essential element of a violation under the Anti-Kickback Statute, 42 U.S.C. § 1320a–7b(b)—the Complaint rests on speculative and conclusory assertions. Relator fails to allege, among others:

1. The role the Hernandez Defendants allegedly played in causing or participating in the submission of false claims to the government, including any authority over claims submission or payment processes.
2. The involvement, if any, of Valley Med Urgent Care, PLLC.
3. Any fraudulent statements or misrepresentations made by the Hernandez Defendants to Medicare, Medicaid, or any governmental entity, nor does it provide details on when, where, or under what circumstances such conduct occurred.
4. The required particularity regarding the false claims themselves—it does not describe any specific invoices, billing codes, amounts, or how these claims were fraudulent, nor does it explain how the Hernandez Defendants' actions proximately caused government disbursements.
5. A clear timeline for key events, including the alleged kickback payments, the period during which Dr. A provided services under the purported kickback arrangement, or the dates on which specific claims were allegedly submitted to the government.
6. The nexus between the alleged kickback scheme and any specific false claim submitted to a federal program, nor does it explain how the purported kickback arrangement influenced government payment decisions.

Critically, the Complaint omits any allegations that the Hernandez Defendants had actual authority or control over billing processes, contracts, or financial transactions that could influence claims for payment. The lack of any factual assertion that these defendants held positions of power to affect claim submission is fatal under Rule 9(b). Without alleging that the Hernandez Defendants had the ability to submit or influence claims submitted to the government, Relator's

generalized references to "schemes" and "collaboration" amount to nothing more than speculation. The Fifth Circuit has routinely rejected such generalized accusations where the complaint does not plead specific facts connecting the defendant to the fraudulent claim itself. *United States ex rel. Nunnally v. West Calcasieu Cameron Hosp*., 519 F. App'x 890, 894 (5th Cir. 2013).

As such, it fails to meet the plausibility standard required under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and does not state a viable claim under the Anti-Kickback Statute. Therefore, Relator's failure to plead with particularity—compounded by the Hernandez Defendants' lack of actual authority—requires dismissal of the Complaint under Rule 9(b).

**i. ORR is NOT a Federal Health Care Program**

The AKS defines a "federal health care program" as: "any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government (other than the health insurance program under chapter 89 of title 5)". 42 U.S.C. § 1320a-7b(f). Courts interpreting this language have uniformly held that the AKS applies to programs such as Medicare, Medicaid, and TRICARE – i.e., programs that directly provided health benefits or reimbursements for health care services. *See United States ex rel. Kester v. Novartis Pharm. Corp.*, 43 F.Supp.3d 332, 353 (S.D.N.Y, 2014).

ORR, a component of the Department of Health and Human Services (HHS), primarily administers programs for the resettlement of refugees and care of unaccompanied minors. These services include housing, education, and some limited medical screening and urgent care, but ORR does not provide health insurance, ongoing medical care, or reimbursement for health services in a manner akin to Medicare or Medicaid. The ORR's primary role is to provide social services, cash assistance, and medical assistance to refugees and unaccompanied alien children. These

services are funded through federal grants and contracts with states, local agencies, and private non-profit organizations. *Tennessee v. U.S. Dep't of State*, 329 F.Supp.3d 597, 604–605 (W.D. Tenn. 2018). While the ORR does provide some medical assistance, such as initial health screenings and medical treatment for refugees, its primary focus is on resettlement and social services rather than providing ongoing health benefits. See *Exodus Refugee Immigration v. Pence*, 165 F.Supp.3d 718, 729 (S.D. Ind. 2016). Because ORR does not fund a "health care program," the AKS simply does not apply.

FCA liability premised on AKS violations requires a showing that the underlying conduct violated the AKS. 42 U.S.C. § 1320a-7b(g). Where the AKS does not apply to the relevant federal program, any corresponding FCA theory fails as a matter of law. Because ORR is not a "federal health care program," Relator cannot use alleged kickbacks involving ORR funds as the basis for FCA liability.

**ii. <u>No AKS Violation</u>**

The alleged conduct does not constitute a violation of the Anti-Kickback Statute (AKS). The Complaint concedes that Dr. Garza rejected the "alleged" kickback solicitation and that no payment or remuneration was ever made. Doc. 24 at ¶¶115, 117. Under the AKS, "remuneration" refers to the transfer of anything of value in exchange for referrals of services reimbursable under a federal health care program. *See United States v. Organon USA, Inc.,* 2013 WL 12142351 (S.D. Tex, - Houston Div. 2013). The Complaint's acknowledgment that no payment occurred is fatal to the claim.

Moreover, the allegations regarding "Dr. B" suffer from the same defect. The Complaint expressly states that the "alleged" kickback offer to Dr. B was declined and that no remuneration was provided. Doc. 24 at ¶¶100, 101. As with the claims involving Relator, the absence of any

actual exchange of value defeats the necessary element of remuneration under the AKS and renders these claims legally insufficient.

Additionally, the Anti-Kickback Statute (AKS) requires a quid pro quo arrangement—namely, that remuneration be offered or received in exchange for referrals of services reimbursable under a federal health care program. See *United States v. Medoc Health Services LLC*, 470 F. Supp. 3d 638, 647 (N.D. Tex. 2020). The Complaint, however, fails to allege any facts demonstrating such an agreement. Instead, it describes a unilateral request for payment made after a job recommendation had already been completed, without any allegation that the payment was promised or provided in exchange for patient referrals or the awarding of federally reimbursable medical contracts.

Courts have consistently held that a mere hope or expectation of future payment does not establish the required quid pro quo under the AKS. *United States ex rel. Ruscher v. Omnicare, Incorporated*, 663 Fed.Appx. 368 (5th Cir. 2016). As stated in the Complaint, the Defendant allegedly recommended the Plaintiff for a position with a medical practice and only requested compensation in exchange for administrative services after the Plaintiff had already secured the job. This alleged sequence of events lacks the essential contemporaneity required to support a finding that the remuneration was intended to induce referrals. See *Medoc Health*, 470 F. Supp. 3d at 647.

The AKS criminalizes the knowing and willful offer or receipt of remuneration in return for referrals—not general recommendations or employment assistance absent any nexus to federal program business. As such, the allegations, even if accepted as true, do not amount to a violation of the AKS. A post hoc request for payment without an accompanying agreement or intent to induce referrals fails to meet the statutory threshold for liability.

### iii. <u>No Causal Link or Presentment</u>

Notwithstanding any alleged AKS violation, Relator must establish that the claims rendered fraudulent by any underlying AKS violation were presented to the Government. *U.S. ex rel. Parikh v. Citizens Medical Center*, 977 F.Supp.2d 654 (S.D. Tex. – Victoria, 2013). This is not a stand-alone AKS violation case but a claim by Relator under the False Claims Act. Here, the Complaint fails to tie any specific claim or invoice to the government to the alleged scheme.

Relator's own allegations defeat any plausible inference that the Hernandez Defendants "caused" the submission or "presentment" of a false or fraudulent claim within the meaning of 31 U.S.C. § 3729(a)(1)(A). According to the First Amended Complaint, Relator: 1) Was independently awarded provider contracts at SWK facilities (Doc. 24 ¶¶ 91, 104); 2) Was told by SWK officials that she had no obligation to work with Eder Hernandez (Doc. 24 ¶ 119); 3) Rejected the proposed administrative agreement and paid no remuneration to any Defendant (Doc. 24 ¶¶ 110–115); and 4) Continued to perform services and submit claims for reimbursement long after severing contact with the Hernandez Defendants (Doc. 24 ¶¶ 143–144, 177).

On these allegations, Relator herself—not the Hernandez Defendants—submitted the claims she now seemingly labels false. She identifies no factual allegation that any of the Hernandez Defendants drafted, submitted, reviewed, influenced, or even knew about the claims ultimately presented to the government. As such, the Complaint fails to plead causation or presentment, a required element under the FCA.

To establish the claim, Relator must establish that the claims were presented to the government. *See U.S. ex rel. Parikh v. Citizens Medical Center*, 977 F.Supp.2d 654 (S.D. Tex. – Victoria, 2013). Relator must allege and prove that "(1) ... there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; **<u>and</u>**

**(4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim).**". See *United States ex rel. Ruscher v. Omnicare, Inc.*, 663 F. Appx 368, 374–75 (5th Cir. 2016).

Here, as to Relator's own conduct, she concedes that no money was paid, no agreement was executed, and the services at issue were rendered and billed for apart from any alleged misconduct. She thus fails to plead that any claim "resulted from" a violation of the AKS. Relator's own conduct confirms that the claims she submitted were for services rendered under valid provider agreements and were not conditioned on any remuneration to Defendants. Under *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016), a false claim must be material to the government's payment decision. Here, Relator does not allege that she misrepresented compliance with the AKS, nor that the government was misled in approving her claims. Her FCA theory lacks any factual or legal foundation and should be dismissed.

Because Relator fails to allege that the Hernandez Defendants submitted or caused the submission of any false claim—and because she admits she declined the "alleged" kickback proposal which was essentially an offer for administrative services—the Complaint fails to state a claim under the FCA as a matter of law. Accordingly, all claims against the Hernandez Defendants under 31 U.S.C. § 3729(a) should be dismissed with prejudice pursuant to Rules 12(b)(6) and 9(b).

With regards to the other allegations, Relator does not identify a single claim for payment to ORR (or any federal program) that was connected to Dr. A's contract or influenced by an alleged kickback to the Hernandez Defendants. The pleading generically states that "each such claim for payment to the government was a violation of the False Claims Act" but offers no details about any claim: no dates, claim numbers, amounts, or patients. There is not even an allegation that "but for" the kickback, the government would not have paid for Dr. A's services. In fact, the Complaint

concedes it does not know the full scope of the scheme, alleging it was "likely" employed with unspecified "other medical providers" besides Dr. A. This kind of conjecture highlights the lack of a concrete causal link.

**iv. <u>Lack of Direct and Independent Knowledge – No Original Source</u>**

Relator's claims are independently barred by the public disclosure bar under the False Claims Act ("FCA"), 31 U.S.C. § 3730(e)(4), because she is not an "original source" of the allegations she asserts. To survive dismissal under the FCA when public disclosures are involved, a relator must satisfy the statute's stringent original source requirements. Specifically, she must possess direct and independent knowledge of the information underlying her claims and must have voluntarily provided that information to the government prior to filing suit. *See Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 470 (2007).

As shown above, the actions between Defendants and Relator do not amount to a violation. Relator's remaining allegation involves Dr. A. Relator alleges several uncorroborated and conclusory statements: that on July 27, 2015, **<u>Eder told Garza</u>** that he could get her a full-time job on a limited-time basis with Dr. A….**<u>Garza later learned from Eder</u>** that he (Eder) had a kickback arrangement with Dr. A for the latter's provision of medical services to UCs at SWK's shelter called Casa Padre, as explained more fully below. Doc. 24 at ¶78. **<u>Eder said he was the reason</u>** for getting Dr. A the medical provider contract at Casa Padre. Doc. 24 at ¶93. **<u>Eder told Garza that he had</u>** a contract with Dr. A, but complained that Dr. A was not honoring his end of the deal because he was only paying Eder $90 for each child he saw at Casa Padre. Doc. 24 at ¶93. **<u>Eder shared that Dr. Diaz's wife confronted</u>** him about the agreement and asked why they should pay him if he was not doing anything. Doc. 24 at ¶97. **<u>Eder told Garza that</u>** Dr. Diaz

eventually paid him $30,000 for the Casa Padre contract. As explained in more detail below, SWK eventually replaced Dr. A with Trinity Health Services. Doc. 24 at ¶97.

Such secondhand information does not meet the FCA's requirement for "direct and independent knowledge." Courts consistently define "direct" as firsthand knowledge—what the relator personally saw or learned through their own efforts, not what they were told by someone else. See *U.S. ex rel. Koerner v. Crescent City E.M.S., Inc.*, 946 F. Supp. 447, 451 (E.D. La. 1996); *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 330 (5th Cir. 2011). "Independent" knowledge, in turn, must not be based on public disclosures or derivative of another person's knowledge. See *U.S. ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 531 (N.D. Tex. 2012); *U.S. ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 355 (5th Cir. 2003); *U.S. ex rel. Branch Consultants, L.L.C. v. COL Ins. Co.*, 782 F. Supp. 2d 248, 263 (E.D. La. 2011).

Garza's supposed knowledge does not qualify. She did not work in billing, never saw or submitted a claim to the Office of Refugee Resettlement (ORR) or the Department of Health and Human Services (HHS), and had no interaction with government payors. Her allegations rest solely on what Eder Hernandez allegedly told her—without any personal observation of false claims or kickbacks. As such, her knowledge is neither "direct" nor "independent." See *U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 177–78 (5th Cir. 2004) (relator who learned of fraud secondhand is not an original source); see also *U.S. ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 274 F. Supp. 2d 824, 851 (S.D. Tex. 2003) (secondhand information—even from someone who directly witnessed fraud—is insufficient).

For instance, in *U.S. ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, the court held that a person who obtains secondhand information from an individual who

has direct knowledge of the alleged fraud does not himself possess direct knowledge and therefore is not an original source under the FCA. *U.S. ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, 274 F.Supp.2d 824 (S.D. Texas – Houston Div., 2003). Relator must have personally observed or participated in the fraud, not just learned about it from interviews or secondhand sources. *Id*.

Further, the Fifth Circuit has made clear that even where a relator claims to have direct knowledge of misconduct, they must also show a connection between that knowledge and false claims submitted to the government. See *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 330 (5th Cir. 2017). Garza cannot make this showing. She identifies no false claim, invoice, or billing submission she saw, participated in, or knows about from her own experience.

***C. Relator Fails to Allege any Facts to Support Count 2 – FCA 3729(a)(1)(A)***

Defendants reiterate the Relator's failure in Count 1 as the same are applicable herein.

Relator has asserted claims against Eder Hernandez and Valley Med Urgent Care PLLC based upon an alleged violation of federal statute 31 U.S.C. §3729(a)(1)(A). The claims are frivolous as there is no plausible legal or factual basis for these claims, as alleged.

Relator alleges the agreement between SWK and the U.S. Department of Human Services' Office of Refugee Resettlement ("ORR") includes a "Conflict of Interest" requirement that explicitly prohibits SWK and their staff from 'taking advantage of any professional or personal relationship or from exploiting their position to further their personal,… financial, or business interest. Doc. 24 at ¶211. Relator alleges that SWK awarded Naranjo the medical provider contracts for many of its shelters, "which directly benefited Eder." Doc. 24 at ¶214. "Each of these contracts awards violates the conflict of interest condition of the respective corresponding cooperative agreements." Doc. 24 at ¶216. Relator does not allege a violation of the Stark Law,

42 U.S.C. § 1395nn; 42 C.F.R. § 411.353, however, she does indicate the same language is included in the ORR's cooperative agreements. Doc. 24 at ¶218.

Relator's claims against Eder Hernandez and Valley Med Urgent Care PLLC are unclear as they are not signatories to the grant. Moreover, there are no direct claims against them for any such violation.

Even if Relator had adequately alleged a violation, the Complaint fails to show that any alleged violation was material to any claim paid by the government. The FCA defines "material" as having a natural tendency to influence the payment decision, and the Supreme Court has stressed that the materiality standard is "demanding" and "rigorous". *United States ex rel. Harman v. Trinity Industries, Inc.*, 872 F.3d 645, 653–54 (5th Cir. 2017). Not every violation of a statute or regulation gives rise to FCA liability; it must be one that would truly influence the government's payment decision. Here, Relator does not identify any provision in Defendants' government contracts or claims that expressly certifies compliance with the AKS. She relies on a generalized "conflicts of interest" clause in Southwest Key's grant agreements, which prohibits staff from exploiting their position for personal gain. Such broad boilerplate language is exactly the sort of compliance condition that courts deem too general to support an FCA claim. Indeed, the Supreme Court has made clear that "a misrepresentation cannot be deemed material merely because the Government designates compliance with a particular requirement as a condition of payment." *Universal Health Services, Inc. v. U.S.,* 579 U.S. 176 (2016). Nor is it enough that the government *could* refuse payment if it knew of the violation; materiality "cannot be found where noncompliance is minor or insubstantial". *Id*. Relator's pleading offers no particularized facts showing that the government would have withheld payments had it known of Defendants' alleged actions. There are no allegations that the government actually did stop or claw back payments upon

learning of these issues. To the contrary, Relator's own narrative implies that payments to Southwest Key and its providers continued – a scenario which only underscores that in Relator's case, no such action by ORR is alleged. Under the FCA's stringent materiality test, Relator needed to plead facts showing the scheme was material to the government's decision to pay claims. She has not done so. Absent materiality, a breach of the conflict-of-interest rules does not translate into an FCA violation.

***D. Relator Fails to Allege any Facts to Support Count 3 – Conspiracy Under FCA 3729(a)(1)(A)***

Relator has asserted claims against Eder Hernandez, Alyssa Hernandez, and Migdal Eder, LLC for Conspiracy based upon an alleged violation of federal statute 31 U.S.C. §3729(a)(1)(A). The claims are frivolous as there is no plausible legal or factual basis for these claims, as alleged.

Relator alleges the Defendants supposedly conspired by pressuring Relator Garza to enter into their scheme to pay kickbacks, which she refused to join. Doc. 24 at ¶223. She further alleges, however, that the scheme was successfully implemented as it relates to Dr. A and likely other medical providers. Doc. 24 at ¶223. Relator states the conspiracy was also implemented by the engagement in conflicts of interest in the award of medical provider contracts. Doc. 24 at ¶223.

As stated above, the conspiracy claim fails as the underlying claims have no merit.

***E. Relator Fails to Allege any Facts to Support Count 4 – Retaliation Under 31 U.S.C. 3730(h)***

Relator has not asserted claims against the Hernandez Defendants for retaliation in violation of 31 U.S.C. § 3730(h).

## VII. CONCLUSION AND PRAYER

For the reasons stated above, the Hernandez Defendants respectfully request that the Court dismiss the claims against the Hernandez Defendants as set forth herein pursuant to Federal Rule

of Civil Procedure 12(b)(6). The Hernandez Defendants further request any and all further relief to which they may be entitled.

Respectfully submitted,

**MBMT LAW FIRM**
1201 East Van Buren
Brownsville, Texas 78520
Tel: 956-550-4868
Fax: 956-621-0135

By: /s/ *Tomas F. Tijerina*
TOMAS F. TIJERINA
State Bar No. 24070746
Federal ID No. 1062166
E-mail: ttijerina@mbmtlawfirm.com
BENIGNO (TREY) MARTINEZ
State Bar No. 00797011
Federal ID No. 23945
E-mail: trey@mbmtlawfirm.com

## CERTIFICATE OF SERVICE

On the 25th day of June 2025, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Western District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).

/s/ *Tomas F. Tijerina*
Tomas F. Tijerina