UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* JANA GARZA, | § | |
| Plaintiff, | § | |
| v. | § | 1:25-CV-305-ADA-SH |
| SOUTHWEST KEY PROGRAMS, INC., *et al.*, | § | |
| Defendants. | § | |

**UNITED STATES' STATEMENT OF INTEREST**

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517 to answer two questions raised by the Naranjo Defendants (Dkt. 90) and the Hernandez Defendants (Dkt. 91) in their respective motions to dismiss. *First*, does the Office of Refugee Resettlement (ORR), a component of the United States Department of Health and Human Services (HHS), provide health care services to unaccompanied alien children (UACs) pursuant to a "Federal health care program" covered by the Anti-Kickback Statute (AKS)? *Second*, is the *qui tam* provision of the False Claims Act constitutional? Aside from answering these questions, the Government expresses no opinion on the pending motions to dismiss, and the Court should not construe the Government's silence on other arguments as support or opposition.

## I. ORR Provides Health Care Services to UACs Pursuant to a "Federal Health Care Program" Covered by the Anti-Kickback Statute

The Naranjo Defendants (Dkt. 90, at 8–10) and the Hernandez Defendants (Dkt. 91, at 15–16) argue that the AKS does not apply to the health care services that are provided to UACs by ORR. In these defendants' view, the AKS applies only to programs that directly provide health benefits, health insurance, or reimbursements for health services to beneficiaries, such as

Medicare, Medicaid, and TRICARE. This narrow view of the phrase "Federal health care program" cannot be squared with the statutory language, which broadly prohibits most kickbacks for items or services that might ultimately be paid for by American taxpayers.

As relevant here, the AKS imposes liability on anyone who knowingly and willfully solicits, receives, offers, or pays remuneration in exchange for referring a person for an "item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1), (2). The term "Federal health care program" is defined as:

> (1) any plan or program that provides health benefits, whether directly, through insurance, or otherwise, which is funded directly, in whole or in part, by the United States Government (other than the health insurance program under chapter 89 of Title 5); or (2) any State health care program, as defined in section 1320a-7(h) of this Title.

*Id.* § 1320a-7b(f). Chapter 89 of Title 5 defines the Federal Employees Health Benefits Program (FEHBP), an employer-sponsored health benefits program for civilian employees and retirees of the U.S. Government.

Under the plain language of the AKS, health care benefits are provided to UACs by ORR under a "Federal health care program." While UACs are in ORR custody,[1] ORR provides "routine medical and dental care; access to medical services requiring heightened ORR involvement…; family planning services; and emergency healthcare services." 45 C.F.R. § 410.1307(a). Each facility must establish "a network of licensed healthcare providers," including "specialists, emergency care services, mental health practitioners, and dental providers that will accept ORR's fee-for-service billing system." *Id.* at § 410.1307(b)(1). Services that must be provided include, but are not limited to, a complete medical examination within two business days of admission (the "initial medical examination" or "IME"); appropriate immunizations; an annual physical

[1] Congress has made the Secretary of HHS responsible for the care and custody of all UACs. *See* 6 U.S.C. § 279; 8 U.S.C. § 1232.

examination, including hearing and vision screening and follow-up care for acute and chronic conditions; and appropriate mental health services. *Id.* at § 410.1307(b); *see also* ORR Unaccompanied Alien Children Bureau Policy Guide: Section 3.4, Health Care Services, *available at* https://acf.gov/orr/policy-guidance/unaccompanied-children-bureau-policy-guide.

The ORR program for UACs is thus a "plan or program that provides health benefits." ORR funds this program of health benefits with federal funds, which are paid to healthcare providers on a fee-for-service basis (similar to Medicare Part A and Part B).[2] These funds are Congressionally appropriated to provide services to UACs, including health care benefits. Therefore, the health benefits for UACs are funded directly, in whole or in part, by the United States Government. The UAC health care benefits are not part of the FEHBP. Each aspect of the AKS's definition of "Federal health care program" is thus met by the ORR-funded health care benefits provided to UACs.

The defendants make several unconvincing arguments to escape the straightforward language of the statute. For example, the Naranjo Defendants argue that ORR provides "time-limited medical assistance" rather than "health benefits." Dkt. 90, at 8–9. The Hernandez Defendants, conceding that ORR provides "some medical assistance" to UACs, asserts that the agency's "primary focus is on resettlement and social services rather than providing ongoing health benefits." Dkt. 91, at 15. But the AKS does not include an exception for "time-limited" medical care, nor establish a "primary focus" requirement. The FEHBP is the only Federally funded health program excluded from the AKS's ambit; the statute otherwise "explicitly applies to all federal programs that 'provide[] health benefits.'" *United States ex rel. Folse v. Napper*, No. 3:17-CV-

[2] In some circumstances, ORR provides grants to care providers to cover all services for UACs, including health care services. The services are still funded by the United States Government.

1478, 2021 WL 4992651, at *16 (M.D. Tenn. Oct. 27, 2021) (alteration in original). Indeed, the AKS purposely "eschews … technical distinctions in order to reach all federal healthcare programs broadly." *Id.* (holding that the AKS applied to a subsidy program that was "a mechanism for using federal funds to provide healthcare").

The Naranjo Defendants also cite to a different federal statute that lists "Federal health care funding programs" that are subject to restrictions on the use of federal funds for, among other things, assisted suicide, euthanasia, or mercy killing. *See* Dkt. 90, at 9 (citing 42 U.S.C. § 14402). The Naranjo Defendants assert that because the ORR program for UACs is not on the enumerated list of "Federal health care funding programs" for these purposes, it cannot be a "Federal health care program" under the AKS. But this argument ignores that the AKS provides its own definition of "Federal health care program" that applies "for purposes of this section." 42 U.S.C. § 1320a-7b(f). By contrast, Section 14402 does not define "Federal health care program," but instead provides a "nonexclusive list" of "Federal health care funding programs" (a different term) that are subject to funding restrictions. *See* 42 U.S.C. § 14402(d)(1), (3). Notably, the list of "Federal health care funding programs" includes the FEHBP, even though that program is specifically excluded from the definition of "Federal health care program" under the AKS.[3]

Finally, the Naranjo Defendants note that in 2013, the Secretary of HHS wrote a letter to a member of Congress in which she declared that qualified health plans offered on health exchanges

---

[3] The Naranjo Defendants' citation to *United States v. Ruan*, 966 F.3d 1101 (11th Cir. 2020), *vacated and remanded on other grounds*, 597 U.S. 450 (2022), does not support their attempt to conflate two separate statutory provisions. Although the *Ruan* Court looked to the list of "Federal health care funding programs" to consider whether the program at issue was subject to the AKS, its conclusion was based on the government's failure at trial to show that any federal monies flowed through the program. *See id.* at 1146. Here, it is undisputed that the health care benefits provided to UACs through ORR are funded by the United States Government with Congressionally appropriated funds. *See* Dkt. 90, at 10 ("The ORR is funded through yearly congressional appropriations.").

established under the Affordable Care Act were not "Federal health care programs" for purposes of the AKS. *See* Dkt. 90, at 9–10. The Naranjo Defendants do not explain how this discussion of a different healthcare program relates to ORR's program, particularly when ORR's program fits squarely within the plain language of the AKS's definition of "Federal health care program." *See Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 630 F.3d 431, 438 (5th Cir. 2011) ("[W]hen the plain language of a statute is unambiguous and does not lead to an absurd result, our inquiry begins and ends with the plain meaning of that language.").

## II. The *Qui Tam* Provision of the False Claims Act Is Constitutional

The Naranjo Defendants argue that the complaint should be dismissed because the *qui tam* provision of the False Claims Act—which allows a private plaintiff (known as the relator) to file suit and, under certain circumstances, to litigate claims on behalf of the government under the statute—violates Article II's Appointments and Take Care Clauses. *See* Dkt. 90, at 19. In support of this argument, the Naranjo Defendants cite Judge Duncan's concurring opinion in *United States ex rel. Montcrief v. Peripheral Vascular Associates, P.A.*, 133 F.4th 395 (5th Cir. 2025), and an out-of-circuit district court case from Florida, *see United States ex rel. Zafirov v. Fla. Medical Assoc. LLC*, No. 19-cv-1236 (M.D. Fla. Sept. 30, 2024).

The Fifth Circuit, sitting *en banc*, has already upheld the False Claims Act's *qui tam* provision against the same constitutional challenge raised by the Naranjo Defendants. *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en banc). As relevant to the Appointments Clause, the Court held that "relators are not officers of the United States" and that the False Claims Act's "*qui tam* provisions do not violate the Appointments Clause." *Id.* at 757, 758. As relevant to the Take Care Clause, the Court held that the fact "[t]hat a private citizen may pursue *qui tam* litigation under the [False Claims Act], whether the government chooses to intervene or does not choose, does not interfere with the President's constitutionally assigned

functions under Article II's Take Care Clause" and that "the *qui tam* portions … do not violate the constitutional doctrine of separation of powers by impinging upon the Executive's constitutional duty to take care that the laws are faithfully executed under Article II of the Constitution." *Id.* at 753, 757.

As Judge Duncan noted in his recent *Montcrief* concurrence, *Riley* remains the binding law of this circuit. *See* 133 F.4th at 410 ("I write separately to point out the constitutional flaws in the [False Claims Act's] *qui tam* device, *which our precedent prevents us from addressing*.") (emphasis added). When binding precedent such as *Riley* exists, it is not this Court's job to "read tea leaves" to try to predict if the Fifth Circuit or Supreme Court might at some later date re-examine or overrule the precedent in question. *See Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 447 (5th Cir. 2020). *Riley* is dispositive here, and the Court need go no further to reject the Naranjo Defendants' constitutional arguments.

Dated: August 20, 2025

Respectfully submitted,

JUSTIN R. SIMMONS
United States Attorney

By: *<u>/s/ Thomas A. Parnham Jr.</u>*
THOMAS A. PARNHAM JR.
Assistant United States Attorney
Texas State Bar No. 24146529
903 San Jacinto Blvd, Suite 334
Austin, Texas 78701
(512) 916-5858 (tel)
(512) 916-5854 (fax)
thomas.parnham@usdoj.gov

***Attorneys for the United States of America***

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2025, I electronically filed this document using the Court's CM/ECF system, which will send a notification to all counsel of record.

*/s/ Thomas A. Parnham Jr.*
THOMAS A. PARNHAM JR.
Assistant United States Attorney