**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* JANA GARZA<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWEST KEY PROGRAMS, INC.,<br>*et. al.,*<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:25-cv-00305-ADA-SH |

**NARANJO DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Diego Naranjo; Divine Family Care, PLLC; Trinity Health Services, PLLC; and Diego Naranjo d/b/a UC Health Consultants (collectively, "Naranjo Defendants") hereby file this Reply in Support of Motion to Dismiss the First Amended Complaint ("Complaint") with Prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**ARGUMENT**

Relator's Response highlights the Complaint's numerous deficiencies. First, Relator concedes that she has not alleged in Counts 1 and 3 that any of the Naranjo Defendants violated the Anti-Kickback Statute ("AKS"). Relator argues instead that Mr. Naranjo "caused the submission" of claims "involving" kickbacks but fails to allege that Mr. Naranjo acted "knowingly" as required to establish a False Claims Act ("FCA") violation. Second, Relator summarily claims that the Naranjo Defendants engaged in a "conflict of interest," but she has not alleged a personal or professional relationship that could create a conflict of interest to support Count 2. Third, Relator fails to allege facts to support Count 3's conspiracy claim. Like Counts 1 and 2, Count 3 falls well-short of Rule 9(b)'s requirements. And finally, Relator's Response demonstrates that she has not alleged a negative employment action or the requisite relationship

between Relator and any Naranjo Defendant for a retaliation claim under 31 U.S.C. § 3730(h). The Court should accordingly dismiss all claims against Naranjo Defendants.

**A. Count 1 should be dismissed because Relator failed to allege that Mr. Naranjo knew about any alleged AKS violation.**

Relator explicitly concedes in her Response that she "has not alleged that [Naranjo Defendants] solicited or paid illegal kickbacks from anyone." ECF 103 at 7. Relator further concedes that she has not alleged that Diego Naranjo (the only Naranjo Defendant named in Count 1) acted knowingly and willfully as required to violate the AKS. ECF 103 at 11.

Ignoring the *FCA's* requirement that a defendant must act "knowingly" to violate the FCA, Relator summarily claims that she has sufficiently alleged that Mr. Naranjo, because of his role at Southwest Key ("SWK"), "caused SWK to submit false claims to the government." ECF 103 at 8. But to support an FCA claim against Mr. Naranjo based on an AKS violation, Relator must allege that Mr. Naranjo "*knowingly* present[ed], or cause[d] to be presented" the submission of a claim "*resulting from*" an AKS violation. *See* 31 U.S.C. § 3729(a)(1)(A) (emphasis added); 42 U.S.C. § 1320a-7b(g) (emphasis added).[1] Relator has not alleged that Mr. Naranjo acted knowingly or that any claim "resulting from" an alleged AKS violation was submitted.

Count 1 alleges that Mr. Naranjo, along with others, presented or caused to be presented false claims "involving kickbacks" between (1) Eder Hernandez ("Eder") and Dr. A; and (2) Eder and Relator.[2] ECF 24 at ¶¶ 204–08. First, Relator has utterly failed to allege that Mr. Naranjo had

---

[1] Relator cites *Peterson v. Weinberger*, 508 F.2d 45 (5th Cir. 1975), (ECF 103 at 8), but even *Peterson*, a 50-year old case, noted that "*guilty knowledge*" of the fraud is required "to show a violation of the False Claims Act." *Peterson*, 508 F.2d at 53.

[2] Relator spends much of her Response to *Naranjo Defendants'* Motion to Dismiss attacking *Mr. Hernandez*. *See, e.g.*, ECF 103 at 12–15 (arguing that Relator met the AKS' pleading requirements by discussing Mr. Hernandez). Relator's attempt to impute the allegations against Mr. Hernandez to Mr. Naranjo to meet its scienter, causation, and Rule 9(b) pleading requirements should not be countenanced.

any knowledge whatsoever of an alleged kickback arrangement between Eder and Dr. A. *See* ECF 103 at 7, 11. Second, Relator fails to allege that: (1) Mr. Naranjo had any knowledge that Eder's alleged proposal to Relator was a kickback solicitation; or (2) any claim was submitted "resulting from" the alleged solicitation. *See* ECF 24 at ⁋⁋ 117–119.

Relator's Response attempts to supplement the Complaint by arguing that "she also alleged that Defendant Diego Naranjo (Diego) was aware of Eder's scheme—indeed she informed Diego herself, *see* [ECF 24] at ⁋⁋ 117-119[.]" But the Complaint nowhere alleges that Mr. Naranjo knew about any alleged kickback scheme between Eder and Dr. A. And the Complaint nowhere alleges that Relator told Mr. Naranjo that Eder had solicited a kickback. Instead, Relator alleges in her Complaint that she asked Mr. Naranjo the following question:

> Must I be associate (sic) with Eder for this contract? I feel overwhelmed with a contract I received from his attorney for 45% profit of gross collections from work I will be doing with Southwest Keys. I don't want to be associated with him Diego. I am a professional and I can handle this work on my own.

ECF 24 at ⁋ 117. Nowhere does Relator allege that she told Mr. Naranjo that Eder *solicited a kickback* or that she provided information to Mr. Naranjo that could reasonably lead him to believe that Eder solicited a kickback. Instead, Relator referenced a contract from Eder's *attorney* and asked Mr. Naranjo if she had to sign it. *See id.* at ⁋⁋ 113, 117. Based on Relator's own allegations, Mr. Naranjo was never informed that Relator considered Eder's alleged proposal a kickback solicitation, and Mr. Naranjo had no reason to believe that a contract from Eder's *attorney* was an illegal kickback request. Thus, Relator failed to allege that Mr. Naranjo acted "knowingly."

Further, Relator fails to allege that any claim was submitted that "resulted from" Eder's alleged proposal to Relator. To allege an FCA violation based on an alleged AKS violation, Relator must allege that Mr. Naranjo submitted or caused to be submitted claims "resulting from" the alleged AKS violation. *See* 42 U.S.C. § 1320a-7b(g). Relator failed to allege this key element.

Relator alleges in her Complaint that on August 13, 2018, SWK awarded her medical provider contracts. ECF 24 at ⁋ 104. It was only after she was awarded these contracts that she informed Mr. Naranjo that Eder wanted her to contract with him. *Id.* at ⁋ 119. And Relator admits in her Complanit that Mr. Naranjo told Relator that "she did not need to sign the agreement or work with Eder, and that Eder had only provided her name as a potential provider in Houston." *Id.* at ⁋ 119. She also alleges that she rejected Eder's alleged proposal. *See id.* at ⁋ 124. Thus, any claims submitted were independent of Eder's alleged proposal, and Relator has failed to allege the submission of any claim "resulting from" an alleged AKS violation. In short, Relator does not address the "resulting from" requirement in her Response, much less attempt to demonstrate how her Complaint alleges that "an illicit kickback was the but-for cause of a submitted claim." *United States v. Regeneron Pharm., Inc.*, 128 F.4th 324, 336 (1st Cir. 2025).

Similarly, the Complaint fails to plausibly allege that the Naranjo Defendants proximately caused the submission of a false claim. The FCA requires proof of a causal connection between the defendant's conduct and the government's payment of false claims. *United States ex rel. Aldridge v. Corp. Mgmt., Inc.*, 78 F.4th 727, 741 (5th Cir. 2023) (requiring "more than mere passive acquiescence in the presentation of the claim and some sort of affirmative act that causes or assists the presentation of a false claim"). Count 1 should accordingly be dismissed.[3]

[3] It is Relator's burden to prove that the ORR constitutes a "federal health care program." Rather than meeting that burden, Relator attempts to distinguish Naranjo Defendants' authorities, then simply claims, without authority, that because some medical services were provided through the ORR, the ORR must qualify as a "federal health care program." ECF 103 at 2. The Court should find that Relator has failed sufficiently allege that the ORR program constitutes a "federal health care program." *See United States v. Ruan*, 966 F.3d 1101, 1144–45 (11th Cir. 2020).

**B. Relator's Complaint does not allege any facts to support her conclusory claim that the Naranjo Defendants had a conflict of interest.**

The Complaint fails to allege any facts that could support Relator's conclusory statement in Counts 2 and 3 that the Naranjo Defendants violated the conflict-of-interest provisions of the ORR Cooperative Agreements. In her Response, Relator confirms that her conflict-of-interest allegations fit into two categories: (1) alleged conduct while Mr. Naranjo worked for SWK; and (2) alleged conduct after Mr. Naranjo resigned from SWK. ECF 103 at 15–20. Relator's own alleged timeline undermines any possibility of a conflict of interest.

Before turning to Relator's actual allegations, though, the Court should disregard Relator's improper and conclusory claims and consider the facts that were actually alleged in Relator's Complaint. *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (holding that conclusory allegations are "not entitled to the assumption of truth"), *with* ECF 103 at 15–20 (using inflammatory and conclusory terms like "cronies," "master plan," "sham," "flagrant self dealing" and "tainted"). Based on the facts alleged, there is no conflict-of-interest violation.

*Category 1 – During Employment at SWK*: Relator argues that Mr. Naranjo violated the Conflict of Interests provision in the Cooperative Agreements by "attempting to award Casa Sunzal to Dr. Rauf" while Mr. Naranjo worked for SWK. ECF 103 at 16 n.6; *see* ECF 24 at ¶ 130. But Relator fails to allege any "professional or personal relationship" between Mr. Naranjo and Dr. Rauf. And she fails to allege that Mr. Naranjo "exploit[ed his] position to further [his] personal, religious, political, financial, or business interests." *Cf.* ECF 24 at ⁋ 61. The Complaint is devoid of any alleged fact that Mr. Naranjo or SWK had a conflict of interest with anyone who received a contract while Mr. Naranjo worked at SWK.

Relator also alleges several facts that further undermine her conclusory allegation that Mr. Naranjo had a conflict of interest when SWK awarded Dr. Rauf a contract: (1) in early 2019, Mr.

Naranjo informed Relator she was receiving at least three contracts from SWK; (2) in April 2019, SWK transitioned all Houston contracts, including Casa Sunzal, to Relator; and (3) in "April or May" 2019, Mr. Naranjo resigned from SWK. ECF 24 at ¶¶ 129, 139, and 148. Relator complains that while she received three contracts, three other contracts went to another provider, Dr. Rauf. Yet she does not allege how that benefited Mr. Naranjo in any way. At most, Relator claims that Dr. Rauf and Mr. Naranjo officed in the same building in *October 2019*—several months *after* Mr. Naranjo left SWK. *Id.* at ¶¶ 129, 148, and 157. Thus, the Complaint fails to allege any facts at all that could give rise to a conflict of interest while Mr. Naranjo was employed by SWK.

*Category 2 – Post-Employment at SWK*: As for the post-SWK-employment allegations, Relator again fails to allege any "professional or personal relationship" between Mr. Naranjo and anyone at SWK. And she again fails to allege that Mr. Naranjo or anyone at SWK "exploit[ed] their position to further their personal, religious, political, financial, or business interests." *Cf.* ECF 24 at ¶ 61. Rather, Relator claims in her Response that the Naranjo Defendants violated the Cooperative Agreement's Conflict of Interest provision "when SWK, through Figeroa, awarded Trinity Health Services the Casa Padre medical provider contract and later the Arizona shelters to Divine Family Care[.]" ECF 103 at 16. But Relator's conclusory assertions of a conflict of interest are not supported by a single alleged fact establishing a relationship between anyone at SWK and the Naranjo Defendants.

Relator further argues in her Response that the Complaint alleges that SWK instituted a "sham bidding process" to take shelters away from her and give them to Naranjo Defendants. ECF 103 at 16. But the Complaint fails to allege a single fact that any Naranjo Defendant had anything to do with the SWK bidding process or that anyone at SWK benefited from awarding the contracts to the Naranjo Defendants.

And, once again, Relator omits the critical timeline of events alleged in the Complaint: Mr. Naranjo left SWK in "April or May" 2019; Relator signed renewal contracts with SWK in 2020 and 2021; SWK's procurement specialist instituted a new bidding process in October 2021; and in mid-2022, Relator was awarded two contracts and instructed to work with Trinity Health Services to transition three contracts. ECF 24 at ¶¶ 148, 171, 177–78, and 186.

The Complaint—stripped of conclusory statements and inflammatory monikers—does not contain a single alleged fact that a conflict of interest existed between the Naranjo Defendants and SWK. Relator's allegations boil down to this: a conflict of interest exists because after Mr. Naranjo resigned from his position at SWK, the Naranjo Defendants later conducted business with SWK. This simply is not a "professional or personal relationship" or the exploitation prohibited by the alleged conflict-of-interest provisions. *Cf.* ECF 24 at ¶ 61. Thus, the conflict-of-interest allegations fall well short of Rule 9(b)'s requirements and Count 2 should be dismissed.

Apparently aware of the utter lack of specificity in her Complaint, Relator resorts to claiming that Naranjo Defendants are holding her to an improper burden under Rule 9(b). ECF 103 at 13 n.4. To be sure, Relator is correct that *Grubbs* acknowledged that 9(b) should not serve as a "strait jacket" in FCA cases. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009). But *Grubbs* did not eviscerate Rule 9(b)'s requirements. Rather, *Grubbs* expressly stated that Rule 9(b) should be applied "with 'bite' and 'without apology.'" *Id.* at 185. The same can be said for *Mira Safety*, the case Relator accuses Naranjo Defendants of "whistling past." *Mira Safety LLC v. BTG Int'l, Inc.*, No. A-24-CV-01363-ADA, 2025 WL 1576829, at *2 (W.D. Tex. Mar. 14, 2025) ("In the Fifth Circuit, a claim subject to 9(b) must state the 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"). Thus, notwithstanding Relator's attempt to avoid Rule 9's

requirements, the law is clear that failure to comply with those requirements warrants dismissal. *See United States ex rel. STF, LLC v. True Health Diagnostics, LLC*, No. 4:16-CV-547, 2025 WL 1550580, at *2 (E.D. Tex. May 30, 2025).

**C. Relator's Complaint fails to plausibly allege necessary elements of conspiracy.**

Like her Response to her substantive allegations (Counts 1 and 2), Relators' Response concerning her conspiracy claim (Count 3) does not address her Complaint's complete lack of specific factual details. Relator does not allege any facts to support that Naranjo Defendants were part of an unlawful agreement or that they undertook any action in support of that unlawful agreement. *But see U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008) (requiring an unlawful agreement). And Relator fails to allege that any Naranjo Defendant had knowledge of, or intent to engage in, any alleged AKS violation or conflict-of-interest violation. *See United States ex rel. Jamison v. Del-Jen, Inc.*, 747 F. App'x 216 (5th Cir. 2018).

Relator explicitly conceded that she has not alleged AKS violations "against the Naranjo Defendants." ECF 103 at 21. And as set forth *supra* in Section A, Relator has not alleged that the Naranjo Defendants had any knowledge of any alleged AKS violation.

Relator attempts to salvage Count 3 by claiming that she has alleged that the Naranjo Defendants "conspired to and did engage in conflicts of interest in the award of medical provider contracts." *See* ECF 103 at 21. But as demonstrated *supra* in Section B, Relator completely fails to allege any facts to support a conflict-of-interest claim, much less an agreement to engage in conflicts of interest. Instead, Relator again resorts to conclusory and inflammatory comments that the Court should disregard. *See Iqbal*, 556 U.S. at 664; ECF 103 at 21–22 ("cronies," "maintained his influence and control," "illicit master plan").

The Complaint fails to allege facts that could support Relator's conclusory claim that the Naranjo Defendants conspired to violate the FCA. Count 3 should accordingly be dismissed.

**D. Relator's Complaint cannot plausibly establish that Naranjo Defendants retaliated against her under 31 U.S.C. § 3730(h).**

Relator's Complaint and Response demonstrate that she failed to allege a retaliation claim under 31 U.S.C. § 3730(h). Relator alleges that Naranjo Defendants retaliated against her when they denied her contracts. ECF 24 at ¶ 228. Relator's Complaint and Response focus on two instances of "retaliation," neither of which is plausible.

First, Relator claims that Naranjo Defendants retaliated against her through the "sham bidding process" (ECF 24 at ¶ 189), but this claim is incurably deficient. To recover under § 3730(h), a relator must allege that the retaliatory action was "related to terms and conditions of employment, or the contract or agency relationship." *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 324 (5th Cir. 2016) (emphasis in original). The necessary relationship between Naranjo Defendants and Relator is absent. Mr. Naranjo left SWK in "April or May" of 2019. ECF 24 at ¶ 148. The alleged "sham bidding process" began on October 6, 2021—approximately two-and-a-half years *after* Mr. Naranjo was no longer employed by SWK. Fundamentally, and chronologically, Naranjo Defendants and Relator were not in the requisite relationship to establish liability under § 3730(h). *See Bias*, 816 F.3d at 324 ("Defendants, then, must be those by whom plaintiffs are employed, with whom they contract, or for whom they are agents.").

Second, Relator's Response argues that Mr. Naranjo retaliated against her when, in early 2019, he divided up the Houston area clinics. ECF 103 at 26 (citing ECF 24 at ¶ 129). Relator argues that Mr. Naranjo did so after Relator "reported the Hernandez family's illicit demands" to him. *Id*. Relator's Complaint fails, however, to demonstrate that Relator was "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment." 31 U.S.C. § 3730(h)(1).

"A retaliatory act must be materially adverse, which means it well might have dissuaded a reasonable worker from engaging in protected activity." *United States ex rel Johnson v. Raytheon Co.*, 93 F.4th 776, 790 (5th Cir. 2024) (cleaned up). Relator fails to allege a retaliatory act. When Mr. Naranjo "divide[d] the Houston region," Relator alleges that Naranjo took "Casa Sunzal from her and [gave] it to Dr. Abdur Rauf." ECF 24 at ¶ 129. She admits that she retained Casa Quetzal and Mr. Naranjo gave her Casa Mesa and Casa Reliant. *Id.* Casa Quetzal, Casa Mesa, Casa Reliant, and Casa Sunzal had clinic capacities of 236, 54, 200, and 222, respectively. *Id.* at ¶ 48. Thus, the Complaint demonstrates that Relator's shelter capacity *increased* from 458 to 490 after Mr. Naranjo divided the Houston region. Furthermore, Relator took over *all* of SWK's Houston shelters only months later. *Id.* at ¶ 143. The Complaint, taken as true, does not plausibly allege that Relator's "protected activity and the *negative employment action* are" related because it can hardly be said that Relator's *increase* in patient capacity constitutes a negative employment action. *See U.S. ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 609 (S.D. Tex. 2012). Likewise, Mr. Naranjo's decision to divide up the Houston clinics—which, practically speaking, benefited Relator—would not have dissuaded a reasonable worker from engaging in protected activity. *Raytheon*, 93 F.4th at 790. The Court should dismiss Count IV.[4]

## **CONCLUSION**

For the reasons stated above, and in Naranjo Defendants' Motion to Dismiss (ECF 90), the Court should grant Naranjo Defendants' Motion to Dismiss.

---

[4] Defendant maintains that permitting private relators to wield executive enforcement power contravenes Article II's vesting of such authority in presidentially appointed officers. *See Morrison v. Olson*, 487 U.S. 654 (1988); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995). Violations of the Appointments Clause, Take Care Clause, and Article III standing requirements collectively demonstrate that qui tam provisions exceed constitutional boundaries by improperly delegating governmental power to private parties without adequate constitutional safeguards. Naranjo Defendant preserve this argument for potential further review.

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova
State Bar No. 24128031
lcordova@jw.com
Michael J. Murtha
State Bar No. 24116801
mmurtha@jw.com

1401 McKinney St, Suite 1900
Houston, Texas 77010
(713) 752-4449
(713) 752-4221 (Facsimile)

***Attorneys for Diego Naranjo,***
***Divine Family Care, PLLC,***
***Trinity Health Services, PLLC, and***
***Diego Naranjo dba UC Health Consultants***

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2025, a true and correct copy of the foregoing was served electronically on all persons via the Court's CM/ECF system.

*/s/ Laura M. Kidd Cordova*
Laura M. Kidd Cordova