**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**<br>**Ex rel. JANA GARZA**<br>**Plaintiff,**<br><br>**V.**<br><br>**SOUTHWEST KEY PROGRAMS, INC., et. al.,**<br>**Defendants** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **No. 1:25-CV-00305-ADA-SH** |

**DEFENDANTS EDER FRANCISCO HERNANDEZ, ALYSSA HERNANDEZ, MIGDAL EDER, LLC, AND VALLEY MED URGENT CARE, PLLC'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW, Defendants, Eder Francisco Hernandez ("Eder"), Alyssa Hernandez, Migdal Eder, LLC, and Valley Med Urgent Care, PLLC (collectively "Hernandez Defendants"), in the above-numbered cause, and file this, their Reply in Support of Their Motion to Dismiss, and respectfully show the Court as follows:

## I. PRELIMINARY STATEMENT

Relator concedes that her fraud allegations are not predicated on any reimbursement claims she personally submitted for the healthcare services she provided. She identifies only one instance of a supposed kickback: Dr. "A" (Dr. Diaz) allegedly paid Eder Hernandez approximately $30,000. Beyond that, she alleges no other provider actually paid Hernandez or completed any kickback arrangement. Indeed, she acknowledges that her own refusal to participate in Hernandez's proposed "administrative fee" scheme resulted in no false claims being submitted.

Nevertheless, Relator leaps to the sweeping conclusion that, merely by "engaging in" the alleged kickback scheme, the Hernandez Defendants must have caused SWK and others to submit

false claims to ORR. Yet she acknowledges she cannot provide dates, claim numbers, amounts, or patient information to support her theory. She attempts to excuse this lack of particularity by asserting that the "essential details" of the alleged kickbacks are "within Defendants' possession," and thus she need not plead them. Rule 9(b) requires more than conjecture and cannot be sidestepped by shifting the pleading burden to the defendants.

Moreover, Relator's attempt to premise FCA liability on purported violations of Southwest Key Programs' ("SWK's") internal conflict-of-interest rules fares no better. The Hernandez Defendants—who were not parties to SWK's grant agreements—cannot be liable for breaching a conflict-of-interest clause to which they were never bound. In any event, such a generalized "conflict of interest" condition is far too remote and generic to be deemed material to the government's decision to pay funds.

Relator's conspiracy claim under 31 U.S.C. § 3729(a)(1)(C) must be dismissed. Conspiracy under the FCA requires a specific agreement to get a false claim paid, plus an overt act in furtherance. Relator's opposition merely parrots the FAC's buzzwords about a "master plan" and parallel schemes, without identifying any actual meeting of the minds between specific defendants.

Finally, Relator's retaliation claim under 31 U.S.C. § 3730(h) cannot survive against the Hernandez Defendants. By its terms, §3730(h) allows retaliation claims only against a plaintiff's employer (or equivalent). Relator never worked for the Hernandez Defendants, and her attempt to cast Eder as a "de facto employer" finds no support in Fifth Circuit law. The FAC does not allege that the Hernandez Defendants had any authority to hire, fire, or control Relator's work. The only adverse action she cites—losing certain shelter assignments—was allegedly decided by SWK (specifically, co-Defendant Diego Naranjo), not by Eder or Alyssa. In sum, Relator's opposition confirms that her claims rely on sweeping, secondhand accusations but lack the specific factual

allegations needed to satisfy Rule 12(b)(6) and Rule 9(b). Accordingly, the Hernandez Defendants respectfully urge the Court to dismiss the First Amended Complaint ("FAC") with prejudice.

## II. Adoption by Reference

Defendants hereby join and adopt by reference all arguments and authorities set forth in co-defendants' respective Replies in Support of the Motions to Dismiss (Docs. 105 and 106) as the same may be applicable to these Defendants.

## III. Count I – FCA Claim (AKS Theory)

Count I alleges that all Defendants violated 31 U.S.C. § 3729(a)(1)(A) by presenting false claims tainted by an Anti-Kickback Statute (AKS) violation. This theory centers on a supposed kickback scheme involving (1) Dr. "A" (identified as Dr. Diaz), and (2) an attempted kickback solicitation to Relator herself. In fact, Relator admits that her "fraud allegations are not based on her own claims for reimbursement for the healthcare services she provided." The FAC is devoid of particularized facts to support this claim, and Relator's own allegations confirm that Count I is based on speculation and second-hand information rather than the concrete details Rule 9(b) requires. Indeed, the Complaint fails to attribute specific wrongdoing to any individual Hernandez Defendant. It does not allege that Migdal Eder, LLC or Valley Med Urgent Care, PLLC (the entity defendants) submitted any claims or received any improper payments, or what role they even played. Likewise, it does not specify what Eder Hernandez or Alyssa Hernandez actually did to cause a false claim.

In her opposition, Relator admits that her allegations regarding "Dr. A" (Dr. Diaz) "only involve Eder, Valley Med Urgent Care, Figueroa, Naranjo, and SWK" – implicitly acknowledging that Alyssa Hernandez and Migdal Eder, LLC had no involvement in that episode. She further concedes that no false claims were submitted as a result of her own refusal to participate in the

scheme. By failing to distinguish between each defendant's conduct, Relator has not met Rule 9(b)'s particularity requirement.

**A. Lack of Reliable Factual Basis**

The centerpiece of Relator's kickback allegations is a conversation she allegedly had with Eder Hernandez. Relator claims that Eder told her he helped Dr. A obtain a medical provider contract at a shelter and that Dr. A was not honoring his contract. *Doc. 24 at* ¶ 93. Yet she does not allege that Eder admitted any wrongdoing or provided details of an illicit arrangement. Relator did not witness Dr. A paying any kickbacks; she is simply repeating what Eder allegedly said. The FAC provides no supporting details beyond Eder's remarks. She offers no specifics about timing, amount, method of payment, which patients or claims were involved, or the terms of any kickback arrangement. Rule 9(b) requires more than such a bare, second-hand allegation. In short, Relator's hearsay allegation about Dr. A's kickbacks is an uncorroborated anecdote lacking any indicia of reliability.

**B. No Actual Alleged Kickback (Attempt Only)**

Relator's own pleading admits that no kickback payment ever changed hands with respect to her attempted arrangement (and likewise, an alleged offer to another doctor, "Dr. B," was declined with no payment made). In short, neither Relator nor Dr. B ever paid or received any kickback. A mere solicitation—without any payment and without any resulting false claim—cannot support FCA liability. *See U.S. ex rel. Parikh v. Citizens Medical Center*, 977 F. Supp. 2d 654, 663 (S.D. Tex. 2013) (FCA plaintiff must establish not only an underlying Anti-Kickback Statute violation, but that claims tainted by such a violation were in fact submitted for payment). While the AKS criminalizes solicitations, the FCA is concerned only with false claims submitted to the government. If no kickback was paid and no claim was tainted by one, there is no fraud

committed against the government. Relator herself acknowledges that she continued to treat patients and submit claims "long after severing contact with the Hernandez Defendants," and that those claims were entirely legitimate. She identifies no other provider who submitted a false claim because of an unconsummated kickback offer. Thus, even if Eder's alleged solicitation was improper, it was not, it did not result in any false claim.

**C. No Quid Pro Quo Agreement**

Relator's own allegations fail to show any quid pro quo. Eder recommended her for the position and only later sought an "administrative fee." There was no advance agreement that she pay him. he alleged sequence – referral first, payment request second – does not indicate a corrupt exchange of value for referrals. See *United States v. Medoc Health Servs. LLC*, 470 F. Supp. 3d 638, 662 (N.D. Tex. 2020) (AKS is violated by arrangements where payment is intended to induce referrals, not by seeking payment after referrals are made). Relator's cited WhatsApp messages (in which Alyssa Hernandez complained that Relator did not want to "share" profits) are too vague to support any inference of an agreement. They do not reflect any promise or deal struck beforehand. The FAC pleads no meeting of the minds or specific agreement to pay for referrals. Without such facts, Relator has not alleged the core of an AKS violation, and Count I collapses.

**D. No Causal Link to a False Claim**

Relator has not plausibly alleged that the Hernandez Defendants *caused* the submission of any false claim. To be liable under the FCA, a defendant must either submitting it directly or induced someone else to submit it. Relator does not claim that the Hernandez Defendants themselves submitted any claims to ORR, nor does she allege that these Defendants had authority over SWK's (or any provider's) billing processes. In fact, she admits that she continued to submit claims for reimbursement to ORR for her services "long after severing contact with the Hernandez

Defendants," and there is no allegation that anything about those claims was false or influenced by the Hernandez Defendants. Relator cannot have it both ways: her own claims were legitimate and unaffected by the alleged kickback scheme. She speculates that other providers may have submitted tainted claims, but provides zero factual detail about any such claim.

As the Fifth Circuit has made clear, describing a fraudulent scheme is not enough; the complaint must connect the dots to actual false claims and the defendant's role in getting those claims paid. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (relator must plead "particular details of a scheme" paired with "reliable indicia" leading to a strong inference that claims were actually submitted). Here, the FAC underscores that Relator herself was the one submitting claims for her services, entirely apart from the Hernandez Defendants, and that SWK management told her she did not have to involve Eder in her work. These facts sever any causal chain between the Hernandez Defendants and any claims for payment.

Indeed, in *Parikh*, the court dismissed an FCA kickback claim where the relators failed to show the alleged scheme led to any false claims, emphasizing that the FCA is not a vehicle to enforce the AKS in a vacuum. *U.S. ex rel. Parikh v. Citizens Medical Center*, 977 F.Supp.2d 654 (S.D. Tex. – Victoria, 2013). The same principle applies here. At bottom, Relator has not alleged that the government paid any claim that it otherwise would not have paid *but for* the Hernandez Defendants' conduct. Accordingly, Count I must be dismissed as to the Hernandez Defendants.

Moreover, the FAC indicates that the power to award SWK's medical provider contracts—and thus to cause claims to be submitted—resided with SWK managers (e.g., Naranjo and Figueroa), not with Eder Hernandez. The Hernandez Defendants' lack of any authority to hire or fire providers, or to bill the government, reinforces why Count I fails and why lumping them with

SWK's decision-makers is improper. For all these reasons, Count I should be dismissed in its entirety as to the Hernandez Defendants.

## IV. COUNT II – FCA CLAIM (CONFLICT-OF-INTEREST THEORY)

In Count II, Relator attempts to allege that Defendants violated §3729(a)(1)(A) by presenting claims tainted by violations of conflict-of-interest provisions in SWK's federal funding agreements. This theory fails against the Hernandez Defendants for multiple reasons.

The FAC does not identify any specific false statement or certification made by any of the Hernandez Defendants to the government regarding conflicts of interest. The conflict-of-interest provisions at issue are terms in SWK's cooperative agreements with the Office of Refugee Resettlement (ORR) – essentially requirements that SWK, as the grantee, avoid self-dealing and disclose any conflicts. Relator does not allege that Eder Hernandez or Valley Med Urgent Care, PLLC ever signed or submitted anything to ORR regarding conflicts of interest. (Relator omits Alyssa Hernandez and Migdal Eder, LLC from this claim entirely.) Crucially, there is no allegation that any of the Hernandez Defendants were involved in any of the funding applications or certifications that Relator challenges. None of them worked for SWK in an executive capacity; the only SWK officials named in the FAC's conflict allegations are Naranjo and Figueroa.

In short, Relator has not pled any affirmative misrepresentation or wrongful act by the Hernandez Defendants directed at the government. The only "false" statements even hinted at in Count II are SWK's own certifications to ORR – statements made by SWK personnel who are not the Hernandez Defendants. An FCA claim cannot be maintained against a particular defendant absent some allegation that *that defendant* participated in defrauding the government. For all these reasons, Count II should be dismissed as to the Hernandez Defendants for failure to state a claim and failure to plead fraud with particularity.

## V. Count III – Conspiracy

Count III alleges a conspiracy to violate the FCA, in violation of 31 U.S.C. § 3729(a)(1)(C). This claim is derivative of the substantive FCA claims discussed above. Because Relator has not adequately pled an underlying FCA violation by the Hernandez Defendants, the conspiracy claim necessarily fails as well – one cannot conspire to commit a fraud that has not been properly alleged in the first place.

Even setting that aside, Relator has not met Rule 9(b) in pleading the alleged conspiracy. A civil conspiracy under the FCA requires, at minimum, that two or more persons agreed to commit a violation of the FCA and did so to defraud the government. Thus, particular facts must be pled showing an agreement or meeting of the minds between the alleged co-conspirators, and at least one overt act in furtherance of the conspiracy. Here, Relator again relies on inference and broad conclusions. She refers vaguely to a "master plan" involving various defendants, but she never identifies any specific agreement between the Hernandez Defendants and anyone else. The Complaint is silent on *when* this agreement was made, *who* agreed to what, or *what* the terms were. Relator's conspiracy allegations are as vague as her substantive claims – effectively, she says "everyone was in on it" without specifics.

Moreover, Relator lumps all Defendants together in Count III and declares they conspired, without differentiation. This "kitchen sink" approach – alleging that numerous individuals and entities were all part of a single grand agreement – demands careful scrutiny under Rule 9(b). Relator needed to allege facts showing that *each* of the Hernandez Defendants knowingly joined the agreement to defraud the government. Yet the FAC never even mentions Alyssa Hernandez in the context of any conspiracy (apart from naming her among "Defendants"). The same goes for Migdal Eder, LLC and Valley Med Urgent Care, PLLC – there are no facts suggesting that those

entities entered into any agreement with the others. The absence of such allegations makes clear that the conspiracy claim is not grounded in concrete facts but is instead a speculative extension of the same deficient scheme narrative. Tellingly, Relator's opposition offers no independent defense of her conspiracy count; she appears to concede it stands or falls with her substantive FCA claims. Since those claims fail, Count III should be dismissed as well.

## VI. COUNT IV – RETALIATION

In Count IV, Relator Jana Garza asserts a claim under the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h). She alleges she was retaliated against for refusing to participate in the kickback scheme and for reporting it internally.

Section 3730(h) protects an "employee, contractor, or agent" from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" for lawful acts in furtherance of an FCA case or efforts to stop an FCA violation. By its plain terms, this provision contemplates an employer-employee (or equivalent) relationship. Typically, the only proper defendant under §3730(h) is the plaintiff's employer (or the entity with which the plaintiff had a contract or agency relationship). Here, Relator was engaged as an independent contractor providing medical services at SWK shelters. The FAC does not allege that she was ever an employee of any of the Hernandez Defendants. To the contrary, her contractual relationship was with SWK. The Hernandez Defendants did not hire her and had no authority to fire her.

Relator argues that §3730(h) is not limited to direct employers, noting that "contractors" and "agents" are also protected, and she points to out-of-circuit authority suggesting a "de facto employer" theory. But Eder Hernandez was not Relator's employer; nor was he a contracting entity that engaged her services, or a principal for whom she acted as agent. He was, according to the

Complaint, merely a recruiter for SWK. The FCA's retaliation provision was not intended to impose liability on every individual co-worker who may have played a role in a whistleblower's difficulties; it targets the employer entity that controlled the plaintiff's employment. See *Yesudian ex rel. U.S. v. Howard Univ.*, 270 F.3d 969, 972 (D.C. Cir. 2001) (Section 3730(h) "creates a cause of action only against the plaintiff's employer").

Relator's out-of-circuit authorities (such as a Florida district court case and a treatise excerpt) are not binding and involved far different scenarios, often with individuals who were the alter ego of a corporate employer. The "de facto employer" theory has seen very limited acceptance, and typically applies only where a person so dominates the employer entity that he can be deemed the actual employer. Eder Hernandez was not the employer or alter ego of SWK, and certainly was not Relator's employer. Relator does not allege that Eder owned SWK or had unilateral power to hire or fire providers on SWK's behalf. There is no basis to extend §3730(h) liability to the Hernandez Defendants on these facts. Accepting Relator's theory would effectively make any individual who participated in an employer's retaliatory acts personally liable under §3730(h) – a result unsupported by the statute's text or purpose.

For these reasons, Count IV should be dismissed as to the Hernandez Defendants. At a minimum, the Court should clarify that the Hernandez Defendants are not proper defendants on this claim.

## VII. Conclusion & Prayer

Relator's First Amended Complaint fails to provide the detail and factual support necessary to sustain her claims against the Hernandez Defendants. Instead, the pleading improperly groups these Defendants with others and relies on speculative, conclusory allegations.

For all the foregoing reasons, the Hernandez Defendants respectfully request that the Court dismiss all claims against them pursuant to Rule 12(b)(6) and Rule 9(b). Relator has already had an opportunity to amend but still has not provided the necessary factual details to state a viable claim. Dismissal should therefore be with prejudice, as further amendment would be futile given Relator's inability to plead non-speculative facts specific to these Defendants. The Hernandez Defendants also pray for such further relief as the Court deems just and proper.

Respectfully submitted,

MARTINEZ/TIJERINA, PLLC
1201 E. Van Buren
Brownsville, Texas 78520
Ph: (956) 550-4868
Fax (956) 621-0135

Tomas F. Tijerina
Federal ID No. 1062166
State Bar No. 24070746
ttijerina@mbmtlawfirm.com
Benigno (Trey) Martinez
Federal ID No. 23945
State Bar No. 00797011
trey@mbmtlawfirm.com

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served on opposing counsel of record, via CM/ECF on this 24th day of September 2025.

Tomas Tijerina