**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* JANA GARZA<br>*Plaintiff,*<br><br>v.<br><br>SOUTHWEST KEY PROGRAMS, INC.,<br>*et. al.,*<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-00305-ADA-SH |

**DEFENDANT SOUTHWEST KEY PROGRAMS INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES FOR VIOLATIONS OF THE FALSE CLAIMS ACT**

Defendant Southwest Key Programs, Inc. ("SWK") hereby submits its Answer to Plaintiff's First Amended Complaint for Money Damages and Civil Penalties of the False Claims Act, and SWK's defenses and affirmative defenses with respect to the same. First, unless specifically admitted, SWK denies each and every allegation in the Amended Complaint.[1] Second, to the extent that Plaintiff has included any headings, those headings are reproduced for convenience of reading only and are not admissions.

Admissions herein about SWK operations are based upon facts and circumstances as of February 8, 2024, the date on which Plaintiff filed of her First Amended Compliant. Statements admitted as true as of February 8, 2024, may not be presently true. For example, the registered agent identified in Paragraph 9 of the First Amended Complaint is no longer SWK's present

[1] The Amended Complaint makes collective allegations against numerous Defendants. Where appropriate, SWK's Answer refers to the answers of other Defendants and asserts that the information in those answers speaks for itself. Such references are not admissions by SWK that any such answer by a different Defendant is factually accurate.

registered agent. Further, many of the shelter facilities in operation as of February 8, 2024 are no longer in operation.

## I. INTRODUCTION

1. Paragraph 1 comprises general theory of the case and thus requires no response. Out of an abundance of caution, SWK denies all allegations in Paragraph 1.

2. Paragraph 2 comprises legal conclusions and general theory of the case and thus requires no response. Out of an abundance of caution, SWK denies all allegations in Paragraph 2. SWK specifically denies any allegation that federal health care dollars were used to pay kickbacks.

## II. JURISDICTION AND VENUE

3. SWK admits transacting business in the Western District of Texas, where this case has been transferred. SWK denies that any violations of 31 U.S.C § 3729 have occurred.

4. To the extent that "original source" is not a legal conclusion, SWK denies that Relator served as an original source, or, more generally, whether Relator had any independent knowledge of publicly disclosed allegations or transactions. SWK also lacks sufficient knowledge to admit or deny the contents of Plaintiff's *Voluntary Pre-Filing Disclosure Statement* submitted to the government.

5. SWK admits the allegations in Paragraph 5.

## III. PARTIES

### A. Plaintiff-Relator Jana Garza

6. SWK lacks sufficient knowledge to admit or deny Relator's residency status in the State of Texas.

7. SWK lacks sufficient knowledge to admit or deny Relator's educational background.

8. SWK lacks sufficient knowledge to admit or deny Relator's work experience.

**B. <u>Defendant Southwest Key Programs, Inc.</u>**

9. SWK generally admits to the allegations in Paragraph 9 of the Amended Complaint, with the caveat that, as stated above, SWK is analyzing all claims as of the date of the filing of the Amended Complaint (February 8, 2024).

**C. <u>The Naranjo Defendants and Related Participants and Entities</u>**

10. SWK admits that Defendant Diego Naranjo ("Naranjo") was the former Assistant Director of Medical Services for SWK until his departure in Spring 2019. SWK asserts that Naranjo's Answer speaks for itself for all other allegations in Paragraph 10.

11. SWK lacks sufficient knowledge to admit or deny Defendant Naranjo's formation of different entities (and overall employment) relating to matters that post-date his employment at SWK.

12. Defendant Trinity Health Services PLLC's ("Trinity Health Services") incorporation documents and registered agent are a matter of public record and speak for themselves. SWK lacks sufficient knowledge to admit or deny the location of Trinity Health Services' principal office.

13. Defendant Divine Family Care PLLC's ("Divine Family Care") incorporation documents and registered agent are a matter of public record and speak for themselves. SWK lacks sufficient knowledge to admit or deny the location of Divine Family Care's principal office.

14. SWK lacks sufficient knowledge to admit or deny the nature of UC Health Consultants, its relation to Defendant Naranjo, or any contract allegedly awarded by SWK to UC Health Consultants.

**D. <u>The Hernandez Defendants and Related Participants and Entities</u>**

15. SWK lacks sufficient knowledge to admit or deny Defendant Eder Francisco Hernandez's ("Eder") residency in the State of Texas nor his address because it is not public information. SWK

also lacks sufficient knowledge to admit or deny Defendant Eder's formation of a company, Midgal Eder LLC. SWK asserts that Defendant Eder's Answer speaks for itself for all other allegations in Paragraph 15.

16. Defendant Migdal Eder LLC's incorporation documents and registered agent are a matter of public record and speak for themselves.

17. The registered agent and mailing address for companies Tight Line Consulting LLC and Dos Naranjos Construction Corp. are a matter of public record and speak for themselves. SWK lacks sufficient knowledge to admit or deny Defendant Naranjo's connections, if any, to the companies.

18. SWK admits that Defendant Alyssa Hernandez's ("Alyssa") was hired as an employee of SWK in 2019. SWK lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 18, and therefore, out of an abundance of caution, denies the remaining allegations.

19. SWK lacks sufficient knowledge to admit or deny Annelise Hernandez's residency in the State of Texas or relation to defendants. For the remaining allegations in Paragraph 19, SWK asserts that Defendant Eder's Answer speaks for itself.

20. Defendant Eder's Answer speaks for itself relating to the allegations in Paragraph 20. SWK specifically denies any allegation that federal health care dollars were used to pay kickbacks.

### E. <u>Other Defendants and Related Participants and Entities</u>

21. SWK denies that Fanny Figueroa ("Figueroa") was a full-time resident of Texas as of the date of the Amended Complaint, February 2024. SWK admits that Figueroa was the former Director of Medical Services of SWK and that she left the employ of SWK in December 2019. SWK denies the specific date of departure alleged in Paragraph 21.

22. SWK denies that Geraldo Rivera ("Rivera") was a full-time resident of Texas as of the date of the Amended Complaint, February 2024. SWK admits that Rivera was SWK's Vice President of Immigrant Services during 2018, and that in 2020 Rivera became SWK's Senior Vice President of Immigrant Children Services. SWK admits that Rivera left the employ of SWK in 2023.

23. Defendant Valley Med Urgent Care PLLC's ("Valley Med") incorporation documents and registered agent are a matter of public record and speak for themselves. For the remaining allegations in Paragraph 23, SWK asserts that Defendant Eder's Answer speaks for itself.

24. SWK admits that that Daniel De La Cruz ("De La Cruz") worked for SWK and that he was a Lead Medical Service Coordinator, but has insufficient knowledge to admit or deny whether Mr. De La Cruz was a Lead Medical Service Coordinator specifically for Casa Padre. SWK denies that De La Cruz had the job title Medical Service Coordinator. SWK admits that De La Cruz became a Regional Director of Nursing for SWK in 2019. SWK admits that De La Cruz became SWK's Director of Medical Services in December 2019, but denies the specific date stated in Paragraph 24. SWK admits that De La Cruz departed SWK in March 2020. SWK has insufficient knowledge of the remaining allegations in Paragraph 24, including De La Cruz's residence, address and employment after his departure from SWK and therefore, out of an abundance of caution, denies the remaining allegations.

25. SWK admits that Defendant Naranjo departed SWK in spring 2019. SWK admits that Dr. Juan Garcia appears to be a supervising physician for Defendant Naranjo. SWK lacks sufficient knowledge to admit or deny the remaining allegations of Paragraph 25, which pertain to the relations of other parties. To the extent this Paragraph 25 references public records, such records speak for themselves.

## IV. RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY

26. Paragraph 26 contains legal conclusions that require no response. Out of an abundance of caution, SWK denies any allegations as they relate to the operations of SWK.

## V. STATUTORY, REGULATORY, AND CONTRACTUAL BACKGROUND

### A. Overview of Pertinent Federal Agencies

27. SWK admits the allegations in Paragraph 27.

#### 1. Department of Health and Human Services

28. Paragraph 28 contains general claims regarding the purpose of HHS that require no response.

29. Paragraph 29 contains general claims regarding the structure of HHS that require no response.

30. Paragraph 30 contains general claims regarding the HHS grant award process that require no response.

#### 2. Administration for Children and Families (ACF)

31. Paragraph 31 contains general claims regarding the purpose of ACF that require no response.

32. Paragraph 32 contains general claims regarding the ACF's grant awarding power and process that require no response.

#### 3. Office of Refugee Resettlement (ORR)

33. Paragraph 33 comprises legal and general conclusions interpreting the Homeland Security Act of 2002 that require no response.

34. Paragraph 34 comprises legal conclusions interpreting Section 462 of the Homeland Security Act of 2002 that require no response.

**4. Division of Unaccompanied Children's Operations (DUCO)**

35. Paragraph 35 contains general claims regarding the purpose of ORR that require no response.

36. Paragraph 36 contains general claims regarding the purpose of ORR and the delegated authority of the Division of Unaccompanied Children's Operations (DUCO) that require no response.

37. Paragraph 37 contains general claims regarding the objectives of DUCO that require no response.

**B. <u>Overview of Unaccompanied Children Program</u>**

**1. Role of ORR**

38. Paragraph 38 contains general claims regarding the process of how unaccompanied children are referred to ORR that require no response.

39. Paragraph 39 contains general claims regarding the process of how unaccompanied children are placed by ORR that require no response.

40. 40 contains general claims regarding the process of how unaccompanied children are placed by ORR that require no response.

41. SWK lacks sufficient knowledge to admit or deny the general claims in Paragraph 41 regarding the mechanics of ORR's placement of unaccompanied children.

**2. Influx Shelters**

42. SWK lacks sufficient knowledge to admit or deny the general claims in Paragraph 42 regarding the ORR procedures for periods described in the paragraph as influx periods or periods in which natural disasters may affect placements.

**3. Role of Care Provider (Shelter Provider)**

43. SWK admits to the claims in Paragraph 43, based on its knowledge and experience in working with ORR, except that SWK denies that facilities in Texas are always required to be State-licensed.

**C. <u>Overview of Cooperative Agreements</u>**

44. Paragraph 44 comprises legal conclusions interpreting 31 U.S.C. § 6301 *et seq*. that require no response.

45. SWK lacks sufficient knowledge to admit or deny the general claims in Paragraph 45 regarding decisions made by HHS Operating Divisions. To the extent that Paragraph 45 defines "substantial involvement," it comprises legal conclusions interpreting 31 U.S.C. § 6301 *et seq*. that require no response.

46. SWK lacks sufficient knowledge to admit or deny the general claims in Paragraph 46 regarding ORR selection practices for legal instruments and grantees.

**D. <u>The Applicable Contracts, Grants, and Cooperative Agreements</u>**

**1. The SWK Shelters**

47. SWK admits the allegations of Paragraph 47 as of the date when the First Amended Complaint was filed.

48. SWK admits that as of the date when the First Amended Complaint was filed, it operated the shelters at the locations in Paragraph 48, but denies that all capacities are complete and accurate.

49. SWK admits that as of the date when the First Amended Complaint was filed, it operated each shelter listed in Paragraph 49, except Casa Blanca. As of the date of the First Amended Complaint, SWK denies operating Casa Blanca.

50. SWK admits that as of the date when the First Amended Complaint was filed, it operated the shelters at the locations in Paragraph 50, but denies that all capacities are complete and accurate.

51. SWK admits that as of the date when the First Amended Complaint was filed, it operated the shelters at the locations provided in Paragraph 51, but denies that all capacities are complete and accurate.

52. SWK admits that as of the date when the First Amended Complaint was filed, it operated the shelters at the locations and capacities provided in Paragraph 52.

### 2. The SWK Cooperative Agreements

53. SWK admits it operated shelters listed in Paragraphs 48 through 52 under various cooperative agreements with ORR. SWK admits that, as of the date when the First Amended Complaint was filed, the list of cooperative agreements provided in Paragraph 53 is an accurate list of cooperative agreements SWK had been awarded by ORR since 2014. SWK denies the accuracy of the information listed in the table regarding each agreement.

54. SWK admits that cooperative agreement 90ZU0256 provided funding for Casa Sunzal and that the period of performance of that cooperative agreement was approximately four years. SWK denies the accuracy of the specific end date stated with respect to 90ZU0256.

## E. Material Contractual Requirements

55. SWK admits that it receives federal funding through cooperative agreements. The remainder of claims in Paragraph 55 comprises legal conclusions pertaining to compliance obligations that require no response.

### 1. HHS Grant Policy Statement

56. Paragraph 56 contains legal conclusions that require no response. To the extent that Paragraph 56 describes the HHS Grants Policy Statement (GPS), the HHS GPS speaks for itself.

57. Paragraph 57 contains legal conclusions interpreting the interplay between statutes, regulations, and the HHS GPS that require no response.

### 2. ORR Cooperative Agreements

58. SWK admits that ORR enters into cooperative agreements with care providers. To the extent that Paragraph 58 describes the HHS GPS and the interplay between the GPS and cooperative agreement terms, the documents speak for themselves and the allegation contains legal conclusions that require no response.

59. SWK lacks sufficient knowledge to admit or deny the claims provided in Paragraph 59 as it contains claims regarding the contents of an unspecified cooperative agreement. Performance requirement language in any cooperative agreement will speak for itself.

60. SWK lacks sufficient knowledge to admit or deny the claims provided in Paragraph 60 as it references an unspecified cooperative agreement. Performance requirement language in any cooperative agreement will speak for itself.

61. SWK lacks sufficient knowledge to admit or deny the claims provided in Paragraph 61 as it references an unspecified cooperative agreement. Conflict of interest language in any cooperative agreement will speak for itself.

62. SWK denies the allegations in Paragraph 62.

### 3. Claims for Payment for Medical Services provided to UC

63. SWK lacks sufficient knowledge of Relator Garza's claim submission process or her knowledge of such processes and therefore denies those allegations.

64. SWK admits the claims in Paragraph 64.

65. SWK admits the claims in Paragraph 65.

66. SWK admits the claims in Paragraph 66, except that SWK denies that a TAR is required prior to an initial medical exam.

67. SWK admits the claims in Paragraph 67.

68. SWK admits the claims in Paragraph 68.

69. SWK admits the claims in Paragraph 69 but notes that Point Comfort Underwriters now has a new name.

## VI. DEFENDANT'S KICKBACKS AND FALSE CLAIMS SCHEME

### A. <u>Garza begins working for Dr. Mirafzaki and provides medical services to unaccompanied children for an SWK shelter</u>

70. SWK lacks sufficient knowledge to admit or deny Relator Garza's employment background.

71. SWK lacks sufficient knowledge to admit or deny Relator Garza's employment background or details about her alleged prior employers.

72. SWK lacks sufficient knowledge to admit or deny Relator Garza's prior conversations with Dr. Mirafzali.

73. SWK admits that it sometimes transported children from one or more of its shelters to other provider locations in small groups for care, but SWK does not have sufficient knowledge to admit or deny Dr. Mirafzali's personal experiences.

74. SWK lacks sufficient knowledge to admit or deny Relator Garza's employment background.

### B. Eder Hernandez Begins Trying to Recruit Garza to Work with Him

75. SWK lacks sufficient knowledge to admit or deny Relator Garza's place of residence in 2015 or her employment background.

76. SWK lacks sufficient knowledge to admit or deny Relator Garza's relationship and history with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for all other allegations in Paragraph 76.

77. SWK lacks sufficient knowledge to admit or deny the communications between Relator Garza and Defendant Eder. SWK further lacks sufficient knowledge to admit or deny what Relator Garza may have "come to believe" at any point. SWK denies that Defendant Eder had authority to decide who was able to provide medical services at SWK shelters.

78. SWK lacks sufficient knowledge to admit or deny Relator Garza's relationship, communications and interactions with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for all other allegations in Paragraph 78.

79. SWK lacks sufficient knowledge to admit or deny Relator Garza's employment in 2016.

80. SWK lacks sufficient knowledge to admit or deny the communications between Relator Garza and Defendant Eder. SWK lacks sufficient knowledge to admit or deny whether Dr. Rauf owned Valley Med Urgent Care or other clinics in Houston. SWK asserts that Eder's Answer speaks for itself for all other allegations in Paragraph 80.

81. SWK lacks sufficient knowledge to admit or deny Relator Garza's interactions with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 81.

82. SWK lacks sufficient knowledge to admit or deny Relator Garza's employment in 2017 and 2018.

83. SWK lacks sufficient knowledge to admit or deny when Nutrix Medical Worx PLLC was formed. Any public records reflecting this information will speak for themselves.

### C. Eder Offers Garza the role as SWK Medical Provider at Casa Sunzal and Garza meets Figueroa and Naranjo

84. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder or any meetings between those parties. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 84.

85. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder or any meetings between those parties. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 85.

86. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 86.

87. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder or any meetings between those parties. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 87.

88. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 88.

89. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. To the extent Paragraph 89 makes claims regarding the Texas Vaccines for Children (TVFC) Program, the paragraph contains general claims regarding the TVFC that require no response. .

90. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder . To the extent that Paragraph 90 makes claims regarding the CLIA waiver process, the paragraph contains general claims regarding CLIA waivers that require no response.

91. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. The term "insider information" is a legal and general conclusion and that no response is required. SWK denies any allegations that Defendant Eder had authority to speak to SWK's plans for opening new shelters. The Houston media reports cited in footnote 7 speak for themselves.

92. SWK admits that Figueroa had the title of Director of Medical Services for SWK and Defendant Naranjo had the title of Assistant Director of Medical Services for SWK. SWK denies that Figueora and Naranjo had the ability to select and award medical provider contracts. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder and asserts that Eder's Answer and Naranjo's Answer speak for themselves for all other allegations in Paragraph 92. .

### D. <u>Eder shares "Master Plan" to take over SWK's shelters in Houston, Phoenix, and Brownsville</u>

93. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK denies any allegations that Defendant Eder "wielded power" at SWK. SWK also denies the capacity figure for Casa Padre. SWK asserts that Eder's Answer speaks for itself for all other allegations in Paragraph 93.

94. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK denies any and all allegations in Paragraph 94 that pertain directly to SWK. SWK denies that Defendant Eder had any authority to act on SWK's behalf. SWK denies that Figueroa or Naranjo had authority to select medical provider contracts, and denies that Figueroa

or Naranjo manipulated SWK contracts for their personal financial gain. SWK is unable to reply to allegations regarding unnamed "other key SWK staff" and "other SWK staff," but denies generally that any such unnamed persons had authority to select medical provider contractors or manipulated medical provider contracts for personal gain.

95. Paragraph 95 comprises legal and general conclusions about the terms of SWK's Cooperative Agreement with ORR, and therefore SWK denies the allegations in Paragraph 95. SWK specifically denies any knowledge of a purported "master plan," as alleged in Paragraph 95.

96. Paragraph 96 asserts a vague supposition regrading Defendant Eder and unspecified co-conspirators deciding not to "pursue civil enforcement" of contracts with an unspecified "Dr. A." As such, it requires no response.

97. SWK admits that Trinity Health Services eventually became the medical provider at Casa Padre, but lacks sufficient knowledge to admit or deny whether that constituted "replacing Dr. A" in the manner alleged in this Paragraph 97. SWK lacks sufficient knowledge to admit or deny Relator Garza's discussions with Defendant Eder regarding payments to Dr. Diaz.

**E. <u>SWK Solicits Kickbacks from Dr. B</u>**

98. Defendant denies all allegations in Paragraph 98.

99. Defendant lacks sufficient knowledge to admit or deny the occupation of Dr. B.

100. SWK admits that in 2014 or 2015, it operated the two shelters alleged in Paragraph 100 at the capacities listed. SWK has lacks sufficient knowledge to admit or deny the remaining unspecific claims in Paragraph 100, and therefore, out of an abundance of caution, denies the remaining claims in Paragraph 100.

101. Paragraph 101 contains vague and unclear allegations relating to purported discussions between unknown individuals and an unnamed Dr. B in 2014 or 2015. SWK lacks sufficient

knowledge to admit or deny the claims. SWK denies that it ever authorized any purported "representatives" to solicit kickbacks for treating UCs.

### F. Figueroa asks Garza to become the Medical Provider at Casa Sunzal, then Casa Quentzal

102. SWK admits that Relator Garza was awarded the contract for Casa Sunzal. SWK lacks sufficient knowledge to admit or deny Relator Graza's communications with Defendant Eder. SWK denies that Defendant Eder was authorized to communicate on behalf of SWK and denies that Defendant Eder would be a person that would convey to a provider that they had been selected.

103. SWK admits that Jason Urtis served as a previous medical provider at Casa Quetzal. SWK denies the alleged contents of the alleged conversation between Figueroa and Relator Garza.

104. SWK generally admits that conference calls occurred among SWK staff, including staff members such as those listed in Paragraph 104, for purposes of informing medical providers of their selection to provide services at a shelter. SWK admits to the titles of the SWK staff alleged to have participated in this call, but SWK has insufficient knowledge to admit or deny whether the precise call alleged occurred on the date alleged or its alleged contents. SWK denies that Figueroa had authority to enter into a verbal agreement on behalf of SWK and denies that any conversation between Figueroa and Relator Garza included establishing a verbal agreement for Relator Garza to provide medical services.

105. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 105.

106. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder and the other individuals named in Paragraph 106. SWK lacks sufficient

knowledge to admit or deny what type of email the listed individuals use. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 106.

107. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder and with Annelise. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 107.

108. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with "the Hernandez family." SWK denies that Defendant Eder had any "insider information" regarding the opening of Casa Sunzal. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 108.

109. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with "the Hernandez family." SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 109.

### G. <u>Eder solicits a kickback from Garza for the SWK Medical Provider contracts at Case Quetzal and Casa Sunzal</u>

110. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 110.

111. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 111. .

112. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder or alleged attorneys Luis de la Garza and Alejandro Mora. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 112.

113. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 113.

114. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 114.

115. SWK states that Paragraph 115 contains general opinions and conclusions, and therefore requires no response. Moreover, SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 111..

116. SWK admits that sending an e-mail about vaccines preparedness and readiness was the type of email within Figueroa's duties and that she did generally send emails to medical providers on such topics. SWK lacks sufficient knowledge to admit or deny the alleged contents of the specific email or emails referenced in this Paragraph 116 or Relator Garza's impressions of such email or emails.

### H. Garza rejects Eder's kickback agreement and informs Figueroa and Naranjo about it

117. SWK lacks sufficient knowledge to admit or deny Relator Garza's personal experiences or communications with Defendant Naranjo. SWK asserts that Naranjo's Answer speaks for itself for the allegations in Paragraph 117.

118. SWK lacks sufficient knowledge to admit or deny Relator Garza's various communications with Defendant Eder and with Defendant Naranjo. SWK asserts that Eder's Answer and Naranjo's Answer speaks for themselves relating to the allegations in Paragraph 118.

119. SWK denies that a call with this subject matter occurred between Relator Garza, Figueroa, and Defendant Naranjo while Figueroa and Defendant Naranjo were employed by the SWK, and therefore, SWK denies the allegations in Paragraph 119 in full. SWK asserts that Naranjo's Answer speaks for itself for the allegations in Paragraph 119 directly relating to Naranjo.

120. SWK admits that Figueroa's duties for SWK included communicating with providers about medical services at shelters and that she communicated with Relator Garza about Casa Quetzal. SWK lacks sufficient knowledge to admit or deny the exact dates or contents of conversations.

121. SWK admits, in general, that providers must wait until proper authorities approve necessary certifications for providers to be permitted to order vaccines for shelters. SWK denies that Figueroa had authority to enter into medical provider contracts or that verbal agreements were used for such contracts. For the remaining allegations in Paragraph 121, SWK lacks sufficient knowledge to admit or deny the details of purported conversations between Relator Garza and Figueroa.

122. SWK admits, in general, that Figueroa would refer Mr. De La Cruz to providers so that he could offer training to providers. SWK further admits that Mr. De La Cruz was a Lead Medical Coordinator for SWK in 2018, but has insufficient knowledge to admit or deny whether Mr. De La Cruz was a Lead Medical Coordinator specifically for Casa Padre. SWK denies that Mr. De La Cruz had the title Medical Service Coordinator.. SWK lacks sufficient knowledge to admit or deny the details of purported conversations between Relator Garza and Mr. De La Cruz. SWK denies that Defendant Eder and/or Defendant Naranjo were "in charge" of selecting medical providers for SWK.

123. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Eder. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 123.

124. SWK lacks sufficient knowledge to admit or deny internal conversations in a alleged 2018 WhatsApp group chat between Relator Garza and "the Hernandez family" and Luis Ibarra. SWK asserts that Eder's Answer speaks for itself for the allegations in Paragraph 123.

**I. <u>Garza begins providing medical services at Casa Quetzal and learns that she was only meant to serve as a temporary provider</u>**

125. SWK admits that Relator Garza commenced providing medical services at Casa Quetzal in November 2018, but lacks sufficient knowledge to admit or deny the specific date she commenced such services. SWK admits that Ms. Chavez's title as of 2019 was Assistant Program Director of Casa Quetzal. SWK lacks sufficient knowledge to admit or deny the contents of alleged conversations between Relator Garza and Ms. Chavez or the contents of alleged conversations between Ms. Chavez and Figueroa.

126. SWK denies the allegations in Paragraph 126.

127. SWK lacks sufficient knowledge to admit or deny the alleged conversations that occurred between Relator Garza and Defendant Naranjo and Mr. De La Cruz. SWK asserts that Naranjo's Answer speaks for itself for the allegations in Paragraph 127.

**J. <u>Casa Sunzal fails to open as scheduled on October 28, 2018</u>**

128. The Houston news media articles referenced in Paragraph 128 speaks for themselves relating to the claims in Paragraph 128. SWK admits that Casa Sunzal opened in March 2019, but denies the exact date listed in Paragraph 128. SWK admits that the age range at the shelter was limited to 16 to 17 year-olds, but denies that "SWK decided" that age range at the shelter.

### K. Naranjo creates a plan to divide the Houston region to steer shelters to business associates

129. SWK lacks sufficient knowledge to admit or deny Relator Garza's conversations with Defendant Naranjo and asserts that Naranjo's Answer speaks for itself for the allegations in Paragraph 129. SWK denies that Naranjo had authority to "divide the Houston region" or to decide which providers would keep or recieve certain shelter contracts.

130. SWK states that Paragraph 130 comprises legal conclusions as to whether the alleged conflict of interest provisions in an unspecified cooperative agreement were violated, and therefore, requires no response.

131. SWK admits that Dr. Rauf appears to have been delayed in commencing services at Casa Sunzal and possibly other shelters as of early April of 2019 and that vaccine approvals were a cause of delay. SWK otherwise denies the claims in Paragraph 131 in their entirety.

### L. Casa Sunzal opens over five months late in March, 2019; Dr. Rauf is not ready to see children.

132. SWK admits that Casa Sunzal opened in March 2019, but denies the exact date listed in Paragraph 132. SWK admits that Dr. Rauf appears to have been delayed in commencing services at Casa Sunzal and that Relator Garza saw minors from Casa Sunzal for a period of time. SWK lacks knowledge to admit or deny any further assertions in this Paragraph 132 as to Dr. Rauf's purported "readiness." SWK admits that it was SWK practice to have medical providers cover services at other shelters when needed.

133. SWK admits to Ms. Ortiz's title as Medical Service Coordinator. Defendant lacks sufficient knowledge to admit or deny the specific workload allegedly experienced by Relator Garza in Paragraph 133 or whether a list of about 40 children was sent to Relator Garza by Ms. Ortiz.

134. SWK lacks sufficient knowledge to admit or deny Relator Garza's communications with Defendant Naranjo. SWK asserts that Naranjo's Answer speaks for itself for the allegations in Paragraph 134. SWK denies that Defendant Naranjo was authorized to "offer" shelters to Relator Garza.

135. SWK lacks sufficient knowledge to admit or deny Relator Garza's actions, if any, to "prepare." SWK generally admits that during this time, there were transitions at shelter sites that required different providers to offer services, especially relating to vaccines. Beyond the foregoing general admission, SWK lacks sufficient knowledge to admit or deny the specific claims in Paragraph 135.

136. SWK generally admits that, in 2019, there were transitions at shelter sites that required different providers to offer services, especially relating to vaccines. Beyond the foregoing general admission, SWK lacks sufficient knowledge to admit or deny the specific claims in Paragraph 136. To the extent that Paragraph 136 contains general conclusions as to Dr. Rauf's alleged "problems," it requires no response.

137. SWK admits that Dr. Garcia was one of Defendant Eder's former employers. SWK lacks sufficient information to admit or deny the allegation that Dr. Garcia was considered as a provider of services for which Relator alleges Dr. Rauf had experienced "issues." SWK admits that Dr. Garcia appears to have subsequently become a medical supervisor for Defendant Naranjo. SWK lacks sufficient knowledge to admit or deny Dr. Garcia's relationship with Defendant Eder. SWK asserts that Naranjo's Answer and Eder's Answer speak for themselves for the allegations in Paragraph 137.

### M. **<u>SWK begrudgingly allocates medical services at all Houston shelters by default to Garza</u>**

138. SWK admits, as a general practice, that it would sometimes transport children from one shelter to another for services as needed. SWK admits that Relator Garza provided services to children from Casa Sunzal, Casa Conroe, and possibly other shelters due at least in part to delays in Dr. Rauf's commencing services. SWK denies that there was overcrowding at Casa Quetzal or that the CDC threatened to revoke SWK's vaccine accounts, as alleged in Paragraph 138. SWK lacks sufficient knowledge to admit or deny the remaining claims in Paragraph 138.

139. SWK admits that Relator Garza provided medical services at Casa Reliant in 2019, but lacks sufficient knowledge to admit or deny the specific date on which such services commenced. SWK lacks sufficient knowledge to admit or deny whether Dr. Rauf began seeing patients at Casa Montezuma on the same day as Relator Garza alleges she began to provide medical services at Casa Reliant. SWK denies the claims in Paragraph 139 relating to Figueroa and denies that she had the authority to "transition" the entire Houston region to Realtor Garza. .

140. SWK admits that Casa Sunzal's opening was delayed and asserts that the Houston news media articles referenced in Paragraph 128 speak for themselves relating to the delays. SWK lacks sufficient knowledge to admit or deny the alleged communications between Figueroa and Relator Garza. The allegations in Paragraph 140 regarding a "mess that Dr. Rauf created" are general conclusions that require no response.

141. SWK admits that Relator Garza provided medical services at Casa Montezuma in 2019. SWK lacks sufficient knowledge to admit or deny whether Relator Garza went to Casa Montezuma on the date alleged in the Paragraph 141.

142. SWK denies that Relator Garza worked under a "verbal handshake agreement." SWK lacks sufficient knowledge to admit or deny the contents of the alleged email communication

between Relator Garza and Figueroa. SWK admits that contracts for multiple Houston shelters were signed on June 6, 2019 by Relator Garza.

143. SWK admits that on June 6, 2019, Relator Garza signed medical service contracts for Casa Quetzal, Casa Sunzal, Casa Conroe, Casa Mesa, and Casa Reliant, with periods of performance of June 6, 2019 to June 5, 2020.

144. Paragraph 144 contains Relator Garza's general impressions and conclusions and therefore requires no response.

### N. **Naranjo becomes a licensed nurse practitioner and immediately takes over the nation's largest shelter, Casa Padre, in May 2019**

145. SWK asserts that Defendant Naranjo's Answer speaks for itself for the allegations in Paragraph 145.

146. SWK asserts that Defendant Naranjo's Answer speaks for itself for the allegations in Paragraph 146.

147. SWK denies that Rivera had the exact title of SWK's Vice President of Immigrant Children's Services in May 2019 but admits that he was a vice president at that time. SWK denies that Rivera was ever a direct supervisor of Figueroa at SWK and denies that Figueroa tried to hide any marriage to Rivera.[2]

148. SWK admits that Defendant Naranjo left his employment at SWK in April 2019. SWK admits that the medical service contract for Casa Padre was awarded to Trinity Health Services in July 2019. SWK lacks sufficient knowledge to admit or deny whether Figueroa sent a termination letter to the unnamed Dr. A.

---

[2] Mr. Rivera and Ms. Figueroa were divorced during the relevant time period, but later remarried.

149. SWK states that Paragraph 149 contains general claims and conclusions about Casa Padre and an alleged medical service contract for Casa Padre that require no response. SWK admits that Casa Padre was SWK's largest shelter at the time of the Amended Complaint and admits that Casa Padre was capable of housing over 1,400 children for periods of time with certain governmental approvals. SWK lacks sufficient knowledge to admit or deny whether Casa Padre was the largest ORR shelter in the United States.

150. SWK denies the allegations in Paragraph 150 relating to the reasons as to which Trinity obtained the Casa Padre contract. SWK further denies that Figueroa oversaw all medical provider contracts and/or that she was married to Rivera in 2019. SWK also denies that it had any knowledge of Defendant Naranjo's purported dealings with Dr. Garcia. To the extent the Complaint may reference public medical licensing information, such public records speak for themselves.

151. SWK admits that Mr. Zuniga was an Associate Vice President. SWK lacks sufficient knowledge to admit or deny Defendant Eder's relations with Dr. Garcia or statements alleged to have been made by Mr. Zuniga to Defendant Naranjo in 2019. SWK asserts that Naranjo's Answer and Eder's Answer speak for themselves for all other allegations in Paragraph 151. .

152. SWK admits that Alyssa Hernandez was hired as an employee of SWK in 2019 and that her title at that time was Regional Medical Lead RN. SWK lacks sufficient knowledge to admit or deny the remainder of the allegations in Paragraph 152.

**O. <u>Figueroa and De La Cruz move forward with plans to take over Arizona shelters</u>**

153. SWK admits that Figueroa and Relator Garza went to dinner in Houston. SWK lacks sufficient knowledge to admit or deny the alleged contents of conversation between Figueroa and Relator Garza during the dinner.

154. SWK admits that Figueroa left her employment with SWK on the date listed in the Amendment Complaint. SWK admits that Figueroa formed SaluTeam and listed it on her LinkedIn account but lacks sufficient information to admit or deny the date of formation asserted in this Paragraph 154 or the address listed for SaluTeam. SWK admits that Figueroa and Rivera became owners of a property at the address stated in Paragraph 154 in December 2019.

155. SWK lacks sufficient knowledge to admit or deny the allegations in Paragraph 155.

156. Paragraph 156 contains general claims and opinions about Mr. De La Cruz's power that require no response. SWK denies that one shelter medical provider would be able to "take all the shelters" but has lacks sufficient knowledge to admit or deny any details of the conversation between Mr. De La Cruz and Relator Garza alleged in Paragraph 156.

### P. <u>Divine Family Care becomes SWK medical provider in Arizona</u>

157. The public records referenced in Paragraph 157 speak for themselves. The purported October 2019 Google Street view photo, if accurate, also speaks for itself. SWK lacks sufficient knowledge to admit or deny the allegations in Paragraph 157. SWK asserts that Defendant Eder's Answer and Defendant Naranjo's Answer speaks for themselves for the remaining allegations in Paragraph 157.

158. To the extent Paragraph 158 seems to reference public records, such records speak for themselves. SWK asserts that Naranjo's Answer and Eder's Answer speak for themselves for the allegations in Paragraph 157.

159. SWK admits that Divine Family Care provided medical services at Casa Fortaleza, but lacks sufficient knowledge to admit or deny when SWK awarded such contract to Divine Family Care. SWK lacks sufficient knowledge to admit or deny whether Divine Family Care held the medical service contract for Casa Amanecer. SWK lacks sufficient information to admit or deny

the contents of an alleged February 19, 2020 email from Mr. De La Cruz or whether Defendant Naranjo owns Divine Family Care.

160. SWK admits that Mr. Lozano was a Regional Director of Nursing for SWK at the beginning of 2020, but lacks sufficient knowledge to admit or deny whether such position was specific to South Texas. SWK lacks sufficient knowledge to admit or deny whether Relator Garza and Mr. Lozano had dinner or the alleged contents of their conversation. SWK denies that its bidding process for the Casa Padre and Arizona shelter medical provider contracts was a "sham" and denies that "contracting decisions were based on personal relationships and not on merit."

**Q. <u>The Coronavirus arrives in the United States and Texas</u>**

161. SWK admits that Mr. De La Cruz became the Director of Medical Services in December 2019. SWK further states that Paragraph 161 contains general conclusions pertaining to De La Cruz's job responsibilities that require no response.

162. SWK admits that the COVID-19 pandemic commenced in the first quarter of 2020. The Texas Tribune article listed in the allegation speaks for itself.

163. SWK denies that Alyssa Hernandez was promoted to a position of "Medical Lead Nurse for the South Texas Region" on or about February 17, 2020.

**R. <u>Naranjo and Figueroa obtain a COVID consulting contract with SWK</u>**

164. SWK admits that ORR sent updated instructions on handling intakes to minimize COVID-19 risks. SWK lacks sufficient information to admit or deny the specific contents of such instructions.

165. SWK admits that on March 19, 2020, Relator Garza sent an email to other SWK personnel that contains a document entitled "Admission processes" and within which Relator Garza asserts

she is the drafter of the document and that it is to "help minimize risk and identify potential carriers of COVID-19 . . ."

166. SWK lacks sufficient knowledge to admit or deny Relator Garza's alleged communications with Figueroa at a time after which Figueroa departed SWK's employ.

167. SWK lacks sufficient knowledge to admit or deny Relator Garza's alleged receipt of an email from UC Health Consultants or the contents of such email.

168. SWK lacks sufficient knowledge to admit or deny Relator Garza's alleged receipt of an email from UC Health Consultants or any metadata within an allegedly attached policy document.

169. SWK lacks sufficient knowledge to admit or deny whether UC Health Consultants is or is not incorporated in the State of Texas. SWK denies that any such company had the authority to act on behalf of SWK.

170. SWK admits that Relator Garza sent SWK staff at Houston shelters an email containing "new protocols for triaging and making health management decisions when faced with a COVID-infected or potentially infected minor" on March 27, 2020. The remainder of the allegations in Paragraph 170 are general conclusions and claims from Relator Garza for which no response is required.

**S. <u>Garza signs 2020 renewal contracts for all the Houston shelters</u>**

171. SWK admits that Relator Garza signed one-year renewal contracts for Casa Quetzal, Casa Sunzal, Casa Montezuma, Casa Mesa, and Casa Reliant in June or July 2020. SWK admits that in late 2020, Alyssa Hernandez's title became "Regional Director of Nursing."

172. SWK admits that it hired Tamisha Piper to serve as the National Director of Medical Services and moved the location at which this position was based to Houston, Texas, but denies that the start date listed for Ms. Piper in Paragraph 172 is accurate.

173. SWK admits that Figueora departed SWK approximately 14 months before February 2021. SWK lacks sufficient knowledge to admit or deny whether Figueroa trained Ms. Piper over Zoom.

174. SWK admits that Defendant Naranjo was permitted to use a SWK email account but lacks sufficient knowledge to admit or deny whether "no other medical provider" also used an SWK account. SWK lacks sufficient knowledge to admit or deny whether Defendant Naranjo was signing documents for UC Health Consultants at the time he was using a SWK email address. SWK asserts that Defendant Naranjo's Answer speaks for itself for the allegations in Paragraph 174.

175. SWK admits to retaining Lisdel Corderi Guerrero to serve as Lead Medical Coordinator at Casa Quetzal, but denies that his title was "interim" and denies the hiring timeframe implied in this Paragraph 175.

**T. <u>Naranjo becomes medical provider at SWK's Midland influx shelter</u>**

176. SWK admits that it received a federal contract to provide services to HHS in support of operations of a facility in Midland, Texas. SWK admits that it contracted with Divine Family Care for medical services at the Midland, Texas facility. The ORR document cited in the Amended Complaint regarding "influx facilities" speaks for itself. SWK lacks sufficient information to admit or deny the allegations regarding travel to Midland, Texas by Mr. Corderi Guerrero or any statements by him to others upon return from any such travel. SWK lacks sufficient information to admit or deny what Relator Garza alleges she observed in the records of a child allegedly transferred to Casa Sunzal. SWK denies that Rivera alone made personnel decisions regarding the Midland, Texas facility or that he said the quoted statement while allegedly removing an associate program director.

### U. Garza signs 2021 renewal contracts for the Houston region

177. SWK admits to the allegations in this Paragraph 177.

### V. SWK creates sham bidding process for the shelters and awards Naranjo the three largest Houston shelters

178. SWK generally admits that it changed its contracting process in late 2021 to early 2022. SWK admits that Gary Wilder had the title Procurement Specialist and sent an email on October 6, 2021 that advised SWK would be posting a solicitation for primary care physician services. SWK denies any implication in Paragraph 178 that such email was addressed only to Relator Garza. SWK denies that Relator Garza never went through a bidding process in previous years for shelter contracts; although the process was different than the new system. SWK further denies that Figueroa and/or Defendant Naranjo had authority to "single-handedly" award contracts or that contracts could be awarded via a verbal agreement. SWK lacks sufficient knowledge to admit or deny Garza's telephone conversations.

179. SWK admits that Relator Garza asked for, and was provided, a list of shelters. SWK admits that the list included Casa Quetzal, Casa Montezuma, Casa Sunzal, Casa Reliant, and Casa Mesa among others, including four other shelters in Central Texas, eight shelters in South Texas, eight shelters in Arizona, and three shelters in California.

180. SWK admits to the claims in Paragraph 180.

181. SWK admits to the claims in Paragraph 181.

182. SWK lacks sufficient knowledge to admit or deny Relator Garza's personal impressions and suspicions regarding her contracts. SWK denies Relator Garza's characterizations of her call with Rivera.

183. SWK admits Mr. Wilder sent an email on January 3 reminding interested providers of the January 5 deadline. SWK lacks sufficient information regarding the nature of the email addresses

listed on the communication to admit or deny whether Trinity Health Services or Divine Family Care were included on the email in the "cc" line. Relator Garza's impression that a purported omission was made "curiously" does not require a response.

184. SWK admits to the claims in Paragraph 184.

185. SWK admits that the solicitation stated SWK expected to complete evaluations by January 2022, admits that no announcement was made with respect to the primary care provider solicitation in January 2022, admits that Relator Garza inquired regarding status in February 2022, and admits that Mr. Wilder replied SWK was still evaluating proposals. SWK lacks sufficient information to admit or deny the May inquiry or any reply.

186. SWK lacks sufficient information to admit or deny the award letter and/or the termination letter purportedly sent by Wilder on June 15, 2022. SWK admits to the contents of the letters.

187. SWK admits to the contents of the termination letter provided to Relator Garza. SWK admits that Trinity Health Services was selected to provide services at Casa Quetzal, Casa Montezuma, and Casa Sunzal.

188. SWK denies that Chief Executive Officer Anselmo Villarreal decided to whom provider contracts under the referenced solicitation should be awarded. SWK lacks sufficient knowledge to admit or deny what Wilder purportedly stated verbally at a meeting.

189. SWK states that Paragraph 189 comprises Relator Garza's general conclusions regarding the procurement bidding process that require no response. SWK denies that the bidding process was a "sham."

### W. <u>SWK awards Naranjo the El Paso region shelters</u>

190. SWK lacks sufficient knowledge to admit or deny Relator Garza's purported conversation with Dr. Roncallo.

191. SWK lacks sufficient knowledge to admit or deny Relator Garza's purported conversation with Mr. Corderi Guerrero. SWK admits that Casa Trail House had a capacity of slightly over 500 beds.

### X. <u>SWK awards Naranjo and his companies the medical provider contract at other SWK shelters</u>

192. SWK admits that Casa Fortaleza and Casa Lighthouse were, at some point, awarded to Divine Family Care. SWK admits that Casa Padre, Casa Sunzal, Casa Quetzal, Costa Montezuma, Casa Oasis, and Casa Sueno were, at some point, awarded to Trinity Health Services. SWK lacks sufficient knowledge to admit or deny whether each shelter listed was awarded to Defendant Naranjo or an entity that is possibly owned by Defendant Naranjo. SWK lacks sufficient knowledge to admit or deny Relator Garza's "understanding" of the California medical provider contracts.

### Y. <u>Conclusion</u>

193. SWK denies the allegations in Paragraph 193. SWK asserts that Defendant Eder's Answer speaks for itself for the remaining allegations in Paragraph 193. .

194. SWK admits that Trinity Health Services and Divine Family Care were awarded certain medical provider contracts for its shelters, including for certain points in time, Casa Padre, Casa Fortaleza, Casa Lighthouse, Casa Sunzal, Casa Quetzal, Casa Montezuma, Casa Oasis and Casa Sueno. SWK admits it awarded Divine Family Care a medical service contract with respect to SWK's operations at the Midland facility. SWK denies allegations that there is any scheme or that its awards violate Conflict of Interest provisions of any federal agreements. The remaining allegations in Paragraph 194 comprise legal conclusions that require no response.

195. SWK admits that Garza is not a former SWK employee, but has insufficient knowledge to admit or deny her "close personal or familial" relationships with others. SWK denies any

allegations in Paragraph 195 that there has been attempt to restrict Relator Garza's contracts or that SWK has engaged in reprisal. The remaining allegations in Paragraph 195 comprise legal conclusions that require no response.

196. The allegations in Paragraph 196 comprise legal conclusions that require no response. SWK denies all allegations in Paragraph 196 relating to the solicitation of kickbacks or violation of Conflict of Interest provisions of any federal agreements.

197. The allegations in Paragraph 197 comprise legal conclusions that require no response.

## VII. THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729 *ET SEQ.* AND THE ANTI-KICKBACK STATUTE (AKS) 42 U.S.C. § 1320A-7B(B)

198. 31 U.S.C. § 3729(a)(1) speaks for itself and no response is required.

199. The Anti-Kickback Statute speaks for itself and no response is required.

200. Subsection (f) of the Anti-Kickback Statute speaks for itself and no response is required.

201. The allegations in Paragraph 201 comprise legal conclusions as to what constitutes a federal health care program regarding which no response is required.

202. The allegations in Paragraph 202 comprise legal conclusions as to the Anti-Kickback Statute and no response is required.

203. The allegations in Paragraph 203 comprise legal conclusions as to the interpretation of 42 U.S.C. § 1320a-7b(g) and no response is required. SWK specifically denies the existence of a "kickback scheme" and also denies it had any knowledge of the submission of false claims.

### COUNT 1 – PRESENTING FALSE CLAIMS IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(A)

204. SWK incorporates by reference all its admissions and denials above.

205. SWK admits to the Plaintiff and Defendants in this action. The allegations in Paragraph 205 comprise general conclusions about the nature of Relator Garza's claims that require no response.

206. SWK lacks sufficient knowledge to admit or deny the purported actions of Defendant Eder. SWK asserts that Eder's Answer speaks for itself relating to the allegations in Paragraph 206. SWK denies that anyone to "sought kickbacks" on its behalf.

207. SWK denies all allegations in Paragraph 207.

208. SWK denies that any relief stated in Paragraph 208 is applicable.

**COUNT 2 – PRESENTING FALSE CLAIMS IN VIOLATION OF 31 U.S.C. § 3729(a)(1)(A)**

209. SWK incorporates by reference all its admissions and denials above.

210. SWK admits to the Plaintiff and Defendants. The remaining allegations in Paragraph 210 comprise general conclusions about the nature of Relator Garza's claims that require no response.

211. SWK admits it received federal funds to operate shelters throughout Texas and in other states. SWK lacks sufficient knowledge to admit or deny that every cooperative agreement contains a Conflict of Interest clause. The Conflict of Interest clauses in the cooperative agreements speak for themselves.

212. SWK admits that Defendant Naranjo served SWK's Assistant Director of Medical Services, under Figueroa. The allegations in Paragraph 212 contain general conclusory language about whether Defendant Naranjo was considered a high-ranking executive that requires no response. SWK denies that Figueroa and/or Defendant Naranjo had authority to select the medical providers to operate SWK's shelters.

213. SWK lacks sufficient knowledge to admit or deny what companies Defendant Naranjo owns or has created. SWK asserts that Naranjo's Answer speaks for itself relating to the allegations in Paragraph 213. SWK admits that Naranjo had an SWK email account.

214. SWK admits that Defendant Naranjo received medical provider contracts to the extent admitted above. SWK denies that the award of those contracts was part of any "practice" or that any of the awards were intended to benefit Defendant Eder.

215. SWK admits that medical services provided to UC under the medical provider contracts are federally funded and the medical providers are reimbursed for their services by HHS/ORR.

216. The allegations in Paragraph 216 comprise legal conclusions that require no response. SWK denies that the contract awards violate any Conflict of Interest provision in any federal agreement, that any alleged violation of any such provision was undertaken "knowingly," and any grant applications were thereby rendered false under the False Claims Act. SWK denies the submission of any false claims.

217. The allegations in Paragraph 217 comprises legal conclusions requiring no response.

218. SWK denies that HHS incorporated the Stark Law into its any of SWK's cooperative agreements. The remaining allegations in Paragraph 218 comprise legal conclusions requiring no response.

219. The allegations in Paragraph 219 comprise legal conclusions that require no response. SWK denies any implication that the Government was "fraudulently induced to expend federal funds."

220. SWK denies that any relief included in Paragraph 220 is applicable.

**COUNT 3 – CONSPIRACY UNDER 31 U.S.C. § 3729(A)(1)(C)**

221. SWK incorporates by reference all its admissions and denials above.

222. SWK admits to the Plaintiff and Defendants. The remaining allegations of Paragraph 222 comprise general conclusions about the nature of Relator Garza's claims that require no response.

223. SWK denies all allegations in Paragraph 223.

**COUNT 4 – RETALLIATION IN VIOLATION OF 31 U.S.C. § 3730(h)**

224. SWK incorporates by reference all its admissions and denials above.

225. The allegations in Paragraph 225 comprise general conclusions about the nature of Relator Garza's claims that require no response.

226. SWK denies that Relator Garza reported a kickback or false claim in any manner as covered by 31 U.S.C. § 3730(h). The remaining allegations in Paragraph 226 comprises legal conclusions that require no response.

227. SWK denies the allegations in Paragraph 227.

228. The allegations in Paragraph 228 comprise legal conclusions that require no response.

229. Defendant denies the allegations in Paragraph 229 that Relator Garza is entitled to any relief.

## VIII. PRAYER FOR RELIEF

SWK denies that Relator Garza is entitled to judgement or any relief whatsoever on any of the counts identified in this paragraph.

## IX. DEMAND FOR JURY TRIAL

SWK admits that Relator Garza has made a demand for a jury trial.

## AFFIRMATIVE DEFENSES

1. Plaintiff's claims brought under the False Claims Act are barred by that statute's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A).

2. Relator is not an original source of the information underlying Relator's claims as that term is defined in the False Claims Act, 31 U.S.C. § 3730(e)(4)(B).

3. Plaintiff's claims under the False Claims Act are barred in whole or in part because Defendant's conduct was neither false or fraudulent nor material to the payment of a claim.

4. Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

5. Plaintiff's claims under the False Claims Act are barred against Defendant because Plaintiff's damages, if any, were caused by the acts or omissions of individuals or entities other than Defendant for whose conduct Defendant is not responsible.

6. Plaintiff's claims under the False Claims Act are barred in whole or in part because the United States government suffered no damages because of the conduct alleged against Southwest Key.

7. Plaintiff's claims under the False Claims Act are barred in whole or in part against Defendant because the underlying conduct about which Plaintiff asserts an Anti-Kickback Statute violation is not governed by the Anti-Kickback Statute and, even if applicable, is subject to the personal or management services safe harbor, 42 C.F.R. § 1001.952(d), or other regulatory or statutory safe harbors.

8. Plaintiff's claims are barred in whole or in part against Defendant because the government requested or required that Defendant perform the underlying conduct asserted.

9. Plaintiff's claims are barred, in whole or in part, by the existence of an express contract.

10. Plaintiff's claims are barred in whole or in part against Defendant because Defendant complied with the requirements of its federal grant under which Defendant submitted claims.

11. Plaintiff's claims under the False Claims Act are barred in whole or part because Defendant's conduct was not false or fraudulent, not material to the government's payment of a claim, not undertaken with requisite knowledge, or did not cause the submission of any false claim or false statement material to a false claim.

12. Plaintiff's claims under the False Claims Act are barred in whole or part because Defendant's conduct was not part of an agreement to conspire to defraud the government by getting a false or fraudulent claim paid.

13. Plaintiff's retaliation claims are barred against Defendant because Plaintiff did not engage in activity contemplated in 31 U.S.C § 3730(h).

14. The penalties and damages that Plaintiff seeks would be an unconstitutionally excessive fine under the Eighth Amendment's Excessive Fines Clause and Fourteenth Amendment to the United States Constitution because any award would be grossly disproportional to the gravity of Defendant's offense, if any. The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST., amend. VIII. To the extent False Claims Act liability is premised on violations of billing rules, such misconduct, if any, is "closer in gravity to something like a "reporting offense." The magnitude of the purported harm does not warrant a penalty that would be grossly disproportional to the gravity of Defendant's offense.

15. The Qui Tam provisions of the False Claims Act are unconstitutional and violate the Appointment and "Take Care" Clauses of the U.S. Constitution. The provisions purport to provide

private citizens with executive-like power to sue on behalf of the U.S., which conflicts with the President's constitutional duty to "take Care that the Laws be faithfully executed."

Dated: November 26, 2025

Respectfully submitted,

*/s/ Mindy B. Pava*

**FELDESMAN LLP**
Mindy B. Pava (*pro hac vice*)
Stephen M. Kuperberg (*pro hac vice*)
1129 20th Street NW, Suite 400
Washington, DC 20036
Telephone: (202) 466-8960
Fax: (202) 293-8103
Email: mpava@feldesman.com
skuperberg@feldesman.com

**VENABLE LLP**
Scott S. Sheffler (*pro hac vice*)
600 Massachusetts Avenue, NW
Washington, DC 20001
Phone: (202) 805-1994
Fax: (202) 344-8300
Email: SSSheffler@venable.com

**WOMBLE BOND DICKINSON LLP**
Michael E. Clark (Texas Bar No. 04293200)
717 Texas Avenue, Suite 2100
Houston, TX 77002
Telephone: (346) 998-7807
Email: Michael.clark@wbd-us.com

*Counsel for Defendant Southwest Key Programs, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2025, I electronically filed the foregoing document with the Clerk of the District Court using its CM/ECF system, which would then electronically notify all parties of record who are CM/ECF participants on this case.

*/s/ Mindy B. Pava*
Mindy B. Pava