## Maddy J. Phinney

**From:** Richard Condit <RCondit@findjustice.com>
**Sent:** Thursday, November 5, 2026 3:27 PM
**To:** Pava, Mindy B.
**Cc:** Steve Kuperberg; Tomas Tijerina; Cordova, Laura; Maddy J. Phinney; Cleveland Lawrence III; carlos; stephania; Dee Um; dianac; thad
**Subject:** Garza v. SWK et al.: Plaintiff's reply to Defendants' response concerning pending issues
**Attachments:** Relator Prioritized Deposition List and Statement of Need_final (TO SERVE).pdf

Mindy:

Thanks for your message. Below in the text of your message are our responses to the points you raised.

We are available by email or after 9:30 am ET tomorrow if you'd like to discuss these issues further.

Regards,

Richard

**From:** Pava, Mindy B. <MPava@feldesman.com>
**Sent:** Tuesday, November 3, 2026 1:42 PM
**To:** Richard Condit <RCondit@findjustice.com>; Steve Kuperberg <skuperberg@feldesman.com>; Tomas Tijerina <ttijerina@mbmtlawfirm.com>; Cordova, Laura <lcordova@jw.com>; Maddy J. Phinney <mphinney@feldesman.com>
**Cc:** Cleveland Lawrence III <CLawrence@findjustice.com>; Toni-Ann Ocloo <tocloo@findjustice.com>; Carlos Doroteo <carlos@milpalaw.com>; Stephani Ayers <stephania@whistleblower.org>; Dee Um <dum@findjustice.com>; Kristin Berg <kristinb@whistleblower.org>; Diana Christian <dianac@whistleblower.org>; thad@lawfriends.ai
**Subject:** RE: Garza v. SWK- Defendants' response to pending issues following meet and confer

**Caution:** This is an external email. Please take care when clicking links or opening attachments. Do not open attachments from unknown senders.

Richard and Plaintiff's counsel team,

As promised, Defendants have conferred regarding Plaintiff's request to revisit Defendants' Opposition to Plaintiff's Motion to Extend All Remaining Deadlines by 120 Days and For Leave to Take Up to Twenty Depositions (Dkt. 123).

In the Parties' meet and confer call on November 2, one of Plaintiff's counsel proposed that discovery run through February 1, 2027. Defendants do not agree to extend the close of discovery to that date and believe that the additional 60 days, to which the parties previously stipulated and that the Court ordered at the Parties' request (Dkt. 132), in which to reschedule depositions noticed and identified at the time of the Court's Order, constituted a fair accommodation to Plaintiff.

However, in the interest of compromise, Defendants propose the following counteroffer to Relator's proposal:

**Close of fact discovery:** The Court's Order Modifying the Discovery Schedule (Dkt. 132) governs the rescheduling of depositions previously noticed and identified and the production of discovery materials prior to

those depositions. Under that Order, issued on October 28, sixty days accounting for a weekend under Fed. R. Civ. P. 6(a)(1)(C) means that the close of fact discovery would fall on December 28, 2026. **Agreed that 12/28 is the end of the 60-day period.**

**Scheduling of depositions:** Notwithstanding the preceding paragraph, the Parties agree, consistent with Judge Albright's standing Order that governs this case, that the Parties may stipulate to take depositions out of time through February 1, 2027. *See also* Fed. R. Civ. P. 29. The Court's prior Scheduling Order (Dkt. 88) as modified by the Court's Order of Oct. 28 (Dkt. 132) would otherwise control. **We agree with this idea in theory, but without confirmation by Judge Hightower that Judge Albright's Standing Order can be utilized when he is no longer the Judge we cannot agree to this approach. We are open to discussing this approach further but believe that a straightforward agreement to a new deadline is most efficient and would likely be accepted by the Court.**

**Number of depositions:** This proposal addresses timing only. It is not an agreement that Plaintiff may take more than the ten depositions permitted by Fed. R. Civ. P. 30(a)(2)(A)(i). Noting that Defendants opposed Plaintiff's motion requesting additional depositions beyond the limit of ten depositions and filed their opposition on October 13 (Dkt. 123), Defendants will review Plaintiff's list of proposed additional deponents and the "good cause" reasoning for each. On the November 2 meet and confer call, Plaintiff told Defendants that it would provide that "good cause" reasoning. Absent agreement relating to the "good cause" reasoning or leave of Court, Defendants maintain their filed opposition to Plaintiff's request to exceed the total depositions specified in Fed. R. Civ. P. 30 and as identified in Plaintiff's "Omnibus Notice" sent via email to Defendants' counsel on October 23. **See attached our proposed list of deponents with justifications for each.**

**Plaintiff's discovery:** Defendants note that Plaintiff's discovery responses and production remain overdue. In the meet and confer call of November 2, Defendants counsel specifically asked Plaintiff for a production schedule for Plaintiff's overdue discovery and asked additionally for available dates to schedule Plaintiff's deposition. Defendants look forward to receiving firm answers to those pending requests. **Likewise, Plaintiff's position is that Defendants' discovery responses (document production and responses to interrogatories and RFAs) are long overdue. We look forward to your timely productions and substantive responses to Plaintiff's requests.**

**Dates for noticed depositions of Defendants:** Defendants are prepared to offer available dates for depositions for their respective parties and to agree to a production schedule based on those dates. **Plaintiff disagrees with holding document production until 14 days before a scheduled deposition. We'd like to agree on a date for production that precedes but is not dependent on deposition dates. We propose November 19.**

**Reservation of rights:** This proposal is offered in the spirit of compromise and to narrow the issues for the Joint Advisory due November 6. Defendants do not waive any position taken in their briefing on Dkt. 121 or Dkt. 128, or any objection to additional depositions. **Same concerning our comments and counterproposals herein.**

Thank you for your time and attention, and we look forward to your response.

Best,
Mindy Pava
On behalf of counsel for all Defendants

**Mindy Pava**

Partner
Feldesman LLP
1129 20th Street, NW, Suite 400
Washington, DC 20036
**P:** 202.466.8960
**F:** 202.293.8103
**www.feldesman.com**

FELDESMAN

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from the law firm of Feldesman Leifer LLP and are intended solely for the use of the named recipient(s). This e-mail may contain privileged attorney-client communications or work product. Any dissemination by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing of the e-mail or any attachments or from making any use of the e-mail or attachments. If you have received this e-mail in error, notify MPava@feldesman.com immediately and delete the e-mail, any attachments, and all copies from any drives or storage media and destroy any printouts.

# RELATOR'S PRIORITIZED DEPOSITION LIST AND STATEMENT OF NEED

*U.S. ex rel. Garza v. Southwest Key Programs, Inc., et al., No. 1:25-cv-00305-ADA-SH (W.D. Tex.) / Provided Nov. 5, 2026 following the parties' conference on discovery. Subject to revision as discovery proceeds. Not a waiver of any position.*

**Purpose.** Relator's pending motion (Dkt. 121) asks for leave to take up to twenty depositions in total. Rule 30(a)(2)(A)(i) directs that leave be granted to the extent consistent with Rule 26(b)(1) and (2). At Defendants' request, this list identifies each proposed witness, in proposed order, identifies some of the subjects of testimony, and why the testimony is needed. Organizational depositions come first because designees can identify the records, payments and people with knowledge that bear on the individual depositions.

**Citations.** AC = Amended Complaint (Dkt. 24). Diaz Tr. and Lara Tr. = the final transcripts of the Oct. 27, 2026 depositions (page:line), subject to errata. Resp. = Defendants' written responses (Naranjo, Sept. 21, 2026; Hernandez, Oct. 19, 2026). “RFA” = request for admission. PCU Provider Manual = Refugee Medical Assistance & Unaccompanied Children Provider Manual (Aug. 2019). Where a statement is described as “alleged,” it is an allegation of the Amended Complaint.

## Legal standards for exceeding ten depositions.

1. **Leave is required, and the Court must grant it to the extent consistent with Rule 26.** Absent stipulation, a party needs leave for a deposition that would result in more than ten depositions under Rule 30 or Rule 31, and “the court must grant leave to the extent consistent with Rule 26(b)(1) and (2).” Fed. R. Civ. P. 30(a)(2)(A)(i); *see Ramos v. Hartford Accident & Indem. Co.*, 2025 WL 627229 (S.D. Miss. Feb. 26, 2025) (if the additional depositions are consistent with Rule 26(b)(1) and (2), “Rule 30 says the Court must allow them”). The Court may alter the numerical limits by order. Fed. R. Civ. P. 26(b)(2)(A). The limit exists to “assure judicial review under the standards stated in Rule 26(b)(2)” before a side exceeds ten without agreement. Fed. R. Civ. P. 30 advisory committee's note to 1993 amendment; *Barrow v. Greenville Indep. Sch. Dist.*, 202 F.R.D. 480, 483 (N.D. Tex. 2001) (*quoting Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 692 (D. Kan. 1996)). The issues in this case include unlawful retaliation and other violations of the False Claims Act, which carry treble damages and penalties for false claims and conspiracy, 31 U.S.C. § 3729(a)(1)(A)–(C), and a claim that includes items or services resulting from an Anti-Kickback Statute violation is *per se* false for purposes of the False Claims Act, 42 U.S.C. § 1320a-7b(b), (g).

2. **Particularized, witness-by-witness showing, including for depositions 1–10.** The party seeking leave bears the burden of showing why the additional depositions are necessary and must make that showing for each deposition. *Mullenix*, 2021 WL 3474008, at *1, *3. It must establish "not only the necessity of each deposition identified in his motion (i.e., witnesses 11 through 20), but also the necessity of all the depositions he has taken or will take in reaching the prescribed limit (i.e., witnesses 1 through 10)." *MacKenzie v. Castro*, 2016 WL 3906084, at *5 (N.D. Tex. July 19, 2016); *accord Barrow*, 202 F.R.D. at 482–84 (testimony must concern an issue material to the case and not be unreasonably cumulative or duplicative); *UWorld*, 349 F.R.D. at 270–71; *Open Cheer & Dance Championship Series LLC v. Varsity Spirit, LLC*, 2025 WL 3004593 (N.D. Tex. Oct. 27, 2025). The showing applies even before the movant reaches ten, *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 2018 WL 5084913 (N.D. Tex. Oct. 18, 2018), and a motion is not premature merely because the movant has not exhausted ten, *Mullenix*, 2021 WL 3474008, at *2–3. This list is organized to make that showing for each witness.

3. **How courts have applied the standard.** Leave has been granted where the case was complex, the witnesses were defendants or defendant-controlled, and the testimony was important and not available elsewhere. *Allen-Pieroni v. Sw. Corr., LLC*, 2016 WL 4439997 (N.D. Tex. Aug. 23, 2016) (six additional depositions, four of named defendants, proportional given importance of the issues and plaintiffs' lack of access to the information); *Egana v. Blair's Bail Bonds, Inc.*, 2019 WL 8277616 (E.D. La. Jan. 23, 2019) (sixteen depositions in a case with seven corporate defendants, where the defendant had relative access to the information and many deponents were its employees); *UWorld*, 349 F.R.D. at 271–72 (leave for two depositions beyond ten that would support or contradict critical positions and were not unduly cumulative); *Mullenix*, 2021 WL 3474008, at *4 (second corporate-representative deposition allowed where the defendant's protective-order motion and the Court's stay had prevented the topics from being covered in the first). Plaintiff's planned depositions include all eight Defendants, which leaves little room for taking the depositions of corroborating non-party witnesses. Thus, increasing the number of depositions beyond ten is critical.

4. **Status under Dkt. 132.** Witnesses noticed on Oct. 23, 2026 or previously noticed under Rule 30(b)(6) or identified in our motion (Dkt. 121) are, in Relator's view, "currently noticed and identified depositions" to be rescheduled under ¶ 5. For witnesses not yet noticed or identified (including PCU), Relator asks Defendants to consent to leave under ¶ 4 or, failing consent, will seek leave for good cause.

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| **TIER 1 — Depositions already taken, and the organizational (Rule 30(b)(6)) depositions**<br>*Proposed to proceed first, so that designees can identify records, payments and people with knowledge and individual examinations may be shorter.* | | |
| 1 | **Dr. Antonio M. Diaz, Jr.**<br>*Deposed Oct. 27, 2026. Counts toward the limit.*<br>Medical director, Casa Padre; RGV Family Medical Group, PLLC (Diaz Tr. 40:9–40:17; 65:11–65:13). The AC's "Dr. A." | (1) Testified that Mr. Hernandez told him about the Southwest Key shelters and that he paid Mr. Hernandez a bonus for bringing providers and "informing me about Southwest Key" (Diaz Tr. 66:10–66:23; 105:4–107:22; 122:4–122:12), the subject of AC ¶¶ 93, 97.<br>(2) Testified that RGV billed through Point Comfort Underwriters ("PCU"), through billers supervised by Ms. Lara (Diaz Tr. 36:20–36:24; 81:14–82:8; 99:22–100:21).<br>(3) Testified that SWK terminated RGV after Ms. Figueroa, Mr. Zuniga and Mr. De La Cruz attended a meeting at which the stated reason concerned information requested by Mr. Naranjo (Diaz Tr. 111:13–114:2). |
| 2 | **Maria I. Lara**<br>*Deposed Oct. 27, 2026. Counts toward the limit.*<br>Clinic manager and business administrator for Dr. Diaz (Lara Tr. 22:10–23:1). | (1) Testified that Mr. Hernandez requested payment, that the $35,000 payment was a finder's fee for physician assistants and for telling Dr. Diaz about the Southwest Key work, and that Mr. Hernandez said Dr. Diaz received the contract because of him and Mr. Naranjo (Lara Tr. 85:6–86:24; 87:11–88:1; 104:4–105:1; 107:8–108:20).<br>(2) Described the payment and billing process, including batches and lump-sum payments months later, and the Treatment Authorization Requests ("TARs") (Lara Tr. 58:18–61:3; 66:5–67:21; 75:6–75:19).<br>(3) Described the 2016 and 2017 RFP interactions, the March 25, 2019 notice and meeting, and the April 26, 2019 transition (Lara Tr. 35:7–43:9; 68:1–73:21; 77:16–82:9). |
| 3 | **Southwest Key Programs, Inc. Rule 30(b)(6)**<br>*Noticed Oct. 23, 2026; to be rescheduled under Dkt. 132 ¶ 5. Defendant (AC ¶ 9).*Operator of the shelters under ORR cooperative agreements (AC ¶ 53). | (1) Award of the Casa Padre contract to Trinity around May 2019 and termination of RGV (AC ¶¶ 148–150). Both witnesses testified that SWK praised RGV's work and gave only a "logistics" reason tied to information requested by Mr. Naranjo (Diaz Tr. 112:13–113:9; Lara Tr. 71:20–73:21). Only SWK can state who decided and why.<br>(2) The 2021–22 procurement and the June 15, 2022 awards and terminations, including the January 3, 2022 reminder that did not include Trinity or Divine and the statement that the decision was made by SWK's CEO (AC ¶¶ 178–189).<br>(3) Conflict-of-interest provisions of the Cooperative Agreement, SWK's disclosures and controls, and the alleged conduct of Ms. Figueroa, Mr. Rivera and Mr. Naranjo (AC ¶¶ |

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| | | 92, 94–95, 130, 147–150, 196); Mr. Naranjo's use of an SWK email account (AC ¶ 174); and SWK's hiring and promotion of Alyssa Hernandez (AC ¶¶ 18, 152, 163, 171).<br>(4) SWK's dealings with Mr. Hernandez: SWK's counsel told Dr. Diaz that SWK wanted nothing to do with Mr. Hernandez, and an SWK employee later gave him a letter allowing him to work at Casa Padre (Diaz Tr. 67:19–70:15; 84:3–85:15; Lara Tr. 37:22–38:13; 51:9–53:3; 62:5–62:22; AC ¶ 94).<br>(5) TAR authorizations and payments for services by RGV, Trinity, Divine and Valley Med (Lara Tr. 75:6–75:19; PCU Provider Manual (Aug. 2019) at 4–7).<br>(6) Pattern and practice: other awards to SWK employees, relatives and business associates; conflict disclosures, recusals and certifications to ORR; complaints and government inquiries concerning kickbacks; and controls on payments between providers and SWK staff (AC ¶¶ 1–2, 61–62, 98–101, 129–130, 152, 171, 211, 213–217). This information is held by SWK and bears on knowledge and materiality. |
| 4 | **Trinity Health Services, PLLC — Rule 30(b)(6)**<br>*Notice served Sept. 2026; identified in Dkt. 121. Relator understands Mr. Naranjo to be the designee; proposed single sitting with No. 9. Defendant (AC ¶ 12).*<br>Formed Mar. 28, 2019 by Mr. Naranjo (TRI0000001–02; AC ¶ 11). | (1) Awarded the Casa Padre contract around May 2019 and the Houston shelters from July 2022 (AC ¶¶ 148–150, 186–187).<br>(2) Mr. Naranjo admits that, before he left SWK, Mr. Hernandez agreed to provide services for Trinity and Dr. Garcia agreed to serve as its Medical Director (Naranjo Resp. to RFAs 2–3). Trinity paid Mr. Hernandez on a Form 1099 (Naranjo Resp. to RFA 11; Hernandez Resp. to Interrog. 7 and RFA 17).<br>(3) Who prepared and submitted Trinity's claims to PCU: Mr. Naranjo and Mr. Hernandez each deny preparing them (Naranjo Resp. to RFA 12; Hernandez Resp. to Interrog. 10), so only the entity can identify the persons and systems involved.<br>(4) Documents concerning Trinity's formation, ownership and management have been deferred (Naranjo Resp. to RFPs). |
| 5 | **Valley Med Urgent Care, PLLC — Rule 30(b)(6)**<br>*Noticed Oct. 23, 2026; to be rescheduled under Dkt. 132 ¶ 5. Designee to be* | (1) Valley Med's offices housed Mr. Naranjo and Mr. Hernandez (AC ¶ 157), and each used a Valley Med office as the delegation address when retaining Dr. Garcia as supervising physician on March 25, 2019 (AC ¶¶ 150–151). AC ¶ 196 alleges that SWK solicited kickbacks through Mr. Hernandez and Valley Med.<br>(2) Mr. Hernandez was an independent contractor of Valley Med beginning around January 21, 2018 and received Forms 1099 for 2017 and 2018 (Hernandez Resp. to |

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| | *identified. Defendant (AC ¶ 23)*. Dr. Rauf owned it before June 2018 (Hernandez Resp. to Interrog. 6); Mr. Hernandez states he acquired it around 2021 (Hernandez Resp. to Interrog. 2). | Interrog. 6 and RFAs 1, 7). After acquiring it he received distributions and management compensation (Hernandez Resp. to RFA 20), and 2022 SWK payments for influenza clinics and drug screening went to Valley Med (Hernandez Resp. to Interrog. 19).<br>(3) Valley Med and Migdal Eder list the same mailing address and registered agent (AC ¶¶ 16, 23). The terms and financing of Mr. Hernandez's acquisition, and Valley Med's dealings with SWK, are not otherwise disclosed; Valley Med has deferred production. |
| 6 | **Migdal Eder, LLC — Rule 30(b)(6)**<br>*Notice served Sept. 2026; identified in Dkt. 121. Relator understands Mr. Hernandez to be the expected designee; proposed single sitting with No. 10. Defendant (AC ¶ 16)*. Formed Dec. 17, 2017; Mr. Hernandez is sole member and manager (AC ¶ 15; Hernandez Resp. to Interrog. 3). | (1) Relator alleges that Mr. Hernandez formed the company to obtain kickbacks and proposed an Administrative Services Agreement under which it would "prepare, process and submit claims to third party government payors" for 45% of collections (AC ¶¶ 15, 20, 110–115). Mr. Hernandez confirms he sent four agreements on Aug. 23, 2018 (Hernandez Resp. to Interrog. 12).<br>(2) Migdal Eder received $10,940.40 from RGV in 2018. Dr. Diaz testified it was for providers and for informing him of the opportunity; Ms. Lara testified it was for Mr. Hernandez's work seeing children at the shelter (Diaz Tr. 108:22–109:11; Lara Tr. 83:23–85:1). Only the entity's records and designee can resolve the difference.<br>(3) Mr. Hernandez directs questions about the entity's payments to the Rule 30(b)(6) deposition (Hernandez Resp. to Interrog. 21–25). |
| 7 | **Divine Family Care, PLLC — Rule 30(b)(6)**<br>*Notice served Sept. 2026; identified in Dkt. 121. Relator understands Mr. Naranjo to be the designee; proposed single sitting with No. 9. Defendant (AC ¶ 13)*. Formed Oct. 30, 2019 by Mr. Naranjo (DIV0000001–08; AC ¶¶ 11, 157). | (1) Awarded the Arizona shelters Casa Fortaleza and Casa Amanecer (Dec. 2019–Feb. 2020) and later served as medical provider at the Midland influx shelter (AC ¶¶ 159, 176, 192, 194).<br>(2) Paid Mr. Hernandez on a Form 1099 in 2019–2024 (Naranjo Resp. to RFA 11; Hernandez Resp. to Interrog. 8 and RFA 18). Mr. Naranjo denies preparing its claims for PCU (Naranjo Resp. to RFA 13), so only the entity can identify who did. |

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| 8 | **Point Comfort Underwriters, Inc. Rule 30(b)(6) (non-party)**<br>*Not yet noticed or subpoenaed. Relator asks Defendants' consent or, failing consent, will seek leave under Dkt. 132 ¶ 4 and serve a Rule 45 subpoena with notice to all parties.* ORR's contractor that pays unaccompanied-children provider claims. | (1) The AC alleges that the claims at issue were submitted to ORR through its agent, PCU (AC ¶ 194).<br>(2) Both witnesses testified that RGV billed and was paid through PCU (Diaz Tr. 36:20–36:24; 81:14–82:8; 99:22–100:21; Lara Tr. 58:18–61:3; 66:5–67:21), and Mr. Hernandez states that he was billed through Dr. Diaz's company (Hernandez Resp. to Interrog. 13). PCU's records would show, for each defendant provider, the claims submitted, the rendering and billing providers, and the payments made.<br>(3) Defendants deny preparing claims (Naranjo Resp. to RFAs 12–15; Hernandez Resp. to Interrog. 10) and have deferred their own documents, so PCU is the more neutral source of the data.<br>(4) Relator will first seek documents and will confer on whether a records-custodian certification (Fed. R. Evid. 902(11)) can replace part of the testimony. |
| **TIER 2 — Individual deponents, in proposed order**<br>*Order reflects the value of each witness's testimony and the extent to which the Tier 1 depositions will narrow it.* | | |
| 9 | **Diego Naranjo**<br>*Noticed Oct. 23, 2026; identified in Dkt. 121. Defendant (AC ¶ 10). Single sitting with Nos. 4 and 7.* Former SWK Assistant Director of Medical Services; SWK W-2 employee 2012–2019 (AC ¶ 10; Naranjo Resp. to RFA 4); owner of Trinity and Divine and d/b/a UC | (1) Relator alleges that, with Ms. Figueroa, he selected and awarded provider contracts while at SWK (AC ¶ 92), divided the Houston shelters in early 2019 (AC ¶¶ 129–130), and then received Casa Padre through Trinity (AC ¶¶ 148–150).<br>(2) Before he left SWK, he made arrangements with Mr. Hernandez and Dr. Garcia (Naranjo Resp. to RFAs 2–3). The AC alleges he retained Dr. Garcia on March 25, 2019 while still at SWK (AC ¶ 150); that is the day SWK delivered the termination notice to Dr. Diaz and met with him (Lara Tr. 70:16–71:9).<br>(3) The witnesses connect him to Casa Padre: the stated reason for termination concerned information he had requested (Diaz Tr. 112:21–113:13; Lara Tr. 72:11–73:21); he announced at the April 26, 2019 transition that Dr. Garcia would take over (Lara Tr. 80:17–82:9); he set up the ProtonMail group used by RGV's team (Lara Tr. |

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| | Health Consultants (AC ¶¶ 11, 14). | 62:24–64:20); and he logged clinical hours at Dr. Diaz's clinic after Mr. Hernandez raised it (Diaz Tr. 91:9–92:18; 95:2–96:7). Ms. Lara testified that Mr. Hernandez said the contract came because of his influence and his relationship with Mr. Naranjo (Lara Tr. 86:19–86:24; 104:4–105:1).<br>(4) Later conduct: a consulting contract as UC Health Consultants and the intake policy co-authored with Ms. Figueroa (AC ¶¶ 14, 166–168), and the later awards (AC ¶¶ 186–187, 190–194).<br>(5) His written responses defer substantive answers and documents until the protective-order ruling. |
| 10 | **Eder Hernandez**<br>*Noticed Oct. 23, 2026. Defendant (AC ¶ 15). Single sitting with No. 6 (and No. 5 if he is the designee).*<br>Physician assistant (Hernandez Resp. to Interrog. 1); sole member of Migdal Eder; contractor to Valley Med, Trinity and Divine (Hernandez Resp. to Interrogs. 2–3, 6–8). | (1) Relator alleges he proposed a 45% kickback arrangement to Dr. Garza and told her of his influence at SWK and of a "master plan" (AC ¶¶ 84–97, 110–115).<br>(2) Dr. Diaz and Ms. Lara testified that Mr. Hernandez told them of the shelters, requested payment, and was paid a bonus or finder's fee (Diaz Tr. 66:10–66:23; 105:4–107:22; 108:15–109:11; 111:3–111:12; Lara Tr. 85:6–86:24; 107:8–108:20). Mr. Hernandez admits receiving a payment from Dr. Diaz but denies it was a management fee or commission (Hernandez Resp. to RFA 16) and refers the amounts to documents not yet produced (Hernandez Resp. to Interrogs. 14, 16).<br>(3) SWK's counsel told Dr. Diaz that SWK wanted nothing to do with him, and he later obtained an SWK letter allowing him to work at Casa Padre (Diaz Tr. 67:19–70:15; 84:3–85:15; Lara Tr. 32:4–34:17; 51:9–53:3). Mr. Hernandez states he had no employment relationship, ownership interest, or written contract with SWK before June 2019 (Hernandez Resp. to Interrog. 5).<br>(4) He states he will supplement "through his deposition" (Hernandez Resp. to Interrog. 17). |
| 11 | **Gary Wilder**<br>*Noticed Oct. 23, 2026; identified in Dkt. 121. Non-party SWK procurement specialist.* | (1) Announced the 2021–22 bidding process (Oct. 6, 2021), sent the Dec. 13, 2021 and Jan. 3, 2022 reminders (the latter omitting Trinity and Divine), and told Dr. Garza in February and May 2022 that proposals were still under evaluation (AC ¶¶ 178, 181, 183, 185). |

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| | | (2) Sent the June 15, 2022 award and termination letters directing transition of Casa Quetzal, Sunzal and Montezuma to Trinity, and stated that SWK's CEO made the decision (AC ¶¶ 186–188).<br>(3) Can authenticate and explain the RFP, evaluation criteria, and timeline (AC ¶ 189); the SWK designee cannot testify to his own communications. |
| 12 | **Hector Zuniga**<br>*Noticed Oct. 23, 2026. Non-party; SWK Associate Vice President, South Texas Region (AC ¶ 151).* | (1) Alleged to have told Mr. Naranjo at an SWK banquet that "everyone knows you are going to be the next provider at Casa Padre" (AC ¶ 151).<br>(2) Dr. Diaz described him as "in charge in this area" (Diaz Tr. 74:16–74:19). Both witnesses place him at the March 25, 2019 termination meeting (Diaz Tr. 112:13–112:14; Lara Tr. 71:14–71:17), and Ms. Lara places him at the April 26, 2019 transition (Lara Tr. 77:25–78:3; 80:17–80:24). She identified him as one possible source of the letter allowing Mr. Hernandez to work at Casa Padre (Lara Tr. 51:19–51:25; 62:12–62:17).<br>(3) Corporate-level knowledge of the Casa Padre decision (Lara Tr. 74:16–74:23). |
| 13 | **Dr. Juan Garcia**<br>*Identified in Dkt. 121; not yet noticed. Non-party physician (AC ¶ 25).*<br>Supervising physician for Mr. Naranjo and Mr. Hernandez from Mar. 25, 2019 (AC ¶¶ 25, 150–151). | (1) Mr. Naranjo admits Dr. Garcia agreed to work with him before Mr. Naranjo left SWK to be Trinity's Medical Director (Naranjo Resp. to RFA 3).<br>(2) Mr. Hernandez was working at Dr. Garcia's clinic when he first began working with Dr. Diaz (Diaz Tr. 48:23–49:15; 61:7–61:12; Lara Tr. 26:13–26:19).<br>(3) Called Dr. Diaz the night before the transition to say he was taking over and wanted the vaccines (Diaz Tr. 114:9–114:24; 116:19–116:25) and was identified as the incoming medical director (Lara Tr. 80:17–82:9). The AC alleges SWK tried to place him at the Houston shelters (AC ¶¶ 137–138).<br>(4) Dr. Garcia can describe the supervision arrangements and his role at the Trinity and Divine shelters (AC ¶ 176). |
| 14 | **Dr. Abdur Rauf**<br>*Noticed Oct. 23, 2026; identified in Dkt. 121. Non-party; former owner of Valley Med.* | (1) Owned Valley Med before June 2018 and was Mr. Hernandez's boss (AC ¶¶ 23, 80; Hernandez Resp. to Interrog. 6). Mr. Naranjo allegedly planned to give him Casa Sunzal, Montezuma, and Conroe (AC ¶ 129).<br>(2) Could not begin services at Casa Sunzal on March 18, 2019, and he and Dr. Garcia had difficulty placing vaccine orders (AC ¶¶ 131–132, 136–139). |

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| | | (3) Can testify to the ownership and transfer of Valley Med to Mr. Hernandez, and to why Mr. Naranjo's and Mr. Hernandez's offices were inside Valley Med (AC ¶ 157). |
| 15 | **Daniel De La Cruz**<br>*Identified in Dkt. 121; not yet noticed. Non-party former SWK Medical Service Coordinator and Lead Medical Coordinator for Casa Padre (AC ¶¶ 24, 122).* Later Interim Director of Nursing and Interim Director of Medical Services; left in March 2020 and later worked with Mr. Naranjo (AC ¶ 24). | (1) Attended the March 25, 2019 meeting and stated the "logistics" reason (Diaz Tr. 112:21–113:9; Lara Tr. 72:11–73:21); Ms. Lara testified that he avoided her during the transition (Lara Tr. 76:1–76:16).<br>(2) Alleged to have said that Mr. Hernandez and Mr. Naranjo "were the ones in charge of everything" (AC ¶ 122) and, in December 2019, "I'll be damned if I don't take all the shelters" (AC ¶ 156); sent the Feb. 19, 2020 email showing Divine as an SWK provider (AC ¶ 159).<br>(3) Ms. Corderi Guerrero told Dr. Garza that he was at the Midland influx shelter in March 2021 with Mr. Naranjo and Mr. Hernandez (AC ¶ 176). Dkt. 121 identifies his decisions after Ms. Figueroa's departure and his later relationship with Mr. Naranjo. |
| 16 | **Lisdel Corderi Guerrero**<br>*Identified in Dkt. 121; not yet noticed. Non-party SWK employee (AC ¶¶ 175, 177).* Interim Lead Medical Coordinator, Casa Quetzal; later Regional Director of Nursing for Houston, San Antonio, and El Paso. | (1) Observed Mr. Naranjo, Mr. Hernandez, and Mr. De La Cruz at the Midland influx shelter in March 2021 and told Dr. Garza SWK had hired them as medical coordinators (AC ¶ 176).<br>(2) Sent the May 2021 renewals executed by Mr. Rivera (AC ¶ 177) and told Dr. Garza on June 17, 2022 that SWK had terminated Dr. Roncallo's contracts and awarded the shelters to Mr. Naranjo (AC ¶ 191).<br>(3) Recipient of Dr. Garza's reports about conflicts of interest, relevant to the retaliation claim (AC ¶ 226). |
| 17 | **Dr. Anselmo Villarreal**<br>*Identified in Dkt. 121; not yet noticed. Non-party; SWK Chief Executive Officer (AC ¶ 188).* | (1) Mr. Wilder stated that Dr. Villarreal made the decision on the 2022 awards, including moving the Houston shelters to Mr. Naranjo (AC ¶ 188).<br>(2) Relator proposes to take this deposition after the SWK Rule 30(b)(6) deposition and Mr. Wilder's. |
| 18 | **Nelson Lozano**<br>*Noticed Oct. 23, 2026. Non-party; SWK Regional* | (1) Alleged to have told Dr. Garza that Ms. Figueroa gave the Arizona shelters to Mr. Naranjo and Mr. Hernandez and awarded Mr. Naranjo Casa Padre and two McAllen shelters (AC ¶ 160). |

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| | *Director of Nursing, South Texas Region (AC ¶ 160).* | |
| 19 | **Alyssa Hernandez**<br>*Identified in Dkt. 121; not yet noticed. Defendant (AC ¶ 18).*<br>Mr. Hernandez's sister; hired by SWK around 2019 as a nurse consultant and promoted to Medical Lead Nurse (AC ¶¶ 18, 152, 163, 171). | (1) Alleged to have taken part in the August 2018 proposal, the ProtonMail and WhatsApp communications, and the billing arrangement proposed for Nutrix (AC ¶¶ 84, 106, 110, 124).<br>(2) Mr. Hernandez directs questions about payments to and from her to the Migdal Eder deposition and to documents not yet produced (Hernandez Resp. to Interrog. 21). |
| 20 | **Dr. Ruben Roncallo**<br>*Identified in Dkt. 121; not yet noticed. Non-party provider.* Medical provider at Casa Franklin (El Paso) and Casita del Valle (Clint) (AC ¶ 190). | (1) Alleged to have been told in June 2022 that he did not have to respond to the RFP; SWK terminated his contracts on June 17, 2022 and awarded the shelters to Mr. Naranjo (AC ¶¶ 178, 190–191).<br>(2) First-hand evidence of how the RFP was applied to incumbent providers, which the SWK designee can address only from records. |
| **TIER 3 — Potential substitutes** | | |
| 21 | **Dr. Kazim Hussain**<br>*Identified in Dkt. 121; not yet noticed. Non-party provider.* Medical provider for some South Texas shelters (AC ¶ 178). | (1) Alleged to have told Dr. Garza he was not asked to submit a proposal in the 2021–22 RFP (AC ¶ 178). |
| 22 | **Fanny Figueroa and/or Geraldo Rivera**<br>*Named defendants (AC ¶¶ 21–22); not yet served. Relator reserves the right to* | (1) Ms. Figueroa is alleged to have overseen provider selection and contracts and to have sent Dr. Diaz's termination letter (AC ¶¶ 92, 102, 104, 147–150); she attended the March 25, 2019 meeting (Diaz Tr. 111:13–114:2; Lara Tr. 71:14–72:10). Mr. Rivera is alleged to have executed the May 2021 renewals and to have denied involvement in the 2022 bidding (AC ¶¶ 177, 182). |

| No. | Deponent and status | Reasons the testimony is needed |
|---|---|---|
| | *depose them if they are served or appear.* Former SWK Director of Medical Services and Vice President, later Chief Program Officer (AC ¶¶ 21–22). | |