**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| ***ex rel.* JANA GARZA** | § | |
| Plaintiff, | § | |
| v. | § | Case No. 1:25-cv-00305-ADA-SH |
| **SOUTHWEST KEY PROGRAMS, INC.,** | § | |
| ***et al.*,** | § | |
| Defendants. | § | |

## APPENDIX A: PLAINTIFF'S RULE 30(b)(6) DEPOSITION TOPICS

Plaintiff-Relator Jana Garza lists below the matters for examination stated in her Rule 30(b)(6) deposition notices to the five entity Defendants. For Southwest Key Programs, Inc. and Valley Med Urgent Care, PLLC, the topics are those of the Amended Notices served October 21, 2026. For Divine Family Care, PLLC, Trinity Health Services, PLLC, and Migdal Eder, LLC, the topics are those of the Notices served September 11, 2026. Valley Med Urgent Care, PLLC is new to the Rule 30(b)(6) depositions identified in Dkt. 121, because each entity Defendant must testify through Rule 30(b)(6) designees. The topics are reproduced as served, except that Southwest Key Topic 12 is condensed. Capitalized terms have the meanings given in the Definitions of each notice.

### I. SOUTHWEST KEY PROGRAMS, INC. (AMENDED NOTICE SERVED OCTOBER 21, 2026)

1. For the period January 1, 2017 to July 31, 2025, the organizational structure of the components, offices, divisions, or departments that were involved in the development and issuance of Requests for Proposal (RFP) or other notices or advertisements, selection of candidates, interviewing and assessing candidates, setting criteria for candidate selection pertaining to Medical Provider Contract for any Shelter(s). This topic includes the identification of the individuals and their titles/positions in the described organizational structure during the relevant period.

2. The roles, responsibilities, and dates of service of Fanny Figueroa, Diego Naranjo, Geraldo Rivera, Alyssa Hernandez, Tamisha Piper, Gary Wilder, Lisdel Corderi Guerrero, Kimberlynn Luke, and Anselmo Villarreal with respect to the selection, award, renewal, or termination of any Medical Provider Contract.

3. SWK's process, whether formal or informal, competitive, or noncompetitive, for selecting and awarding Medical Provider Contracts at each Shelter from January 1, 2017 to July 31, 2025, including any written procurement policy and any instance in which that policy was not followed.

4. The RFP process SWK commenced on or about October 6, 2021 (Solicitation RFP-112321), including its design and timeline, all addenda, the list of shelters and providers

solicited, the evaluation criteria and evaluators, and the basis for each award and non-award decision made under that RFP, including, without limitation, those communicated to Jana Garza on or about June 15, 2022 and to Dr. Ruben Roncallo on or about June 17, 2022, and those affecting any other Shelter regardless of when, or whether, SWK communicated the decision to the affected provider.

5. The identity of every Person that was a party to, or received payment under, a Medical Provider Contract with SWK for each Shelter(s) from January 1, 2017 to July 31, 2025, and the effective dates, termination dates, and material terms of each such contract.

6. All Communications between any SWK officer, director, or employee, on the one hand, and Diego Naranjo, Eder Hernandez, Alyssa Hernandez, Trinity Health Services PLLC, Divine Family Care PLLC, UC Health Consultants, Migdal Eder LLC, or Valley Med Urgent Care PLLC, on the other, concerning the award, retention, renewal, or termination of any Medical Provider Contract.

7. SWK's knowledge of, and any investigation into, any actual or potential kickback, referral-fee, fee-splitting, or conflict-of-interest arrangement involving any Medical Provider Contract, including SWK's response to Jana Garza's reports of kickbacks and conflicts of interest, including her reports to Lisdel Corderi Guerrero and Kimberlynn Luke, as alleged in the Amended Complaint at ¶¶ 195, 226-228.

8. SWK's written Conflict of Interest policy required under Section D of its ORR Cooperative Agreements, its application to the selection of medical providers, and any disclosures, recusals, waivers, or disciplinary actions made or taken under that policy from January 1, 2017 to July 31, 2025.

9. The circumstances of Diego Naranjo's departure from SWK employment in early 2019, and any post-employment, non-competition, non-solicitation, or disclosure obligations applicable to him.

10. SWK's decisions, between June 2022 and February 2024, to restrict, decline to renew, or terminate any Medical Provider Contract held by Jana Garza or Nutrix Medical Worx, PLLC (which had held Medical Provider Contracts with SWK since June 2019), including the reasons given and the identity of the decision-maker(s).

11. The total amounts SWK paid, billed on behalf of, or facilitated payment of, directly or through PCU or ORR, to Trinity Health Services PLLC, Divine Family Care PLLC, UC Health Consultants, and any other medical provider for services at each Shelter, by Shelter and by year, from January 1, 2019 to July 31, 2025.

12. SWK’s Single Audit procurement-documentation findings for fiscal years 2021 through 2025 (findings 2021-002, 2022-001, 2023-001, 2024-001, and 2025-001), including: (A) whether any Medical Provider Contract, including any awarded under RFP-112321, was sampled by the auditors, found to lack procurement documentation, or classified as a “legacy” contract; (B) the “legacy” vendors with annual expenditures over $50,000 (100 at 8/31/23, 46 at 8/31/24, and 33 at 1/2/25), which of them were Medical Providers, and how SWK decided whether to re-procure them; (C) the existence and retention of procurement files for each Medical Provider Contract

from 2017 to present, and SWK's conflict-of-interest standards under 2 CFR 200.318(c)(1); (D) SWK's communications with its auditors and HHS/ORR about the findings and its corrective actions; and (E) the loss of procurement records described in the FY2025 audit, including the elimination of the procurement department, the decommissioning of its procurement software, and SWK's preservation steps after the June 2021 Civil Investigative Demand and this action.

13. SWK's Cooperative Agreements with ORR in effect from January 1, 2017 to July 31, 2025, including the conflict-of-interest certifications and representations made in connection with those agreements.

14. The termination of SWK's Unaccompanied Alien Children grants and the closure of its shelters effective July 31, 2025, and the effect of that termination on any then-existing Medical Provider Contract.

15. SWK's document-retention and document-destruction policies and practices applicable to procurement, contracting, and medical-services records from January 1, 2017 to present.

16. The factual or other bases for each affirmative defense pled in SWK's Answer to Plaintiff's Amended Complaint.

**II. DIVINE FAMILY CARE, PLLC (NOTICE SERVED SEPTEMBER 11, 2026)**

1. Divine's formation on October 30, 2019, its ownership, membership, and management structure, and its stated business purpose.

2. The reason(s) Diego Naranjo formed Divine roughly seven months after forming Trinity Health Services PLLC, and any division of Shelters, providers, or business between the two entities.

3. The identity of each Person who negotiated, executed, or communicated with SWK concerning the award of any Medical Provider Contract to Divine.

4. The circumstances under which Divine was awarded any Medical Provider Contract at any Shelter, including the identity of the SWK decision-maker(s) involved.

5. Any agreement, payment, fee-splitting, or referral arrangement between Divine, on the one hand, and Diego Naranjo, Eder Hernandez, Migdal Eder LLC, Trinity Health Services PLLC, or UC Health Consultants, on the other, concerning any Medical Provider Contract.

6. All amounts Divine billed to, and received from, PCU, ORR, or SWK for services provided at any Shelter, by Shelter and by year, from 2019 to July 31, 2025.

7. Divine's staffing and subcontracting arrangements for the actual provision of medical services at any Shelter for which it held a Medical Provider Contract.

8. All Communications between Divine and any SWK officer, director, or employee concerning the award, retention, renewal, or termination of any Medical Provider Contract.

9. Divine's relationship to Trinity Health Services PLLC and UC Health Consultants, including any shared ownership, personnel, office space, or banking relationships.

10. Divine's financial records reflecting income received from SWK, ORR, or PCU from 2019 to July 31, 2025.

**III. TRINITY HEALTH SERVICES, PLLC (NOTICE SERVED SEPTEMBER 11, 2026)**

1. Trinity's formation on March 28, 2019, its ownership, membership, and management structure, and its stated business purpose.

2. The identity of each Person who negotiated, executed, or communicated with SWK concerning the award of any Medical Provider Contract to Trinity.

3. The circumstances under which Trinity was awarded Medical Provider Contracts for Casa Padre, Casa Sunzal, Casa Quetzal, Casa Montezuma, Casa Franklin, Casita del Valle, Casa Trail House, Casa Fortaleza, and Lighthouse, including the timing of each award relative to Diego Naranjo's departure from SWK employment.

4. Any agreement, payment, fee-splitting, or referral arrangement between Trinity, on the one hand, and Diego Naranjo, Eder Hernandez, Migdal Eder LLC, Divine Family Care PLLC, or UC Health Consultants, on the other, concerning any Medical Provider Contract.

5. All amounts Trinity billed to, and received from, PCU, ORR, or SWK for services provided at each Shelter, by Shelter and by year, from 2019 to July 31, 2025.

6. Trinity's staffing and subcontracting arrangements for the actual provision of medical services at each Shelter for which it held a Medical Provider Contract, including any arrangement with the individual identified in the Amended Complaint as "Dr. A."

7. All Communications between Trinity and any SWK officer, director, or employee, including Fanny Figueroa, Geraldo Rivera, Gary Wilder, Tamisha Piper, Lisdel Corderi Guerrero, or Anselmo Villarreal, concerning the award, retention, renewal, or termination of any Medical Provider Contract.

8. Trinity's participation in, and Communications concerning, the RFP process SWK commenced on or about October 6, 2021.

9. Trinity's relationship to Divine Family Care PLLC and UC Health Consultants, including any shared ownership, personnel, office space, or banking relationships.

10. Trinity's financial records reflecting income received from SWK, ORR, or PCU from 2019 to July 31, 2025.

**IV. MIGDAL EDER, LLC (NOTICE SERVED SEPTEMBER 11, 2026)**

1. Migdal Eder's formation on or about December 17, 2017, its ownership, membership, and management structure, and its stated business purpose, as alleged in the Amended Complaint at ¶ 15.

2. The negotiation and drafting of the Administrative Services Agreement and related agreements (Collaborative Practice Agreement, HIPAA Business Associate Agreement, and Medical Director Agreement) that Eder Hernandez sent to Jana Garza on or about August 23, 2018, and the identity of every Person who participated in preparing or proposing those agreements.

3. The terms of any fee-splitting, referral, or "administrative services" arrangement Migdal Eder proposed or entered into with any medical provider, including the proposed 45% share of gross collections and Alyssa Hernandez's proposed role in billing.

4. Any agreement or payment between Migdal Eder (or Eder Hernandez individually), on the one hand, and the medical provider identified in the Amended Complaint as "Dr. A," on the other, including the $90-per-child and $30,000 payments alleged in the Amended Complaint at ¶¶ 93 and 97.

5. Any other medical provider, at any SWK Shelter, whom Migdal Eder or Eder Hernandez approached with a kickback, referral-fee, or "administrative services" proposal similar to those made to Jana Garza.

6. All payments Migdal Eder received from any medical provider in connection with any SWK Medical Provider Contract, and the disposition of those funds.

7. Migdal Eder's relationship to Valley Med Urgent Care PLLC, Trinity Health Services PLLC, Divine Family Care PLLC, and UC Health Consultants, including any shared ownership, personnel, office space (including 4 Sweetwater Ct., Sugar Land, Texas), or banking relationships.

8. All Communications between Migdal Eder or Eder Hernandez, on the one hand, and any SWK officer, director, or employee, on the other, concerning the selection of medical providers for any Shelter.

9. Migdal Eder's financial records and bank records from December 17, 2017 to present.

**V. VALLEY MED URGENT CARE, PLLC (AMENDED NOTICE SERVED OCTOBER 21, 2026); NEW DEPONENT**

1. Valley Med's ownership (including Dr. Abdur Rauf), management, and its business or office-sharing relationship with Eder Hernandez and Diego Naranjo from 2017 to present.

2. Valley Med's knowledge of, or role in, the solicitation of kickbacks from the medical provider identified in the Amended Complaint as “Dr. A” for the Casa Padre Medical Provider Contract, and from Jana Garza for the Casa Sunzal and Casa Quetzal Medical Provider Contracts, as alleged in the Amended Complaint at ¶ 196.

3. Any financial transaction between Valley Med, on the one hand, and Migdal Eder LLC, Eder Hernandez, Diego Naranjo, Trinity Health Services PLLC, Divine Family Care PLLC, or SWK, on the other concerning providing, receiving, and/or soliciting medical provider services for any shelters engaged in activities funded in whole or in part by ORR or SWK.

4. Valley Med's provision of office space, equipment, personnel, or administrative support to Eder Hernandez or Diego Naranjo in connection with any SWK Medical Provider Contract.

5. Any Medical Provider Contract, subcontract, or billing arrangement between Valley Med and SWK, or between Valley Med and any medical provider serving a Shelter.

6. For the period 2017 to present, Valley Med's financial and bank records reflecting any transaction with Eder Hernandez, Migdal Eder LLC, Diego Naranjo, Trinity Health Services PLLC, or Divine Family Care PLLC concerning providing, receiving, and/or soliciting medical provider services for any shelters engaged in activities funded in whole or in part by ORR or SWK.

7. The factual or other bases for each affirmative defense pled in Valley Med’s Answer to Plaintiff’s Amended Complaint.